Case 11-00044   Doc 132   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Main Document   Page 1 of 15

**FILED**

MAY 1 7 2011

Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

# United States Bankruptcy Court
## for the District of Columbia

**FILED**

MAY 1 3 2011

Clerk, U.S. District and Bankruptcy Court

| | |
|---|---|
| In Re: W.A.R. LLP | Case Number: 11-00044 |
| Alleged Debtor(s) | Chapter: 7 |

Case: 1:11-mc-00283
Assigned To : Lamberth, Royce C.
Assign. Date : 5/17/2011
Description: Miscellaneous

**TO:    Clerk, U.S. District Court for the District of Columbia**

Transmitted herewith is the **Motion to Withdraw Reference** in the above-captioned bankruptcy case. Included in the transmittal is a copy of order being appealed and a certified copy of the docket sheet.

**Documents related to the motion to withdraw reference include:**

| DE# | Document | Filer |
|---|---|---|
| 2 | Chapter 7 Involuntary Petition. Filing Fee Due $299, Re W.A.R. LLP. | Douglas Sims |
| 3 | Adversary case 11-10003. Order Transferring Adversary Complaint by Wade A. Robertson against William C. Cartinhour Jr.. (Fee Amount of $250) (02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) | Wade A. Robertson |
| 4 | Amended Chapter 7 Involuntary Petition | William Wooten on behalf of Douglas Sims |
| 5 | Notice of Appearance and Request for Notice | Madalyn Scott Greenwood on behalf of U.S. Trustee |
| 6 | Notice of Appearance and Request for Notice | Russell W. Savory on behalf of William C. Cartinhour, Jr. |

*1*

| 7 | Motion to Appear Pro Hac Vice, Filing Fee Due $10 (Attachments: 1 Affidavit Declaration of Patrick Kearney) | Russell W. Savory on behalf of Patrick Kearney |
|---|---|---|
| 8 | Adversary case 11-10004. Order Transferring Adversary Complaint by W.A.R., LLP against William C. Cartinhour Jr. *for Temporary Restraining Order and Enforcement of Stay.* (72 (Injunctive relief - other)) | W.A.R. LLP |
| 9 | Motion to Appear Telephonically. | Russell W. Savory on behalf of Patrick Kearney |
| 10 | Emergency Motion for Relief from Stay in RE: Litigation against Non-Debtor Party. Fee Amount $150. (Attachments: 1 Exhibit A2 Exhibit B3 Exhibit C4 Exhibit D5 Exhibit E6 Exhibit F) | Russell W. Savory on behalf of William C. Cartinhour, Jr. |
| 12 | Involuntary Summons Issued on W.A.R. LLP. Answer To Involuntary Petition Due By 12/13/2010. | Western District of Tennessee (Memphis) Bankruptcy Court |
| 13 | Objection to (Re: Related Document(s) #:10 Motion for Relief From Stay.) | W.A.R. LLP |
| 14 | Order Granting Motion To Appear Pro Hac Vice Of Patrick Kearney. (Related Document #: 7) | Russell W. Savory on behalf of Patrick Kearney |
| 15 | Order Granting Motion Of Patrick Kearney To Appear Telephonically. (Related Document #: 9) | Russell W. Savory on behalf of Patrick Kearney |
| 17 | Order On Amended Motion For Temporary Restraining Order and For Injunctive Relief and Order Granting Emergency Motion For Relief From Stay, RE: Litigation against Non-Debtor Party Filing. This Order Is Also Filed In Adversary Proceeding 11-10004. (Related Doc # 10) | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |
| 23 | Motion to Dismiss Case, Abstain, or in the alternative Motion to Transfer Venue. (Attachments: 1 Exhibit A2 Exhibit B3 Exhibit C4 Exhibit F5 Exhibit G6 Exhibit H7 Exhibit I8 Exhibit J9 Exhibit K10 Exhibit L) | Russell W. Savory on behalf of William C. Cartinhour, Jr. |
| 26 | Order for Relief In An Involuntary Case (Re: Related Document(s) #: 4 Amended Chapter 7 Involuntary Petition.). | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |

| 29 | Response to (Re: Related Document(s) #:23 Motion to Dismiss Case, Abstain, Motion to Transfer Venue.)(Attachments: 1 Exhibit A2 Exhibit B). | Douglas Sims |
|----|----|----|
| 30 | Matrix | Ty Clevenger on behalf of W.A.R. LLP |
| 31 | Objection to (Re: Related Document(s) #:23 Motion to Dismiss Case.)(Attachments: 1 Affidavit) | W.A.R. LLP |
| 34 | Response. (Re: Related Document(s) #:31 Objection.) (Attachments: 1 Exhibit) | William C. Cartinhour, Jr. |
| 37 | Meeting of Creditors. 341(a) meeting to be held on 1/31/2011 at 12:00 PM at Room 175, Memphis, TN. Proof of Claims due by 5/2/2011. Government Proof of Claims due by 5/16/2011. | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |
| 1 | Order Transferring Bankruptcy Case Re: W.A.R. LLP (attorney Ty Clevenger)Filed by Petitioning Creditor(s):Douglas Sims (attorney William Wooten) | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |
| 43 | Notice of Appeal to District Court. Fee Amount $255. (Re: Related Document(s) #:1 Order Transferring Case (bk).) Appellant Designation due by 1/28/2011. Transmission of Designation Due by 2/14/2011. | Douglas Sims and W.A.R. LLP |
| 44 | Election to have Appeal to District Court. (Re: Related Document(s) #:43 Notice of Appeal.) | W.A.R. LLP |
| 45 | Letter of Transmittal Re: Change Of Venue To U.S. Bankruptcy Court For District of Columbia. Awaiting Receipt Of Transfer Form With New Bankruptcy Number. | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |
| 46 | Docket Sheet From U. S. Bankruptcy Court of the Western District of Tennessee (Memphis), Petition #:10-32530 | U. S. Bankruptcy Court of the Western District of Tennessee (Memphis) |

| | | |
|---|---|---|
| | Meeting of Creditors 341(a) meeting to be held on 2/24/2011 at 02:00 PM U.S. Trustee's Meeting Room, Room 1207. Financial Management Course due: 4/25/2011. Last day to oppose discharge or dischargeability is 4/25/2011. | District of Columbia Bankruptcy Court |
| **48** | **Motion for Withdrawal of Reference . Fee Amount $150. (Attachments: 1 Exhibit A2 Exhibit B3 Exhibit C4 Exhibit D5 Exhibit E6 Exhibit F17 Exhibit F28 Exhibit F39 Index F410 Exhibit F511 Exhibit F612 Exhibit F713 Exhibit F814 Exhibit F915 Exhibit F1016 Exhibit F1117 Exhibit F12)** | **Patrick Kearney on behalf of William C. Cartinhour, Jr.** |
| 50 | Supporting Support Document Re: *Motion to Withdraw Reference.* (Re: Related Document(s) #:48 Motion for Withdrawal of Reference.) (Attachments: 1 Exhibit H to Motion to Withdraw Reference2 Exhibit I to Motion to Withdraw Reference3 Exhibit J to Motion to Withdraw Reference4 Exhibit K to Motion to Withdraw Reference5 Exhibit L to Motion to Withdraw Reference6 Exhibit M to Motion to Withdraw Reference) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 53 | Opposition (Re: Related Document(s) #:48 Motion for Withdrawal of Reference.) | Ty Clevenger on behalf of W.A.R. LLP |
| 54 | Reply *to Opposition to Motion to Withdraw the Reference.* (Re: Related Document(s) #:48 Motion for Withdrawal of Reference.) (Attachments: 1 Exhibit 1 (transcript of 1-4-11 hearing)) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 55 | Transmittal of Record on Appeal to District Court Filed by the Clerk's Office.(Re: Related Document(s) #:43 Notice of Appeal.) (Attachments: 1 Notice of Appeal) | U. S. Bankruptcy Court for the District of Columbia |
| 56 | Receipt of Record on Appeal. District Court Case Number: 1:11-cv-00394. Case Assigned to Judge Wilkins, Robert L.. Filed by the Clerk's Office. (Re: Related Document(s) #:43 Notice of Appeal.) | U. S. Bankruptcy Court for the District of Columbia |

| 58 | THIS FILING HAS BEEN STRICKEN, PLEASE SEE THE ORDER STRIKING IN DE# 65. Notice *of Related Proceedings* Filed by Ty O. Clevenger on behalf of W.A.R. LLP. (Attachments: 1 Exhibit A (W.D.Tenn. motion)2 Exhibit B (W.D. Tenn. memorandum)) (Clevenger, Ty) | Ty Clevenger on behalf of W.A.R. LLP |
|---|---|---|
| 59 | Objection *to Motion for Sanctions, Injunctive Relief, Damages, Contempt Proceedings and to Declare Judgment Void*. (Re: Related Document(s) #:58 Notice.) (Attachments: 1 Memorandum of Points and Authorities in Support2 Exhibit A3 Exhibit B4 Exhibit C5 Exhibit D6 Exhibit E7 Exhibit F8 Exhibit G9 Exhibit H10 Exhibit I11 Exhibit J12 Exhibit K13 Exhibit L14 Exhibit M15 Exhibit N16 Exhibit O17 Exhibit P18 Exhibit Q19 Exhibit R20 Exhibit S21 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 60 | Motion For Sanctions Under USC 28 Section 1927 Attorney Liability for Excessive Costs. (Attachments: 1 Memorandum of Points and Authorities in Support of Motion for Sanctions Against Ty Clevenger, Esquire2 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 61 | Amended Document *Certificate of Service*. (Re: Related Document(s) #:59 Objection.) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 62 | Amended Document *Certificate of Service*. (Re: Related Document(s) #:60 Motion for Sanctions Under USC 28 Section 1927.) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 63 | Notice of Opportunity to Object *Motion for Sanctions Against Ty Clevenger, Esquire*. (Re: Related Document(s) #:60 Motion for Sanctions Under USC 28 Section 1927.) Objections due by 03/30/2011 for 60,. | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 64 | Memorandum Decision and Order Striking Notice of Related Proceedings and Dismissing Motion for Sanctions Against Ty Clevenger, Esquire. (Related Document(s) #:58 Notice, 59 Objection, 60 Motion for Sanctions Under USC 28 Section 1927.) Order entered on 3/17/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 65 | Order Dismissing Motion For Sanctions Against Ty Clevenger, Esquire and Striking Notice of Related Proceedings. SEE ORDER FOR MORE DETAILS. (Related Doc # 60) Entered on 3/17/2011. | U. S. Bankruptcy Court for the District of Columbia |

| 67 | Notice of Creditor DIBA Group, Inc. of Request for Propounding of Certain Questions at the 11 U.S.C. Sec. 341 Meeting, and Motion for Adjournment of Meeting Thereafter for 60 Days Pursuant to Bankruptcy Rule of Procedure 2003(e). | Ray Connolly |
|---|---|---|
| 69 | Objection to Claim Number 1 by Claimant DIBA Group, Inc.. (Attachments: 1 Memorandum of Points and Authorities2 Exhibit A3 Exhibit B4 Exhibit C5 Exhibit D6 Exhibit E7 Exhibit F8 Exhibit G9 Exhibit H10 Exhibit I11 Exhibit J12 Exhibit K13 Exhibit L14 Exhibit M15 Exhibit N16 Exhibit O17 Exhibit P18 Exhibit Q19 Exhibit R20 Exhibit S21 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 70 | Notice of Opportunity to Object. (Re: Related Document(s) #:69 No action taken on Objection to Claim.) Objections due by 04/25/2011 for 69,. | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 71 | Objection to Claim Number 2 by Claimant Wade A. Robertson. (Attachments: 1 Memorandum of Points and Authorities2 Exhibit A3 Exhibit B4 Exhibit C5 Exhibit D6 Exhibit E7 Exhibit F8 Exhibit G9 Exhibit H10 Exhibit I11 Exhibit J12 Exhibit K13 Exhibit L14 Exhibit M15 Exhibit N16 Exhibit O17 Exhibit P18 Exhibit Q19 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 72 | Notice of Opportunity to Object (Re: Related Document(s) #:71 No action taken on Objection to Claim.) Objections due by 04/25/2011 for 71,. | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 73 | Objection to Claim Number 3 by Claimant Douglas Sims. (Attachments: 1 Memorandum of Points and Authorities2 Exhibit A3 Exhibit B4 Exhibit C5 Exhibit D6 Exhibit E7 Exhibit F8 Exhibit G9 Exhibit H10 Exhibit I11 Exhibit J12 Exhibit K13 Exhibit L14 Exhibit M15 Exhibit N16 Exhibit O17 Exhibit P18 Exhibit Q19 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 74 | Notice of Opportunity to Object. (Re: Related Document(s) #:73 No action taken on Objection to Claim.) Objections due by 04/25/2011 for 73,. | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 75 | Initial Claims Register from the Western District of Tennessee. (Re: Related Document(s) #:1 Order Transferring Case (bk).) | U. S. Bankruptcy Court for the District of Columbia |

| | | |
|---|---|---|
| | Chapter 7 Trustee's Report of No Distribution: I, Bryan S. Ross, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 3 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: Not Available, Claims Scheduled: $ 0.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 0.00. | U.S. Trustee Bryan Ross |
| | Section 341 Meeting of Creditors was held *03-24-11*. | U.S. Trustee Bryan Ross |
| 77 | THIS MOTION IN THIS FILING HAS BEEN STRICKEN, PLEASE SEE THE ORDER STRIKING IN DE# 94. Amended Notice of Creditor DIBA Group, Inc. of Request for Propounding of Certain Questions at the 11 U.S.C. Sec. 341 Meeting, and Motion for Adjournment of Meeting Thereafter for 60 Days Pursuant to Bankruptcy Rule of Procedure 2003(e). (Re: Related Document(s) #:67 Motion.) (Attachments: 1 Proposed Order) | Ray Connolly |
| 78 | Objection *to Motion of DIBA Group, Inc. for Adjournment of Meeting of Creditors*. (Re: Related Document(s) #:77 Amended Application/Motion.) (Attachments: 1 Memorandum of Points and Authorities2 Exhibit 13 Proposed Order) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |

| 79 | Summary of Schedules | Ty Clevenger on behalf of W.A.R. LLP |
|----|----|----|
| 80 | Statement of Financial Affairs. | Ty Clevenger on behalf of W.A.R. LLP |
| 81 | Order to File Statistical Summary of Schedules and/or Summary of Schedules with a Signed Declaration Under Penalty of Perjury or Show Cause Why Schedules Ought Not be Stricken. (Related Document(s) #:79 Summary of Schedules.) Order entered on 4/5/2011. Statistical Summary and/or Summary of Schedules with Signed Declaration due 4/12/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 82 | Order to File Statement of No Alterations, Supplemental Mailing Matrix or Show Cause Why Schedules Ought Not be Stricken. (Related Document(s) #:79 Summary of Schedules.) Order entered on 4/5/2011. Mailing Matrix due 4/12/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 83 | Final Order By District Court Judge Robert L. Wilkins, Re: Appeal on Civil Action Number: 11-00394, Dismissed (Related Document(s) #:43 Notice of Appeal.) Order entered on 3/10/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 87 | Statistical Summary of Certain Liabilities. (Attachments: 1 Certificate of service) | Ty Clevenger on behalf of W.A.R. LLP |
| 88 | Amended Matrix *to Change Names and Addresses of Previously Listed Entities.* | Ty Clevenger on behalf of W.A.R. LLP |
| 89 | Amended *Matrix* deleting Creditors. Fee Amount $26. (Attachments: 1 Amended Matrix) | Ty Clevenger on behalf of W.A.R. LLP |
| 90 | Motion to Enlarge Time to File a Reply Memorandum to the Objection (Docket Entry #78) to Connolly's Motion (Docket Entry #77). (Re: Related Document(s) #:77 Motion and 78 Objection.) (Attachments: 1 Proposed Order) | Ray Connolly |
| 91 | Motion to Strike Objection of William Cartinhour (Re: Related Document(s) #:78 Objection.) (Attachments: 1 Proposed Order) | Ray Connolly |

| 93 | Order Discharging Order to Show Cause (Related Document(s) #:81 Order to File Statistical Summary and/or Summary of Schedules..) Order entered on 4/13/2011. | U. S. Bankruptcy Court for the District of Columbia |
|---|---|---|
| 94 | Order Striking the Motion for Adjournment of Meeting Thereafter for 60 Days Pursuant to Bankruptcy Rule of Procedure 2003(e). Also Ordered That the Notice of Request for Propounding of Certain Questions at the 11 U.S.C. sec. 341 Meeting is Treated as Addressed to the Trustee and not as a Motion Requiring Action by the Court. SEE ORDER FOR MORE DETAILS. (Related Document #: 77) Entered on 4/13/2011. (Ryan, Michelle) | U. S. Bankruptcy Court for the District of Columbia |
| 95 | Debtor's Statement Regarding Schedules (LBR 1007-1(a)(3)). (Re: Related Document(s) #:88 Amended Schedules, 89 Amended Matrix and Schedules.) | Ty Clevenger on behalf of W.A.R. LLP |
| 96 | Order Striking the Motion to Enlarge Time to File a Reply Memorandum to the Objection (Docket Entry #78) to Connolly's Motion and the Motion to Enlarge Time to File a Reply Memorandum to the Objection (Docket Entry #78) to Connolly's Motion (Docket Entry #77). SEE ORDER FOR MORE DETAILS. (Re: Related Document(s) #:90 Motion to Extend/Shorten Time, 91 Motion to Dismiss/Strike/Withdraw Document.) | U. S. Bankruptcy Court for the District of Columbia |
| 97 | Order Discharging Order to Show Cause (Related Document(s) #:82 Order to File Statement of No Alterations, Amended Matrix or Show Cause..) Order entered on 4/14/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 101 | Order To Show Cause Why William C. Cartinhour, Jr.'s Objections to Claims Ought Not Be Dismissed. (Related Document(s) #:69 No action taken on Objection to Unsecured Claim, 71 No action taken on Objection to Unsecured Claim, 73 No action taken on Objection to Unsecured Claim.) Order entered on 4/19/2011. Responses due by 4/26/2011. | U. S. Bankruptcy Court for the District of Columbia |

| | | |
|---|---|---|
| 103 | Objection. (Re: Related Document(s) #:Chapter 7 Trustee's Report of No Distribution.) (Attachments: 1 Exhibit A (affidavit of Wade Robertson)2 Exhibit B3 Exhibit C4 Proposed Order) | Ty Clevenger on behalf of W.A.R. LLP |
| 104 | Notice of Opportunity to Object. (Re: Related Document(s) #:103 Objection.) Objections due by 05/16/2011 for 103,. | Ty Clevenger on behalf of W.A.R. LLP |
| 105 | Reply *to Order to Show Cause why William C. Cartinhour, Jr.'s Objections to Claims Ought Not Be Dismissed.* (Re: Related Document(s) #:101 Order to Show Cause.) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |
| 106 | Notice of Appearance and Request to Add Attorney. (Sherman, Jeffrey) | Jeffrey M. Sherman on behalf of Bryan S. Ross |
| 107 | Response in Opposition to Party in Interest William C. Cartinhour, Jr.'s Objections to Claim Numbers 1 and 3. (Re: Related Document(s) #:69 No action taken on Objection to Unsecured Claim, 73 No action taken on Objection to Unsecured Claim.) (Attachments: 1 Proposed Order) | Ray Connolly |
| 108 | Response in Opposition to Party in Interest William C. Cartinhour, Jr.'s Objections to Claim Number 2 of Wade Robertson. (Re: Related Document(s) #:71 No action taken on Objection to Unsecured Claim.) (Attachments: 1 Proposed Order) | Wade Robertson |
| 111 | Amended Response in Opposition to Party in Interest William C. Cartinhour, Jr.'s Objections to Claim Numbers 1 and 3. (Re: Related Document(s) #:69 No action taken on Objection to Unsecured Claim, 73 No action taken on Objection to Unsecured Claim, 107 Response.) (Attachments: 1 Proposed Order) | Ray Connolly |
| 112 | Amended Response in Opposition to Party in Interest William C. Cartinhour, Jr.'s Objections to Claim Number 2. (Re: Related Document(s) #:71 No action taken on Objection to Unsecured Claim, 108 Response.) (Attachments: 1 Proposed Order) | Wade Robertson |
| 115 | Motion For Order of Civil Contempt and for Sanctions. (Attachments: # 1 Proposed Order) | Ray Connolly |

| | | |
|---|---|---|
| 116 | Notice of Opportunity to Object. (Re: Related Document(s) #:115 Motion for Contempt.) Objections due by 5/23/2011 for 115, . | Ray Connolly |
| 117 | Motion For Order of Criminal Contempt Against William C. Cartinhour, Jr. and Patrick Kearney for Direct and Willful Fraud on the Bankruptcy Court. (Attachments: # 1 Proposed Order) | Ray Connolly |
| 118 | Notice of Opportunity to Object. (Re: Related Document(s) #:117 Motion for Contempt.) Objections due by 5/23/2011 for 117, . | Ray Connolly |
| 119 | Motion for Order to Vacate as *Void Ab Initio* Acts Taken and Judgements Entered in Violation of the Bankruptcy Stay Re: U.S District Court, District of Columbia 1:09-cv-01642-ESH. (Attachments: # 1 Proposed Order) CORRECTIVE ENTRY: PLEASE NOTE THAT THE CIVIL CASE REFERENCED IN THIS MOTION IS NOT INCLUDED IN THE DOCKET FOR THIS BANKRUPTCY CASE. | Ray Connolly |
| 120 | Notice of Opportunity to Object. (Re: Related Document(s) #:119 Motion to Vacate.) Objections due by 5/23/2011 for 119,Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Wade Robertson, William C. Cartinhour, Jr., Patrick Kearney, Michael Bramnick, and Robert Stanley Selzer to Each Appear for a 2004 Examination. Filed by Ray Connolly (Attachments: # 1 Proposed Order) | Ray Connolly |
| 121 | Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Wade Robertson, William C. Cartinhour, Jr., Patrick Kearney, Michael Bramnick, and Robert Stanley Selzer to Each Appear for a 2004 Examination. (Attachments: # 1 Proposed Order) | Ray Connolly |
| 122 | Notice of Opportunity to Object. (Re: Related Document(s) #:121 Motion for 2004 Examination.) Objections due by 5/23/2011 for 121, . | Ray Connolly |

| 123 | Motion to Join in Debtor's "Objection to Trustee's Report of No Distribution" (Doc #103); Alternatively, Objection to Trustee's Report of No Distribution (3/20/2011). (Re: Related Document(s) #:103 Objection) (Attachments: # 1 Proposed Order) | Ray Connolly |
|-----|---|---|
| 124 | Notice of Opportunity to Object Filed by Ray Connolly . (Re: Related Document(s) #:123 Motion.) Objections due by 5/23/2011 for 123, | Ray Connolly |
| 125 | Omnibus Memorandum of Creditor Ray Connolly in Support of the Motions and Pleadings Filed in Docket Entries #115, 117, 119, 121 and 123. (Re: Related Document(s) #:115 Motion for Contempt, 117 Motion for Contempt, 119 Motion to Vacate, 121 Motion for 2004 Examination, 123 Motion) | Ray Connolly |
| 126 | Exhibits of the Omnibus Memorandum - Volume 1 (Exhibits 1-26). (Re: Related Document(s) #:125 Document.) (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17# 18 Exhibit 18# 19 Exhibit 19# 20 Exhibit 20# 21 Exhibit 21# 22 Exhibit 22# 23 Exhibit 23# 24 Exhibit 24# 25 Exhibit 25# 26 Exhibit 26) | Ray Connolly |

| 127 | Exhibits of the Omnibus Memorandum - Volume 2 (Exhibits 27-52). (Re: Related Document(s) #:125 Document.) (Attachments: # 1 Exhibit 27# 2 Exhibit 28# 3 Exhibit 29# 4 Exhibit 30# 5 Exhibit 31# 6 Exhibit 32# 7 Exhibit 33# 8 Exhibit 34# 9 Exhibit 35# 10 Exhibit 36# 11 Exhibit 37# 12 Exhibit 38# 13 Exhibit 39# 14 Exhibit 40# 15 Exhibit 41# 16 Exhibit 42# 17 Exhibit 43# 18 Exhibit 44# 19 Exhibit 45A# 20 Exhibit 45B# 21 Exhibit 45C# 22 Exhibit 45D# 23 Exhibit 45E# 24 Exhibit 45F# 25 Exhibit 45G# 26 Exhibit 45H# 27 Exhibit 45I# 28 Exhibit 46# 29 Exhibit 47# 30 Exhibit 48# 31 Exhibit 49# 32 Exhibit 50# 33 Exhibit 51# 34 Exhibit 52) | Ray Connolly |
| 128 | Amended Certificate of Service to the Omnibus Memorandum. (Re: Related Document(s) #:125 Document.) | Ray Connolly |
| 130 | Order Dismissing Motion For Criminal Contempt (Related Document #: 117) Entered on 5/12/2011. | U. S. Bankruptcy Court for the District of Columbia |
| 131 | Reply. (Re: Related Document(s) #: Chapter 7 Trustee's Report of No Distribution, 103 Objection.) (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K# 12 Exhibit L# 13 Exhibit M# 14 Exhibit N# 15 Exhibit O# 16 Exhibit P# 17 Exhibit Q# 18 Exhibit R# 19 Exhibit S# 20 Exhibit T# 21 Exhibit U) | Patrick Kearney on behalf of William C. Cartinhour, Jr. |

**Other comments:**

No Designation of Record re Withdrawal of Reference was filed. However the Motion to Withdraw Reference refers to "this case in its entirety both as to the main case and pending adversary proceedings".

The parties to the motion to withdraw and their respective attorneys are as follows:

| | |
|---|---|
| **Petitioning Creditor** | **Attorney** |
| Douglas Sims, Petitioning Creditor | William Allen Wooten |
| | Jackson, Shields, Yeiser and Holt |
| | 262 German Oak Drive |
| | Memphis, TN 38018 |
| **Alleged Debtor** | **Attorney** |
| W.A.R. LLP, Alleged Debtor | Ty Clevenger |
| | Youngkin & Burns |
| | PO Box 4806 |
| | Bryan, TX 77805 |
| **Movant/Interested Party** | **Attorney** |
| William C. Cartinhour, Jr. | Russell W. Savory |
| | 88 Union Avenue, 14th Floor |
| | Memphis, TN 38103 |

Angela D. Caesar, Clerk

*Michelle Ryan*

Dated: May 13, 2011                                     By: Michelle Ryan

Please return a copy of this transmittal with the following information:

District Court Case Number:

Judge Assigned:                          [*Affix Label Here*]

Date Stamp:

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|                |                        |
|----------------|------------------------|
| IN RE:         | :                      |
|                | :                      |
| W.A.R., LLP    | : Case No. 11-00044    |
|                | : (Chapter 7)          |
| Debtor,        | :                      |
|                | :                      |

### THIS MOTION MUST BE DECIDED BY A UNITED STATES DISTRICT JUDGE

### THIS MOTION RELATES TO A PENDING CIVIL ACTION BEFORE THE HONORABLE ELLEN SEGAL HUVELLE, UNITED STATES DISTRICT JUDGE ROBERTSON v. CARTINHOUR Case No.:1:09-cv-01642

### <u>MOTION TO WITHDRAW THE REFERENCE</u>

William C. Cartinhour, Jr. ("Cartinhour"), by counsel, moves the United States District Court to withdraw the reference of this case in its entirety both as to the main case and pending adversary proceedings, and in support thereof offers a Memorandum of Points and Authorities which is incorporated herein by reference as if repeated *verbatim*.

Wherefore, William C. Cartinhour, Jr. moves this Honorable Court to withdraw the reference and for such other and further relief as is just and proper.

Respectfully submitted,

_____*/s/ Patrick J. Kearney*_____
Patrick J. Kearney (#382290)
Selzer Gurvitch Rabin Wertheimer Polott
 Obecny & Strickland, PC
4416 East West Highway, Suite 400
Bethesda, Maryland 20814-4568
(301) 986-9600
Email: Pkearney@sgrwlaw.com

*Attorneys for William C. Cartinhour, Jr.*

### THIS MOTION MUST BE DECIDED BY A UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served via first class mail, postage pre-paid, this 24th day of January, 2011 upon:

William Wooten, Esq.
262 German Oak Drive,
Cordova, TN  38018

Ty Clevenger, Esq.
P.O. Box 4806
Bryan, TX  77805

Bryan Ross, Esquire
1800 K Street NW
Suite 624
Washington, DC 20006

_____ */s/ Patrick J. Kearney* _____
Patrick J. Kearney

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:                              :
                                    :
W.A.R., LLP                         : Case No. 11-00044
                                    : (Chapter 7)
        Debtor,                     :
                                    :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION TO WITHDRAW THE REFERENCE

### INTRODUCTION

Having chosen the United States District Court for the District of Columbia as the

forum for the litigation of claims and then being dissatisfied with the early outcome of his

litigation, Wade Robertson ("Robertson") embarked on adventurous, frivolous, forum

shopping and has needlessly and vexatiously multiplied the litigation – far beyond that for

which his counsel Edward Griffin and Ty Clevenger have been sanctioned.  The Movant,

William C. Cartinhour, Jr. ("Cartinhour"), is before this Court asking that it exercise its

plenary power under 11 U.S.C. § 1334 and 28 U.S.C. § 157(d) and withdraw the reference of

this case from the United States Bankruptcy Court for the District of Columbia in order to

avoid inefficient litigation of claims and the continued unwarranted gamesmanship by

Robertson and his counsel.

### BACKGROUND

Robertson, an attorney admitted to practice law in the District of Columbia, filed a *pro*

*se* action against Cartinhour in the United States District Court, District of Columbia, entitled

*Robertson v. Cartinhour, et al.,* 09 Civ. 1642 (ESH) (hereinafter the "D.C. Action)", in

August 2009, seeking a peremptory judicial declaration as to the validity of a partnership

**THIS MOTION MUST BE DECIDED BY A UNITED STATES DISTRICT JUDGE**

agreement between Cartinhour and Robertson and as to other agreements, including an Indemnification and Hold Harmless Agreement.

Cartinhour, who had been unable to locate Robertson, filed a counter-claim against Robertson upon learning of the lawsuit.  Robertson retained counsel and filed lengthy Motions to Dismiss and for Summary Judgment.  The basic facts of Cartinhour's counter-claim is that he invested $3.5 million to a partnership known as W.A.R., LLP (the "Debtor" or "Partnership") to pay expenses in a class action case which was dismissed early in the litigation and at least $1.5 million of this amount was invested after the litigation was dismissed.  Robertson caused the Partnership to lend him $3.405 million of that investment.

At a hearing convened on January 11, 2010, the District Court, the Honorable Ellen S. Huvelle, presiding, with the benefit of Cartinhour's Opposition to the Motions to Dismiss and for Summary Judgment, as well as Robertson's extensive reply and the arguments of counsel, denied the Motions to Dismiss and for Summary Judgment without prejudice.[1]  The District Court also made inquiry into the accounting that had been provided (which Cartinhour objected to as being inadequate).  Robertson chose to speak directly to the District Court on these matters and the District Court was able to gain some insight to learn that the Debtor, only had about $4,000 in the bank, but had "lent" $3,405,000 to Robertson, personally, and the loans bore no interest.  Robertson had sole access and control of the Partnership accounts, books and records at all times.

On February 18, 2010, Robertson filed notices of appeal of:  (i) the Orders Denying his Motion to Dismiss and Motion for Summary Judgment; (ii) the Order denying a Motion to

---

[1] A copy of the order denying the Motion to Dismiss and Motion for Summary judgment and holding the Motion to Reconsider the Freeze Order in abeyance is attached hereto as Exhibit A.  A copy of the transcript of the January 11th hearing is attached hereto as Exhibit B.

Quash a subpoena of his brokerage account records (which records conclusively demonstrated that he deposited $3,405,000 of Cartinhour's investment in his own personal brokerage account) and (iii) the Order holding in abeyance the Motion for Reconsideration of the Freeze Order. Robertson did not undertake to have the Orders denying the Motions to Dismiss and for Summary Judgment or the Order denying Motion to Quash certified as final under 28 U.S.C. § 1292(b) prior to filing his notices of appeal.

Armed with limited information gathered in discovery which showed assets traceable to Cartinhour's investment in Robertson's personal Charles A. Schwab & Co., Inc. ("Schwab") brokerage account, Cartinhour filed a Motion for Temporary Restraining Order and for Preliminary Injunction specifically seeking to freeze the Schwab account and any assets purchased by Robertson from the Schwab account and a Motion to hold Robertson in contempt for his withdrawal of more than $100,000 from the Schwab account after the issuance of the Freeze Order. A hearing was convened in the District Court on March 1, 2010. Robertson attempted to halt that hearing by filing a motion which argued that his notices of appeal of interlocutory orders which had not been certified for appeal divested the District Court of jurisdiction, and by filing a Motion to Recuse Judge Huvelle. When his efforts were unsuccessful (as documented by the District Court's decision at Dkt. 72), Robertson first offered to settle, and when the settlement was rejected, agreed to a preliminary injunction (the "New Freeze Order") that would expire on March 22, 2010, in order to allow the parties time to review assets in hopes of considering a settlement proposal that was made by Robertson just prior to the commencement of the February hearing.[2] In light of the fact that no settlement was agreed to, Robertson petitioned the United States Court of Appeal for

---

[2] A copy of the New Freeze Order is attached hereto as Exhibit C.

3

the District of Columbia Circuit (the "DC Cir.") to stay the March 22nd hearing.  No stay issued from the DC Cir.  Accordingly, the preliminary injunction hearing (hereinafter the "Hearing") commenced on March 22, 2010 and continued on March 26, 2010.  At the conclusion of the second day of the Hearing, the District Court granted the Motion and issued a preliminary injunction (the "Injunction" or "Preliminary Injunction") sequestering all funds held by Robertson or his agents that were traceable to investments made by Cartinhour to the Registry of the District Court – totaling approximately $630,000 – of which only about $4,600 was from the W.A.R., LLP bank accounts.

Robertson unsuccessfully attempted to remove Judge Huvelle through a Petition for Writ of Mandamus to the DC Cir.  He filed multiple unsuccessful motions to stay the action before Judge Huvelle before the DC Cir.  Robertson's attorney, Ty Clevenger, was sanctioned by the DC Cir. for filing unnecessary pleadings in seeking multiple stays.  A copy of the Order of the DC Cir. is attached hereto as Exhibit D.  To date, Mr. Clevenger has not paid the fine imposed by the DC Cir. and Mr. Clevenger has now been given until April 14, 2011 to pay his sanction.

Having failed at obtaining a stay of the action pending before Judge Huvelle, an involuntary petition for relief under Chapter 7 was filed in the United States Bankruptcy Court for the Western District of Tennessee (the "WD Tenn."), *In re W.A.R., LLP*, Case No. 10-32530-PJD on November 15, 2010.  On November 17, 2010, Robertson, through Mr. Clevenger, filed an adversary proceeding in the WD Tenn. seeking to enjoin the action pending before Judge Huvelle styled *Robertson v. Cartinhour*, Adversary Proceeding No. 10-566, alleging Robertson has a right of indemnification from Cartinhour under the agreements at issue in the D.C. Action.  A copy of the Complaint and Motion to Dismiss are attached

4

hereto as Exhibits E and F, respectively.[3]   Robertson filed a Motion for a Temporary

Restraining Order and for Preliminary Injunction on December 30, 2010 in that case.   On

November 19, 2010, Robertson/Clevenger filed a separate adversary proceeding in the WD

Tenn. allegedly on behalf of W.A.R., LLP styled *W.A.R., LLP v. Cartinhour*, Adversary

Proceeding No. 10-573 seeking to enjoin the litigation before Judge Huvelle allegedly to

protect the rights of the Debtor.  A copy of the Complaint and Motion to Dismiss that case are

attached hereto as Exhibit G and H, respectively.  That Complaint was accompanied by a

Motion for Temporary Restraining Order and for Preliminary Injunction.  The WD Tenn, per

the Honorable Pamela Delk denied the Motion for Temporary Restraining Order and granted

an Emergency Motion for Relief from the Automatic Stay to allow the case before Judge

Huvelle to go forward.  A copy of Judge Delk's Order is attached hereto as Exhibit I.

Judge Delk found in an Order entered on January 4, 2011, that the involuntary case

was filed in an improper venue and transferred the venue to the United States Bankruptcy

Court for the District of Columbia.  Cartinhour is before this Court seeking to withdraw the

reference of the Bankruptcy case and the two (2) related Adversary Proceedings to this Court

to limit spiraling litigation which Robertson seems intent to pursue.  A copy of that decision is

attached hereto as Exhibit J.

## ARGUMENT

Original jurisdiction in bankruptcy cases rests in the District Court pursuant to 28

U.S.C. § 1334.  DCT.LBR 5011-1 provides that "Pursuant to 28 U.S.C. § 157(a), all cases

under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title

11 are referred to the Bankrputcy Judge of this District."  However, the "automatic reference"

---

[3] Robertson filed a Notice of Voluntary Dismissal of this case but the Clerk of the WD Tenn. rejected the filing and the case was not dismissed.

of all bankruptcy cases is limited by 28 U.S.C. § 157(d), which provides that a district court:

> **[M]ay withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown**. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. (emphasis supplied)

Thus,

> Section 157(d) mandates withdrawal of the reference where resolution of a party's complaint requires "substantial and material consideration" of such "other laws," that is, "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws, or when there is a conflict between the bankruptcy and other federal law." *TPI Int'l Airways, Inc. v. FAA (In re TPI Int'l Airways, Inc.)*, 222 B.R. 663, 667 (S.D.Ga.1998) (quotations omitted). **Section 157(d) permits withdrawal, in the district court's discretion, for "cause shown." In making this discretionary determination, courts generally consider (1) advancing uniformity in bankruptcy administration, (2) decreasing forum shopping and confusion, (3) promoting the economical use of the parties' resources, (4) facilitating the bankruptcy process, (5) whether the claims are core or non-core, (6) whether there has been a jury demand, and (7) the prevention of delay.**

*Bank United Financial Corp. v. Federal Deposit Insurance Corp.*, 436 B.R. 216, 222 (S.D. Fla. 2010)(citations omitted)(emphasis supplied).  *See also Keystone Oncology, LLC v. Cohen (In re Equimed, Inc.)*, 259 B.R. 269, 273 (D. Md. 2001). *Cf, In re U.S. Office Products, Litigation*, 313 B.R. 73-80-81 (D.D.C. 2004)(Lamberth, J.) (noting, *inter alia*, that removal may be in whole or in part).

"Cause" exists to withdraw the reference for the entire case in order to decrease forum shopping and confusion, to promote the economical use of the parties' resources and to prevent delay.  At the outset, it must be recognized that this case does not involve complex bankruptcy issues.  Robertson presented the Court with his "accounting" in January 2010.

That "accounting" showed minimal cash assets and only notes receivable from Robertson to the Partnership (which are the subject of Cartinhour's fraud and breach of fiduciary duty claims) and some unrealized contingent receivables, which Robertson testified in January 2010 might still be "monetized." The alleged liabilities of the Partnership were listed by Robertson in a filing with the bankruptcy court – listing only three (3) potential non-insider liabilities – Diba, Apley/George Sims, and Citibank. Robertson's "1007 Statement" is attached hereto as Exhibit K. The existence of any single liability being a "partnership" liability is doubtful and the enforceability of the debts is also doubtful.[4]

But, at its core, removal is necessary to prevent the vexatious litigation strategy followed by Robertson. As Judge Huvelle noted in her December 30, 2010 Order:

> Over the next fifteen months, Robertson proceeded to file no less than fourteen motions, including an option to reconsider an order granting Cartinhour leave to amend his counterclaims, a motion to quash a subpoena for documents that Robertson had already agreed to produce, and a motion to recuse. Two of those motions were sufficiently meritless, and were considered by the Court to have been filed recklessly and in bad faith, so as to justify the awarded of attorneys' fees against Robertson under 28 U.S.C. §1927, which permits the award of fees "against an attorney who frustrates the progress of judicial proceedings." Robertson, 711 F.Supp. 2d at 137-39.

> The Court of Appeals has been equally frustrated by Robertson's vexatious litigation strategy, finding sanctions of $6446.06 to be "abundantly justified" after Robertson filed his fourth motion to stay despite being warned, less than a week earlier, that the Court "looks with extreme disfavor upon unnecessary pleadings." Robertson v. Cartinhour, No. 10-7033, Order Awarding Fees and Costs at 1 (D.C. Cir. Dec. 14, 2010); Order on Emergency Motion for an Order in Aid of Jurisdiction at 1 (D.C. Cir. Oct. 19, 2010). (A copy of the December 30, 2010 Order is attached hereto as Exhibit M.)

---

[4] For instance, Sims' proof of claim, which is attached as Exhibit L, consists of a one page invoice to the Debtor dated July 2010 and indicates that the bulk of the work was done in 2005 with some work in the summer of 2007. Yet the involuntary case was filed in November 2010 and his claim would be barred by the applicable three (3) year statue of limitation. 11 U.S.C. § 502(b)(1) provides that an objection includes the fact that it is not enforceable under applicable law. Cf. In re Graham, 394 B.R. 384 (Bankr. E.D.N.C. 2008) (discussing the applicability of the statute of limitations on a motion for sanctions for filing a time barred claim).

Not satisfied with the results in the D.C. Cir. and heedless of its warnings against unnecessary pleadings, Robertson filed suit against Cartinhour, all of his counsel, and a cast of others in the Southern District of New York on November 9, 2010. *See, Robertson v. Cartinhour*, No. 10 CV 8442 (S.D.N.Y. Nov. 9, 2010) ("the New York Action").  Although styled as a civil RICO complaint, the New York action centers largely on the same set of operative facts at issue in this case, namely Robertson's claim that Cartinhour threatened to sue him allegedly in violation of certain written agreements allegedly signed by Cartinhour, as well as events that have occurred in the litigation pending before Judge Huvelle. Robertson also filed the two adversary proceedings in the WD Tenn. seeking to enjoin the action before Judge Huvelle in November 2010.

The only way to deal with this blatant forum shopping and vexatious litigation, is to bring it all, or as much as possible, under the control of the same judge in order to avoid inconsistent rulings, re-litigation of issues known to this court.  While the Court cannot at this time hear the New York Action, it has plenary authority under section 1334 to remove the bankruptcy case and pending adversary proceedings now pending in this District. Accordingly, causes exists to withdraw the reference of the entire Bankruptcy proceeding to this Court.[5]

---

[5]  Or, at a minimum bring ,the two pending adversary proceedings – both of which seek to injunctive relief relating to the matter pending before Judge Huvelle and reserve withdrawal of the reference of the balance should other matters arise which concern the same operative facts as the case before Judge Huvelle.

## **CONCLUSION**

For the forgoing reasons the Court should withdraw the reference in this case and the

pending adversary proceedings.

Respectfully submitted,

_____ */s/ Patrick J. Kearney* _____
Patrick J. Kearney (#382290)
Selzer Gurvitch Rabin Wertheimer Polott
 Obecny & Strickland, PC
4416 East West Highway, Suite 400
Bethesda, Maryland 20814-4568
(301) 986-9600
Email:  Pkearney@sgrwlaw.com

*Attorneys for William C. Cartinhour, Jr.*

# EXHIBIT A

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 28 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 13 of 62
Case 1:09-cv-01642-ESH   Document 31   Filed 01/11...0   Page 1 of 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WADE A. ROBERTSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 09-01642 (ESH) |
| WILLIAM C. CARTINHOUR, JR., | ) | |
| Defendant. | ) | |

## **ORDER**

Based on the hearing held on this date, it is hereby **ORDERED** that:

1) plaintiff's motion to dismiss [Dkt. 27] and his motion for summary judgment [Dkt.
30] are denied for the reasons stated in open court;

2) plaintiff's motion for reconsideration [Dkt. 22] will be held in abeyance pending
further proceedings; and

3) a telephonic conference is set for January 14, 2010, at 12:00 p.m. to discuss
discovery and scheduling in light of defendant's forthcoming motion for a preliminary
injunction.

**SO ORDERED.**

                                                  /s/
                                          ELLEN SEGAL HUVELLE
                                          United States District Judge

DATE: January 11, 2010

# EXHIBIT B

1

```
 1                 UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2    --------------------------X

 3    WADE ROBERTSON,

 4              Plaintiff

 5              v.                 Civil Action 09-1642

 6    WILLIAM C. CARTINHOUR, JR.,

 7              Defendant,

 8    --------------------------X      Washington, D.C.
                                       Monday, January 11, 2010
 9                                     9:30 A.M.

10                   TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
11               UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Plaintiff: Edward N. Griffin, Esq.
                         GRIFFIN WHITAKER LLC
14                       7474 Greenway Center Drive
                         Suite 550
15                       Greenbelt, MD 20770
                         (301) 513-5080
16                       Alain J. Ifrah, Esq.

17                       Jeffrey R. Hamlin, Esq.
                         IFRAH, PLLC
18                       1627 I Street, NW
                         Suite 1100
19                       Washington, DC 20006
                         (202) 912-4819

20

21    Court Reporter:         Lisa Walker Griffith, RPR
                              U.S. District Courthouse
22                            Room 6507
                              Washington, D.C.  20001
23                            (202) 354-3247

24    Proceedings recorded by mechanical stenography, transcript
      produced by computer.

25
```

## Page 2

1   For the Defendant: Patrick John Kearney, Esq.
     Michael J. Bramnick, Esq.
2     SELZER GURVITCH RABIN & OBECNY
     4416 East West Highway
3     Fourth Floor
     Bethesda, MD 20814
4     (301) 986-9600
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 3

1          PROCEEDINGS
2          THE DEPUTY CLERK: This is Civil Action 09-1642.
3   Wade Robertson versus William Cartinhour.
4          MR. GRIFFIN: Good morning, Your Honor. Edward
5   Griffin on behalf of Mr. Wade Robertson, who is present and
6   seated between me and Mr. Ifrah. Also Mr. Jeff Hamlin is here
7   on behalf of Mr. Robertson.
8          MR. KEARNEY: Patrick Kearney on behalf of William
9   Cartinhour. With me today is my associate, Michael Bramnick.
10         THE COURT: We have three motions in front of me that
11   I'm aware of. I have a Motion to Dismiss, the counterclaims,
12   and the Motion for Summary Judgment. I'll hear you briefly on
13   those first, then we'll move on to the remaining issues. I
14   need some clarification about some of these accounting
15   documents. Why don't we just take care of these two motions
16   first.
17         Plaintiff's Motion to Dismiss and Plaintiff's Motion
18   for Summary Judgment. Your argument is that one can't attack
19   these agreements, and basically Mr. Cartinhour is out $3.5
20   million and can't sue and can't do anything. That's a hard
21   argument, isn't it?
22         MR. GRIFFIN: I think, Your Honor, the release, it
23   does protect from these claims. And Mr. Cartinhour, in his
24   affidavit, paragraph 26 of his affidavit, it says he
25   comprehended the purpose and effected the release. There is no

## Page 4

1   issue with regard to Dr. Cartinhour's competency. Right after
2   the first hearing —
3          THE COURT: He has now filed an affidavit saying he
4   didn't understand and that he trusted Mr. Robertson as his
5   lawyer. There is plenty of reason why he thought Mr. Robertson
6   was his lawyer. I have to hold as a matter of law that
7   Mr. Robertson has a fiduciary duty to this gentleman, given his
8   role.
9          Once you have that in place, I don't understand how I
10   can ignore what Mr. Cartinhour says and just rely on this
11   agreement. This is the most one-sided agreement I've ever
12   seen, ever.
13         MR. GRIFFIN: The agreement being the release, Your
14   Honor?
15         THE COURT: Yes. What does Cartinhour get out of it?
16         MR. GRIFFIN: The release — the release provides
17   that he was provided with services, and I guess it would be
18   legal services that were provided that day in exchange for the
19   release.
20         THE COURT: Legal services on a case in New York, you
21   mean.
22         MR. GRIFFIN: The written terms of the release. They
23   don't specify what those services are.
24         THE COURT: Exactly.
25         MR. GRIFFIN: Looking at a Motion to Dismiss, I'm

## Page 5

1   just looking at the terms of the agreement and the pleadings
2   that are before the Court. I'm not going into intrinsic
3   evidence we have and produced additional letters and
4   correspondence between the parties. We've kept ourselves to
5   the pleadings and the documents that are in front of the Court.
6   And Dr. Cartinhour, even in his affidavit —
7          THE COURT: You've also raised it all by moving for
8   summary judgment, so I've read all these documents as well.
9   But Mr. Cartinhour has now filed an affidavit that puts at
10   issue your legal — your legal basis is you are relying on a
11   series of documents, a partnership agreement and an
12   indemnification and release.
13         I can't even understand. You are expecting an
14   elderly gentleman to keep track of ECF basically. To find out
15   that the case had been dismissed at the District Court level
16   before you took another 1.5 million from him? Can you actually
17   make these arguments with a straight face?
18         MR. GRIFFIN: Our argument is there is no way that he
19   can say that there was no other way of him finding out about
20   the status of the case than through Mr. Robertson. It was a
21   matter of public knowledge. That's his argument.
22         THE COURT: What do you mean a matter of public
23   knowledge?
24         MR. GRIFFIN: It was a court case that's been filed
25   with the Court and is available on ECF. The pleadings are

**Page 6**

1  available to anyone who goes and inspects them.
2      THE COURT: You expect this gentleman who does not
3  leave his apartment to go to New York to the Southern District
4  to find out that Judge Scheindlin had thrown the case out?
5      MR. GRIFFIN: Your Honor, there is a requirement that
6  he engage in reasonable due diligence.
7      THE COURT: Okay. Mr. Griffin, I have said this
8  since the case walked in, and I'm glad Mr. Robertson is here to
9  hear me. I find that the issues of fact regarding the validity
10  of both the partnership agreement and this release are serious
11  issues that preclude any Motion to Dismiss or any Motion for
12  Summary Judgment. I think the age of this gentleman -- he is
13  not a lawyer. He obviously viewed Mr. Robertson as his
14  attorney, with good reason. Mr. Robertson's footprints are all
15  over his Will, his dealings with some company called TCT, is
16  it?
17      I have rarely seen a transaction that has such an
18  aura of unconscionability. And Mr. Robertson didn't enter his
19  appearance. I don't even know under the rules of New York
20  whether he was engaged in unauthorized practice of law in New
21  York. I have no idea.
22      He wasn't practicing here. But he addresses the
23  general counsel of TCT. He advises him and analyzes his Will,
24  raising serious -- some curious questions about what is going
25  on there. And it is unbelievable that Mr. Cartinhour, who is

**Page 7**

1  80 years old, is supposed to understand what is going on in a
2  New York class action that Mr. Robertson has really not even
3  entered his appearance in.
4      Both motions will be denied. I can't say there are
5  not disputed issues of fact. Mr. Cartinhour has raised more
6  issues of fact that is necessary even, regarding this release
7  and indemnification agreement. That is a one-way
8  unconscionable agreement on its face. Mr. Cartinhour gets
9  nothing. Absolutely nothing, Mr. Robertson. I don't
10  understand how you can -- after a case gets dismissed in the
11  Southern District when it is on appeal that you can get another
12  1.5 from an elderly man. I don't understand it.
13      But I'd like to get a little clearer understanding of
14  where this money is now. This accounting tells me nothing. So
15  either you or your client can answer my questions. It is up to
16  you.
17      MR. GRIFFIN: Your Honor, if I could have a moment to
18  confer.
19      THE COURT: Yeah.
20      (There was a pause in the proceedings.)
21      MR. GRIFFIN: Your Honor, I can attempt to walk you
22  through the accounting. If I have any follow-up questions,
23  I'll consult with Mr. Robertson.
24      THE COURT: Fine. Just so the record is clear, I
25  have considered the Statute of Limitations question as well

**Page 8**

1  under the issue of the Motion to Dismiss the counterclaims.
2  The law is very clear that in a case like this, the discovery
3  rule would apply. But more importantly, there is another rule
4  that says you don't sue your lawyer while he is still
5  representing you.
6      So there are factual issues regarding how long this
7  representation continued and what it was for and what the
8  parties understood was the representation. You are not -- the
9  law is very clear in this jurisdiction. I've written on this
10  in De May, that there is a continuous representation rule so
11  that any Statute of Limitations argument -- it's tolled while
12  you are still acting as the gentleman's lawyer. I think there
13  is plenty of bases for him to argue that he perceived you as
14  his lawyer.
15      All right. Let us understand what is going on here.
16  So I don't see that he was on inquiry notice. And I don't see
17  how a lawyer -- a nonlawyer could ever judge whether or not
18  another million-five was a reasonable amount of money to put in
19  after a District Court had thrown the case out. I don't
20  understand that at all, how he could be expected to understand
21  the merits of a case. That's why there are lawyers out there.
22      Mr. Robertson, I'm very concerned. You are well
23  aware of the Bar, obviously; Mr. Fox is here. He is looking
24  into this and reads the pleadings in this case.
25      MR. ROBERTSON: Yes, Ma'am.

**Page 9**

1      THE COURT: The way I look at this accounting, I
2  don't know where Mr. Cartinhour's money is at the moment. Can
3  somebody please elucidate, where is $3.5 million?
4      MR. GRIFFIN: Your Honor --
5      THE COURT: I only see expenses of a small amount.
6  213,000 are operating expenses for several years. So what
7  happened? Where is the rest of the money?
8      MR. GRIFFIN: I apologize, Your Honor. There are no
9  page numbers on the accounting. Page 4, Your Honor, there is a
10  balance sheet there which has the current assets of the
11  partnership. That would be $4,541.44 in cash --
12      THE COURT: Wait a second. This is attached to
13  Mr. Robertson's affidavit which is under oath. All of this is
14  now under oath. Okay. Now, what page am I looking at?
15      MR. GRIFFIN: It's Exhibit B, Your Honor, to the
16  affidavit.
17      THE COURT: So we have 213,000 in operating expenses
18  for a couple of years. Five years. Then going along, the
19  liabilities, accounts payable. What am I looking at?
20      MR. GRIFFIN: Going down the current balance sheet,
21  the partnership has $4,541 assets. That's the cash the
22  partnership currently has.
23      THE COURT: 4,000?
24      MR. GRIFFIN: In cash, Your Honor. It's on page 4.
25      THE COURT: All right. So they have -- that means,

**Page 10**

1   am I correct -- better make sure I don't say anything
2   incorrect -- that in a bank account is $4500 somewhere? Is
3   that true or not?
4        Mr. Robertson, where is the 4500?
5        MR. ROBERTSON: Yes, ma'am, in a bank.
6        THE COURT: Then you spent 213- in operating
7   expenses, correct?
8        MR. GRIFFIN: *That is correct, Your Honor. That's on*
9   *page 1. It's -- there were 213,000-odd dollars in operating*
10  *expenses.*
11       THE COURT: Okay.
12       That gets me approximately $217,000 out of 3.5. So,
13  where does one find the 3.5 minus 217-?
14       MR. GRIFFIN: There were also under the receivables,
15  pursuant to Article 23 of the partnership agreement, there was
16  a loan that was made to -- from the partnership to
17  Mr. Robertson individually.
18       THE COURT: For 3.8?
19       MR. GRIFFIN: For 3.4, Your Honor.
20       THE COURT: So where is that money now?
21       MR. GRIFFIN: I believe that would be a number of
22  promissory notes from the partnership to Mr. Robertson
23  individually that we would be producing in discovery.
24       THE COURT: He has now spent 3.4? He has taken 3.4?
25  He has -- do you borrow this money *without interest? Give me*

**Page 11**

1   *some hints here.*
2        MR. GRIFFIN: They're pursuant to the promissory
3   notes that were entered into between Mr. Robertson and the
4   partnership. Under the partnership provision, he has the
5   authority to make loans from the partnership to the partners.
6        THE COURT: Without -- Mr. Cartinhour does not sign
7   these notes, right?
8        MR. GRIFFIN: That is correct, Your Honor.
9        THE COURT: He does not approve it on behalf of the
10  partnership. Robertson, on behalf of the partnership, loans
11  himself 3.4 million?
12       Mr. Robertson, do you owe interest on these loans?
13       MR. ROBERTSON: These are zero-interest loans. This
14  is partly Mr. Cartinhour's idea. He can bankrupt me on these
15  loans, and he has always had that ability to bankrupt *me on*
16  these loans.
17       THE COURT: So he can call the loans in?
18       MR. ROBERTSON: As part of the partnership agreement,
19  if we dissolve the partnership, the loans get called in.
20       THE COURT: What would happen if that eventuality
21  comes? Do you have 3.4 available?
22       MR. ROBERTSON: No, ma'am, I do not.
23       THE COURT: What does it take to dissolve this
24  partnership? Don't you need both people to agree?
25       MR. ROBERTSON: Yes, ma'am, it would require

**Page 12**

1   liquidation under the provision of the partnership agreement.
2   That is correct. It can be liquidated. We both agree. My
3   opinion at this juncture is that his attorneys are trying to
4   force the liquidation of the partnership.
5        THE COURT: They would like back the 3-point-some
6   million, right?
7        MR. ROBERTSON: They would like to pretend as though
8   this never happened, that he and I didn't enter into an
9   agreement four years ago, and that I didn't work on his behalf
10  with respect to the partnership. Yes. I'm not sure if that's
11  exactly the answer to the question that you asked.
12       THE COURT: But you are not willing to dissolve the
13  partnership because you don't want to pay back the 3.4 million?
14       MR. GRIFFIN: Your Honor --
15       THE COURT: *Let him answer.*
16       MR. ROBERTSON: I'd like to keep the partnership
17  going because I still believe that accounts receivable that
18  can be -- I still believe that the investment in the
19  partnership can be monetized by both parties. I still believe
20  that the investment in the partnership, from both sides, both
21  he and I will eventually be monetized --
22       THE COURT: What lawsuit will do that?
23       MR. ROBERTSON: There is --
24       THE COURT: Not the one the Supreme Court threw out.
25       MR. ROBERTSON: First, there is the hours that were

**Page 13**

1   accrued on behalf the case that was coordinated with In Re: IPO
2   in New York. The In Re: IPO case is still in a state of flux
3   with respect to settlement. We were -- the Lui case was
4   coordinated with the master case in New York. The master case
5   in New York is not fully resolved yet. Lui has overlapping
6   claims, overlapping class periods. There is tolling on those
7   claims. And there is a question that has remained -- despite
8   everything that went wrong in that case, the question has
9   remained as to whether, number one, we might be eligible at
10  some point to recover some fees for the work or cost accrued
11  for the work that was done. And it was coordinated. And I did
12  coordinate with some of the attorneys in In Re: IPO.
13       THE COURT: Who are the plaintiff's lawyers? That's
14  the one Judge Scheindlin had, too.
15       MR. ROBERTSON: That may be the largest securities
16  class action suit in the history of the United States.
17       THE COURT: She got reversed from the Second Circuit
18  on that one, and it went back down to her? That one?
19       MR. ROBERTSON: Yes, Your Honor. That's correct.
20       THE COURT: So right now, that case doesn't have legs
21  either.
22       MR. ROBERTSON: No, ma'am. *My understanding is that*
23  *it is -- it is based upon the documents I reviewed and also*
24  *conversations I've had with some of the attorneys that are*
25  *still involved in that case that that case is not dead yet.*

**Page 14**

1  The case is still marching on in the settlement proceedings.
2       And there was an attempted settlement offer that was
3  announced in October. I may not have the facts exactly right,
4  but my understanding is there have been objections to the
5  settlement and that the plaintiff's lawyers on behalf of that
6  class are still trying to settle that on behalf of the class
7  claims and that, ultimately, as it appears, there will be
8  something that is recovered on behalf of the class in that
9  action.
10      Which would then raise the question as to whether or
11  not the costs and the fees -- the cost and time that we put in
12  as a coordinated action, you know, the question that's
13  unanswered but still hanging out there is whether or not we
14  might be entitled at some juncture to get something back.
15      THE COURT: Pretty contingent, huh?
16      MR. ROBERTSON: Yes, ma'am. I invested four years of
17  my life.
18      THE COURT: Why didn't you enter your appearance
19  anytime in New York Pro Hac Vice? I have never heard of people
20  doing thousands and thousands and thousands of hours and that
21  they never appear. That's a new one.
22      MR. ROBERTSON: It was fully intended that I would
23  enter an appearance.
24      THE COURT: 7,714 hours, and you never went to Court,
25  never signed a pleading.

**Page 15**

1       MR. ROBERTSON: It was fully intended that I would
2  enter an appearance, Your Honor. The strategic reason -- which
3  I'm happy to disclose part of it, but I would also ask that you
4  respect the confidentiality of the attorney work product as to
5  why I didn't enter an agreement --
6       THE COURT: It is in the pleadings. Because you
7  worked for the defendant.
8       MR. ROBERTSON: The reason was that the attorneys
9  that I worked with -- number one, I did not -- in order to
10  prosecute a class action on behalf of the huge classes that we
11  had and the amount of money that was involved, we had to have
12  class -- we had to have counsel that would pass muster in front
13  of any Court as having competency to prosecute class claims.
14  It is sort of a catch-22 in that you can't actually get
15  competency unless you've already been class counsel.
16      So Mr. John Watts, the attorney that was the lead
17  attorney, had had that experience, and his firm that he was
18  eventually associated with certainly had the C. V. that was
19  necessary for us to get --
20      THE COURT: C. V.
21      MR. ROBERTSON: The experience that we believed was
22  necessary for him to be appointed class counsel. It was
23  anticipated that once we got the pleadings settled in the case
24  and once we had gotten the case certified as a class, that at
25  that juncture, then I would come on the pleadings.

**Page 16**

1       The purpose of me not coming on the pleadings
2  beforehand, again, the specific matters are confidential, but
3  as we have admitted here, was because we were concerned
4  about -- we were concerned about a side show; that, in fact,
5  because I had at one point been an employee for one of the
6  defendants in the case that -- and, of course, one of the
7  most -- the most deep-pocketed defendants, that they might
8  somehow create this side show that might detract from our
9  ability to get the pleadings --
10      THE COURT: They may move to disqualify you, is what
11  you're saying. You call it a side show.
12      MR. ROBERTSON: I was not an attorney for that
13  defendant.
14      THE COURT: What did you do for Credit Suisse?
15      MR. ROBERTSON: I was a banker, I was an employee.
16  None of the matters that were related to the lawsuit were
17  matters that I was in any way personally involved with. But
18  because of my experience, I was able to recognize the fraud and
19  the weight of the fraud. I was also able to help the attorneys
20  that I was working with -- this is part of what I was supposed
21  to do. As John, I think, mentioned in his affidavit to you,
22  somebody had to put together a storeroom worth of documents to
23  try to assess exactly how the pump-and-dump scheme worked, how
24  the fraud worked. All that stuff had to be done, and this is
25  not -- usually this goes into the realm of experts, because

**Page 17**

1  most attorneys that I've worked with on this case, they
2  understand civil procedure, but they don't really understand
3  securities fraud because this is complex. These were complex
4  transactions that were done to artificially inflate the value
5  of stocks.
6       Mr. Cartinhour -- because I'm certainly willing to
7  answer your questions, Your Honor. I don't want to appear to
8  be hiding behind my attorney. But I am concerned, if I may,
9  with the perception that has been created by these other
10  attorneys here and that the Court seems to have echoed that
11  somehow this was unconscionable and all one-sided and I took
12  Mr. Cartinhour's money.
13      THE COURT: What did he get?
14      MR. ROBERTSON: Mr. Cartinhour had me work on this
15  case on his behalf. Mr. Cartinhour was going to profit if this
16  partnership was successful. Mr. Cartinhour at the very
17  beginning promised me and expressly -- at one point,
18  Mr. Cartinhour was a friend and a mentor. I was not aware -- I
19  knew he was older, but I was not aware of his specific age at
20  any time. For instance, I didn't learn that he was in his
21  seventies until I read from the attorneys -- the opposing
22  counsel's pleadings that he is now in his eighties.
23      But what he got from it was that he owned me. He
24  owned me.
25      THE COURT: He owned you?

### Page 18

1  MR. ROBERTSON: He owned me via the partnership
2  because he wanted me to do this with the loans. If I took the
3  loans, my initial concern was what happens -- if this works out
4  and everything is successful, great. We're going to make a lot
5  of money. The partnership will be extraordinarily successful.
6  He's going to stand to profit because he's part of the
7  partnership. I'm going to stand to profit. But what happens
8  if it fails? It is a contingency matter.
9  But Mr. Cartinhour is a man of extraordinary wealth.
10  This is not me sneaking in and taking a nickel out of an
11  elderly gentleman's pocket in the middle of the night. This is
12  someone who induced me also to get involved in this partnership
13  with him. I had other opportunities at the time. There were
14  other parties that I was -- I was talking actually with other
15  attorneys about possibly getting funding, in terms of funding,
16  but Mr. Cartinhour wanted me involved in this case and he
17  wanted the opportunity --
18  THE COURT: We'll see. That will all be part of the
19  discovery. I have no doubt. I'm very, very interested in
20  having the discovery here.
21  MR. ROBERTSON: If you look at expressed terms of the
22  agreement, Your Honor, Mr. Cartinhour could have bankrupted me
23  at any time if I tried to pull out because of the loan
24  provisions.
25  THE COURT: No, because you had to -- you just said

### Page 19

1  in order to dissolve the partnership, you both have to agree to
2  dissolve it. And you don't want to dissolve it. So what do
3  you mean he can bankrupt you at any time? How does he bankrupt
4  you?
5  MR. ROBERTSON: If I had pulled out the
6  partnership -- because the loans must be paid prior to -- if
7  the partnership is dissolved, the loans must be paid.
8  THE COURT: I know. But doesn't the partnership say
9  that you have to agree to dissolving the partnership?
10  MR. ROBERTSON: It does.
11  THE COURT: You can decide under this partnership
12  agreement that you can make loans with his money to you,
13  unaccountable in a sense. You don't have to use the money for
14  anything in particular. There are no limits on how you use
15  these loans. You are the one who decides. And you can't
16  dissolve the partnership without both of you agreeing, so he
17  get the back the money from the loans, i.e., by bankrupting
18  you, as you keep saying, unless you both agree to dissolve the
19  partnership. I don't understand how he has got anything going
20  for him other than you have been, I presume, using this
21  3.4 million as loans to you.
22  MR. GRIFFIN: There were specific provisions under
23  the partnership agreement that did protect Mr. Cartinhour.
24  MR. ROBERTSON: Yes, Your Honor. If you traverse all
25  the provisions in the agreement itself -- for instance, the

### Page 20

1  term of the partnership is not in definite. In fact, if
2  Mr. Cartinhour was to unexpectedly die or if he were to
3  unexpectedly become incapacitated, the partnership, I believe,
4  is forced into a liquidation situation. I'd have to go back
5  and traverse it myself. I'm speaking a bit on the fly here.
6  THE COURT: Let's look at -- where is the partnership
7  agreement?
8  MR. GRIFFIN: Your Honor, I would draw the Court's
9  attention to page 7 of the partnership agreement.
10  THE COURT: Which one? The September '04?
11  MR. GRIFFIN: I've always worked off the April 10,
12  2006 one, the complete version. It was attached as Exhibit 2
13  to our -- that Motion to Dismiss.
14  THE COURT: Plaintiff's Motion to Dismiss.
15  Exhibit 2. This is before the indemnification, yes?
16  MR. GRIFFIN: Yes, Your Honor. Looking at page 6
17  that has the management rights and duties of the partners, the
18  general authority of Mr. Robertson, he does have the exclusive
19  ability to manage the -- essentially the legal side of the
20  partnership. Because there are -- later there are some
21  provisions that are carved out if the partnership is expanded
22  to allow for -- if the D.C. ethical rules change and the
23  partnership is expanded to allow Dr. Cartinhour to provide
24  additional services, other services rather than legal services.
25  There were provisions for him to have the principal authority

### Page 21

1  related to that aspect of the partnership.
2  But with regards to the provision of legal services,
3  Mr. Robertson had the specific authority, of course, to execute
4  agreements, contracts and documents, and that was limited on
5  page 7, Article 14, I think it is an important limitation that
6  no partner, without the written consent of all the partners,
7  shall assign, transfer, pledge, compromise or release any of
8  the claims or debts due to the partnership except on payment in
9  full or arbitrating and consent to the arbitration.
10  THE COURT: What paragraph are you reading?
11  MR. GRIFFIN: Article 14, Your Honor, limitations on
12  rights and powers of all partners.
13  THE COURT: Assign, pledge, compromise, release any
14  of the claims or debts due to the partnership.
15  MR. GRIFFIN: That is correct, Your Honor.
16  THE COURT: What's due to the partnership? What
17  claims or debts are due to the partnership?
18  MR. GRIFFIN: If a loan is made from one of the
19  partners, from the partnership to Mr. Robertson, he does not
20  have the authority to release that claim. It is specifically
21  carved out.
22  THE COURT: So if he loans himself 3.4 million, he
23  can't write off the debt.
24  MR. GRIFFIN: That's correct, Your Honor.
25  THE COURT: But he can't pay it back, he's just told

**Page 22**

1  me. He does not have the funds.
2  MR. GRIFFIN: Your Honor --
3  MR. ROBERTSON: Your Honor, just to be clear, this is
4  not a term agreement. This is -- there are provisions that
5  cause this partnership to be dissolved. But if you ask me to
6  pay this back today, I can't pay this back today. But
7  Mr. Cartinhour was aware of that. We specifically set these
8  loans in such a manner that they had to be repaid back.
9  THE COURT: The loans, do they have a due date?
10  MR. ROBERTSON: Yes, they do, Your Honor. If at some
11  point in the future -- and these are long-dated loans to give
12  myself the opportunity to --
13  THE COURT: How long?
14  MR. ROBERTSON: Your Honor, we will be happy to
15  provide all of that.
16  THE COURT: Give me -- are they 10 years out, 20
17  years out? This is $3.4 million.
18  MR. ROBERTSON: Your Honor, if the partnership had
19  proceeded the way the parties intended and the way the contract
20  read traversed and looking at the limitations that are upon me
21  as well and realizing that I've -- that it is not entirely
22  inconscionable, as the other side had to have you believe,
23  because I can be bankrupted by this as well. Mr. Cartinhour
24  has put me in a position where he would bankrupt me. In fact,
25  there is not one capital infusion here. This is the parties

**Page 23**

1  coming together over a period of the -- if you look at -- there
2  is one in '04, there is March of '05, there is December of '05,
3  April of '06. At each juncture where he and I have come
4  together and have continued to collaborate and discuss what we
5  should or should not do, he has repeatedly pushed me. In fact,
6  one of the letters, I think it's mentioned in there to, you
7  know, keep going, take more money. You should do this. We're
8  going to win. This partnership is going to be successful.
9  I'm like, well, you know, there was a point at
10  which -- this is the reason -- you have not asked much about
11  the release agreement. But when we get to April of '06, there
12  are some problems with the partnership, and I become very
13  concerned about also my financial liabilities that are
14  accruing. The question is, what happens is what happens if all
15  of this goes to hell in a handbasket. And more importantly,
16  given the provisions we set up at the end of '05 in case he
17  should immediately die, then what beneficiaries are going to
18  come at me and sue me in court and try to force --
19  THE COURT: I don't know. You wrote the Will.
20  MR. ROBERTSON: I did not write the Will, Your Honor.
21  THE COURT: You analyzed it.
22  MR. ROBERTSON: I did not write the Will, Your Honor,
23  and I did not handle the Will.
24  THE COURT: Are those women still getting the money
25  under the Will?

**Page 24**

1  MR. ROBERTSON: I don't know. At one point, they
2  were. If you would like me to, I would be happy to address
3  that document because they put that in there as though I was
4  advising Mr. Cartinhour. That document was written in December
5  of '05.
6  Mr. Cartinhour, who by the way is a medical doctor,
7  told me that he was concerned about his -- what might happen,
8  where his monies might go, what might happen if, in fact, he
9  were to pass suddenly. I said, well, there is another concern;
10  What would happen to your partnership interest. Who would step
11  into your shoes that then I would have to answer to as a
12  partner within the partnership?
13  I became very concerned. This was a complex matter.
14  If he passed it on to this foundation and these girls, suddenly
15  would they be my partners? Would there be professional duties
16  and rules that kicked in? How would I manage that.
17  In December of '05, we specifically set up a trust so
18  that if something happened to him and his estate was to pass,
19  that I would be allowed to put it in trust, dissolve the
20  partnership in a timely fashion, and then pass it without
21  having some third parties that I had never contracted with step
22  in and say that, oh, we're your new partners by default. So
23  within 45 days of that agreement, I had to sit down with him --
24  THE COURT: What agreement?
25  MR. ROBERTSON: The amendment, excuse me, the

**Page 25**

1  amendment of --
2  THE COURT: The release?
3  MR. ROBERTSON: I'm sorry, within -- the partnership
4  agreement itself was amended a number of times. December 6,
5  '05, we amended it. This was not an amendment that had
6  anything to do with money.
7  Mr. Griffin will -- can provide further clarification
8  on this, if necessary. But in December of '05, we amended it
9  specifically for -- the entire amendment was based upon what
10  happens if you should suddenly decease, and how do we handle
11  the possibility that there's another -- that I end up having a
12  partner forced upon me that I have not agreed to.
13  In December of '05, we're talking about what happens
14  if you go and what does that mean to the partnership. Within
15  45 days of that, I wrote that document which they have now
16  attached and said that I was Mr. Cartinhour's attorney. That
17  document is not written to Mr. Cartinhour. That document was
18  written because I had to sit down and figure out if
19  Mr. Cartinhour dies and he has a Will, who then do I have
20  responsibility to as the person that is still running the
21  partnership, who do I have to answer to. So I had to analyze
22  it.
23  I put that in a safe deposit box where the Will was
24  located. What I expect must have happened is that
25  Mr. Cartinhour or somebody on his behalf retrieved it. And now

Page 26

1  they have attached it and said I was the attorney.
2       One of the things I specifically said to
3  Mr. Cartinhour, from the beginning, and it is in the
4  agreements, is that if we go into this together and we're
5  business partners together and you've induced me to do this,
6  I've induced you to do that and it's mutuality, you cannot ever
7  expect me to be your attorney. I said, because I cannot be in
8  violation of professional rules. I said we have to put that in
9  writing. We did put it in writing in the very first document.
10      When we got to '06, I became concerned because of
11 what was going on with the Serbian girls and what I -- this
12 whole idea that he wanted to merge TCT into the partnership. I
13 had several reasons why I thought that was inappropriate. I
14 became concerned about some statements that third parties had
15 made. If told him, I said, if you die, then how am I going to
16 prove that there was no question in your mind that I was never
17 your attorney? He said, well, we can take care of that.
18      So we did. In April of '06, we went before a notary
19 and he signed -- he swore and subscribed to the notary an
20 attestation that there had never been an attorney-client
21 relationship, and he made it clear. And that was supposed to
22 be a document that would survive him. It was supposed to be
23 self-authenticating that would survive him if, in fact, he died
24 suddenly.
25      THE COURT: That's the release and indemnification?

Page 27

1       MR. ROBERTSON: No. That's the attestation of no
2  attorney-client relationship. That's also one of the
3  partnership documents that's been provided to you. This was
4  April 7 of '06. Despite the fact that we executed this
5  document, now I'm being accused of being his attorney.
6       THE COURT: Well, you are -- at a minimum, you are
7  accused of being his fiduciary, too.
8       I have to tell you, there is a long way to go here
9  before the facts become thoroughly known.
10      I find this -- I have sufficient facts in front of me
11 to cause me great concern. I have no understanding of exactly
12 how it is that somebody would invest in such a -- especially
13 after he signs this release, how he puts down 1.5 million after
14 the lawsuit is already out of District Court.
15      MR. ROBERTSON: Your Honor, it was out of District
16 Court on a pleadings issue where the controlling authority at
17 the time -- they changed -- they abandoned stare decisis and
18 they changed the controlling law on us.
19      THE COURT: Maybe your analysis of this case is not
20 quite right. Second Circuit didn't agree with you at all. No
21 one but you could have analyzed the case and advised
22 Mr. Cartinhour. He is not a lawyer, correct?
23      MR. GRIFFIN: Your Honor, I think the operative --
24 the material omission they've claimed is that he didn't know
25 the case was dismissed. He didn't know at the trial level. He

Page 28

1  said that that was a material fact that made him continue to
2  invest money into the partnership.
3       THE COURT: His duty to investigate is what you say.
4  That's a very curious thing, since he is the lawyer on the
5  case. Just his name is not on the pleadings.
6       MR. GRIFFIN: On March 15, 2006, he gets a copy of
7  the appellate brief. It's a brief that says Second Circuit --
8  at that point, he has got to have some reasonable due diligence
9  that he is going to have to engage in in order to find out
10 what's going on with this active partnership.
11      THE COURT: What day?
12      MR. GRIFFIN: That was March 15, 2006, Your Honor.
13 That was -- the letter was attached to the complaint as --
14      THE COURT: He got the decision along with the letter
15 from Mr. Robinson saying, "We're confident that our position
16 continues to grow stronger and we will be ultimately wildly
17 successful in this endeavor"? That's what he told him --
18      MR. GRIFFIN: It says, "Enclosed please find the
19 legal brief which we finished and filed this past Friday with
20 the Court in New York. I will believe you to find this
21 interesting and encouraging reading."
22      Of course -- and then it contains his opinions about
23 the status of the case. But that's just forward-reaching
24 opinions. That's not actionable for purposes of fraud.
25      THE COURT: Depends if you are the fiduciary, I would

Page 29

1  think.
2       I'm sorry, Mr. Robertson. Let go back to the
3  accounting, if we may. This is very important to me.
4       Are there any limits on how you can spend this money,
5  3.5? Let's see. Airfare, 7,157. I mean, does that mean that
6  you can travel on a vacation to the Bahamas if you want? I
7  want to know. Does this partnership say that the money has to
8  be related to the lawsuits?
9       MR. GRIFFIN: Your Honor, the loans that are made to
10 an individual, those are loans made to an individual. They
11 become their moneys and there are no restrictions upon their
12 spending of moneys --
13      THE COURT: That's the 3.4. I'm looking at the
14 213,000.
15      MR. GRIFFIN: With regard to the 213,000, there are
16 no specific partnership provisions saying you can fly first
17 class or you can't fly first class or anything like that
18 related to the expenditures --
19      THE COURT: Can you go to the Bahamas for a vacation?
20      MR. GRIFFIN: I would think that these are all
21 expenses related to the lawsuit, that they don't include any
22 trips to the Bahamas.
23      THE COURT: You don't know. I can't find any limit
24 on how the money is spent.
25      MR. GRIFFIN: Due to the time constraints, we did not

### Page 30

1  have an accountant. Also, the concerns about Your Honor
2  freezing the accounts. We were not sure if we could hire an
3  accountant in order to do the analysis. I think it would be --
4  I think an accounting firm -- certainly a certified accountant
5  would be able to provide some assistance with an accounting. I
6  would certainly prefer that to happen. But we would ask that
7  either the partnership pay for that or the --
8      THE COURT: They're concerned the partnership is
9  paying for three lawyers. That's partnership money that goes
10  to pay the lawyers here, which would probably contravene my
11  order, by the way, if it is coming out of any of this money.
12      MR. GRIFFIN: Coming out of the -- can you give us
13  some more clarity on that, Your Honor? Coming out of the
14  assets of the partnership?
15      THE COURT: That includes the loans. Theoretically,
16  that is certainly covered.
17      MR. GRIFFIN: So you are saying the loans from the --
18  so if loans are made from the partnership to Mr. Robertson, and
19  they're put into his account with his other monies, how could
20  anyone determine whether he can spend any money ever related to
21  this partnership agreement?
22      THE COURT: Because he is to figure out how much
23  money he has that comes from other sources. You can trace
24  money, like anything else. But I'm very worried about this.
25      What happens if Mr. Cartinhour is successful in

### Page 31

1  getting back his 3.5 on the grounds that he was defrauded or he
2  entered into an unconscionable? How does he get back the 3.5
3  if it doesn't have the money? That's what I can't figure out,
4  plus there is interest and all the rest. If he prevails, I'm
5  worried that he won't have money to recover.
6      MR. GRIFFIN: Your Honor, there is -- with regards to
7  the accounting, there is two primary contributions to the
8  partnership. There is cash on behalf of Dr. Cartinhour.
9      THE COURT: 3.5.
10      MR. GRIFFIN: 3.5, but then there are also services
11  that are contributed on behalf Mr. Robertson.
12      THE COURT: That's the legal services at 3.8?
13      MR. GRIFFIN: $3.8 million.
14      THE COURT: How do you do that? Based on hours time
15  rate or what?
16      MR. ROBERTSON: We agreed to rate. I have that in
17  writing, Your Honor.
18      THE COURT: But not in the agreement.
19      MR. ROBERTSON: We did agree to the rate. We will
20  provide all of that.
21      THE COURT: What was that rate?
22      MR. ROBERTSON: $485 an hour.
23      THE COURT: You agreed with Mr. --
24      MR. ROBERTSON: For purposes of accounting of value
25  of services I was providing --

### Page 32

1      THE COURT: You valued your hourly rate at 485. So
2  that's what the 3.8 is. Is that right?
3      MR. GRIFFIN: That is correct, Your Honor.
4      THE COURT: So that you wouldn't have to pay the back the
5  loans because you are owed 3.8 by the partnership is your
6  theory?
7      MR. ROBERTSON: Your Honor, think of it as a
8  continuum rather than as a single point in time, because there
9  was a -- at day one, he puts in capital, I put in capital. But
10  the value of those services have not been contributed. It is
11  only over time that suddenly my services began to catch up with
12  the value of the capital that he is contributing.
13      THE COURT: If I understand this accounting, your 3.4
14  in loans would be washed out, because you take the position in
15  partnership -- you have hours up to 3.8.
16      MR. ROBERTSON: That is correct, Your Honor.
17      THE COURT: So you don't owe, in your mind, the
18  partnership anything.
19      MR. GRIFFIN: That certainly could be an outcome,
20  Your Honor. I think the other side is going to contest that.
21  They're going to want to review those hours. They're going to
22  want to take a look at the hourly rate. They want to conduct
23  discovery on it. I certainly understand that and expect it.
24      THE COURT: Does Mr. Robertson have any other sources
25  of income other than what's been generated from this

### Page 33

1  partnership?
2      MR. GRIFFIN: Your Honor, I don't know how that is
3  relevant to the accounting, whether or not he has other sources
4  of income.
5      THE COURT: It is relevant to the problem of my
6  order, that's the thing.
7      Okay, we'll get to that.
8      Was there an agreement to take on this other
9  lawsuit, this A.M. lawsuit that pops up? Is that in writing
10  somewhere that Mr. Cartinhour agreed to a new lawsuit after all
11  this?
12      MR. ROBERTSON: Yes, ma'am. Mr. Cartinhour and I --
13  this is -- if I may, the theory of fraud that has been
14  presented to the Court is that there was an omission to tell
15  Mr. Cartinhour what was going on. Now, I can't vouch here with
16  respect to say that he didn't have the capacity to understand
17  because he was not an attorney. But the theory that I never
18  told Mr. Cartinhour what was going on or that he was never
19  provided documents is belied by the fact that, for instance, he
20  and I sat down and discussed the case. And we did execute --
21  there is a provision in here under buyout that requires a vote
22  and what happens once one matter is -- there's a vote that is
23  to be taken after a particular legal matter is concluded.
24      Mr. Cartinhour and I sat down and discussed the case,
25  and we did actually take this vote. We have it in writing,

Page 34

1   with both our signatures.
2        THE COURT: A vote on --
3        MR. ROBERTSON: That I should continue to work -- not
4   only that we were going to extend the partnership beyond
5   whatever was going to happen with the Liu case, to enable me to
6   take on additional matters as well.
7        THE COURT: Where is this in the agreement? Where
8   are you looking?
9        MR. GRIFFIN: Your Honor, it is the December 6, 2005
10  amendment.
11       MR. ROBERTSON: They existed before then. Legal
12  engagements. That's Article 7.
13       MR. GRIFFIN: That was the December 6, 2005
14  amendment, Your Honor.
15       THE COURT: What tab is that?
16       MR. GRIFFIN: That's also under tab 2 of the Motion
17  to Dismiss.
18       THE COURT: What am I looking for, again? Article
19  what?
20       MR. GRIFFIN: There's the operative vision of the
21  partnership is April 10, 2006, Your Honor. Behind that, I've
22  actually attached the various amendments to the partnership
23  agreement.
24       MR. ROBERTSON: Just to clarify for the Court, Your
25  Honor, if you look at just --

Page 35

1        THE COURT: Article 7, I have it, paragraph three,
2   right?
3        MR. ROBERTSON: Yes, Your Honor.
4        THE COURT: "Only upon a unanimous vote, that is only
5   if all partners so agree, shall Wade Robertson embark upon any
6   new legal representation."
7        Okay. My only question is that in '08, you embarked
8   on A.M., I assume.
9        MR. ROBERTSON: Yes, ma'am.
10       THE COURT: I wanted to know whether there was an
11  affirmative unanimous vote.
12       MR. ROBERTSON: Yes, ma'am. The vote was actually --
13  the vote was taken, I believe -- I don't know why we have not
14  included a copy of it here, but it was an executed document
15  with both our signatures. The vote was, I believe -- and I ask
16  the Court's permission to amend this statement if I find it was
17  incorrect, but with respect to the timing, I believe it was
18  taken between the time that the Lui case was dismissed at the
19  trial court level but before there was a final decision from
20  the Second Circuit Court of Appeals.
21       And Mr. Cartinhour -- and such that even though I
22  continued to work on the Lui proceedings and continued to the
23  work on the appellate proceedings and continued to work on a
24  possible refiling of the case, still Mr. Cartinhour -- we sat
25  down and talked about it, and he authorized that I could go

Page 36

1   ahead and begin to engage in additional securities class
2   actions if I could find something that was appropriate on
3   behalf of the partnership, which would belie the allegation
4   made by the other side that Mr. Cartinhour didn't know the case
5   had been dismissed or that it was in the appellate proceedings.
6        This fraud by omission, Your Honor, they can say in a
7   pleading prior to getting into discovery that Mr. Cartinhour
8   was never provided any document. And that's -- for pleading
9   purposes, they can say that. But if this attach -- for you,
10  Your Honor, if they attach a letter and the letter says that
11  enclosed herein is a copy of the brief we filed last week, and
12  the brief that is filed is the appellate brief for the Second
13  Circuit and they just -- they omit to include that --
14       THE COURT: I knew he got the brief. But I love your
15  letter. It said he is confident that our position continues to
16  grow stronger and we'll ultimately be wildly successful. It is
17  unbelievable, after you get thrown out of District Court, to
18  say something like that. But that is neither here nor there.
19       Okay. So the case gets thrown out of District Court
20  sometime in April of '05. It goes -- it gets thrown out of
21  Second Circuit on May '06. So when did you start on the A.M.
22  case?
23       MR. ROBERTSON: You have to look at the hours I
24  provided, Your Honor.
25       THE COURT: I have, '08. That's why I'm asking the

Page 37

1   question. It does not make sense.
2        MR. GRIFFIN: Your Honor, I believe the --
3        THE COURT: You had 190 hours total. Sixty-eight in
4   2008 and 122 in 2009.
5        MR. GRIFFIN: First, Your Honor, there were efforts
6   that were expended -- if we look at the affidavit that was
7   submitted by Mr. Clevenger in 2007, Mr. Clevenger was
8   retained -- it was attached to our -- it was also a part of the
9   affidavit that was submitted.
10       THE COURT: That's Liu, though. I'm talking about
11  A.M.
12       MR. GRIFFIN: That was the Liu litigation. Then the
13  A.M. litigation begins --
14       THE COURT: I can only go by the record. Did you
15  enter an appearance? Was there an A.M. litigation?
16       MR. ROBERTSON: Your Honor, that is clearly labeled
17  prefiling.
18       MR. GRIFFIN: August of 2008, Your Honor. Since
19  August 2008 in the records that are here.
20       THE COURT: I'll ask counsel this, not Mr. Robertson.
21  Are you aware of any litigation upholding these kinds
22  of agreements? That is, agreements to invest in class actions
23  like this. Has that ever been litigated? I know that some
24  jurisdictions have been a little hesitant. I know what the
25  D.C. Bar opinion says, but I just wondered whether any of these

## Page 38

1  private agreements to invest in class actions have actually
2  been litigated.
3      MR. GRIFFIN: Are you talking about the partnership
4  agreements themselves?
5      THE COURT: Yeah.
6      MR. GRIFFIN: I'm not aware of any of the -- of these
7  partnership agreements having been litigated to trial. But I
8  would be happy --
9      THE COURT: It is a little different. You are
10 assigning nonlawyers rights in litigation as an investment.
11 That is a fairly novel idea.
12     MR. GRIFFIN: Your Honor, the partnership between a
13 lawyer and nonlawyer, I believe it's exclusive to the District
14 of Columbia. It is the only jurisdiction that provides for
15 these types of partnerships.
16     THE COURT: That's an amazing thought. You mean the
17 same thing would not be permissible in New York? You said New
18 York has something that is not the same?
19     MR. ROBERTSON: I don't know what the --
20     THE COURT: The reason this is governed by D.C. law
21 is because you have a little storefront in D.C.? Because
22 Mr. Cartinhour lives in Maryland. I know your agreement says
23 it is governed by D.C. law. But you picked the one law that is
24 most favorable, right? You don't practice here.
25     MR. GRIFFIN: Your Honor, the partnership agreement

## Page 39

1  was designed to have D.C. as the jurisdiction. It was also
2  because Mr. Robertson did maintain an office in D.C. during
3  that time.
4      THE COURT: You don't actually practice law in D.C.
5      MR. ROBERTSON: Your Honor, I am licensed in D.C.
6      THE COURT: Of course. That's why the Bar is
7  involved.
8      But you don't have a -- is your office a real office?
9  If I go up there, could I get legal services or it's a
10 storefront?
11     MR. ROBERTSON: It was a real office, Your Honor. It
12 was a real office up until the end of '08.
13     THE COURT: Okay. I thought you were in California
14 most of the time.
15     MR. ROBERTSON: Your Honor, I have traversed the
16 country. My home is actually -- I live in a suitcase.
17     THE COURT: Where do you have your car registered?
18     MR. ROBERTSON: Tennessee. That's -- both parties
19 have acknowledged that in the pleadings with respect to the
20 diversity jurisdiction.
21     THE COURT: When did you establish an office in D.C.?
22     MR. ROBERTSON: Off the top of my head, I don't --
23     THE COURT: When did you waive in to the Bar?
24     MR. ROBERTSON: Off the top of my head, I don't
25 recollect the date.

## Page 40

1      MR. GRIFFIN: We can find that out for Your Honor.
2      THE COURT: Was it before --
3      MR. GRIFFIN: He is not sure of the exact date, Your
4  Honor.
5      THE COURT: Is it before or after '04?
6      MR. GRIFFIN: He can't remember the exact date. I
7  wanted to be clear about the office, that it is no longer --
8      THE COURT: I understand. I'm interested in when it
9  came to pass and when he became a member of the D.C. Bar.
10 We'll call the Bar. They'll tell us right away. Do
11 we know now?
12     He became a member of the D.C. Bar in '05.
13     I doubt you had an office before that; otherwise,
14 that's unauthorized practice of law.
15     MR. ROBERTSON: I'm sorry, Your Honor?
16     THE COURT: You cannot run a law office in this city
17 without becoming a member of the Bar. According to the Bar,
18 they told us it was 2005.
19     MR. ROBERTSON: Yes, Your Honor, but I was not
20 running -- this is a partnership, Your Honor. If you look back
21 at the papers, you look at the express agreements and if you
22 look at the intent that's codified in the agreements between
23 the parties, this is not a passive investment. Both sides --
24 it was made abundantly clear, Mr. Cartinhour was supposed to
25 provide services. He did provide some services. He warranted

## Page 41

1  to me that he was going to bring employees into the partnership
2  that were going to help administer in those services that he
3  was going to be providing.
4      It was also anticipated at the time that the Bar
5  rules were in flux. There was an amendment before the Court of
6  Appeals that they were supposed to allow us to provide services
7  beyond solely the provision of and ancillary legal services.
8      So, this is -- you know, this is not a passive
9  investment. There was -- the other side can think that. We
10 can go to discovery. But the agreements themselves make that
11 abundantly clear.
12     THE COURT: Only if the agreements are held up as
13 valid. A jury may get to decide that.
14     Let's hear from the other side. I have this freezing
15 order in place. I think in order to properly address that, I
16 think we have to move by way of proper preliminary injunction
17 and take some discovery.
18     MR. KEARNEY: Yes, Your Honor.
19     THE COURT: I'm very concerned on where this money
20 is. I can't figure it out. But if Mr. Robertson -- I mean
21 Mr. Cartinhour is successful, I don't see how he is going to
22 get any money back.
23     MR. KEARNEY: That bothers me greatly, and it bothers
24 my client. Three and a half million dollars went out over the
25 last couple of years. You can't spent 3.5 million that fast

## Page 42

1  without having some kind of asset someplace. That's my only
2  real hope.
3      I find this entirely fascinating that really what
4  happened is Mr. Cartinhour invested money into this partnership
5  so that he could support Mr. Robertson. That's what the
6  partnership agreement should say: I am going to put my money
7  in. You are going to take my money out and live off of it.
8      THE COURT: Taking his point of view, your guy was
9  going to hit the bonanza with this case except that somewhere
10  along the line, it went up in smoke, as far as I can tell.
11  Even the IPO didn't do so well. The class certification and
12  *that got reversed and without class certification is my*
13  restriction. I didn't realize the two cases were connected.
14  But when -- the Second Circuit basically took a hard line on
15  the class certification of the IPO. Anyway...
16      MR. KEARNEY: That's how it was sold, that it was
17  going to be millions, if not a half a billion dollars, in terms
18  going into Mr. Cartinhour's pocket. I don't want to mince
19  words. It is the kind of words that a Charlatan would use.
20      THE COURT: We'll have to see. Mr. Cartinhour is
21  going to have to testify, too. I'm not granting any motions
22  because I can't, as a matter of law, say these agreements are
23  valid, given all the evidence in front of me. It is highly
24  contested. But the big question is whether we go forward with
25  some kind of preliminary injunction to freeze things in the

## Page 43

1  interim. That's up to you folks.
2      MR. KEARNEY: Your Honor, if they don't want to agree
3  to it, I would like to have a hearing. I will also say, Your
4  Honor --
5      THE COURT: I think you need some discovery.
6      MR. KEARNEY: I do need some discovery. Just for
7  starters, I issued subpoenas to Citibank, which was the
8  partnership's bank, asking production of bank records for the
9  partnership and for Mr. Robertson.
10      I actually issued the subpoenas in the District of
11  Maryland because my office is located n Maryland, and that's
12  where I wanted the document production.
13      Mr. Robertson has filed a motion to quash in the
14  District of Maryland. I filed an objection, saying that if --
15  he does not really have standing to quash it. If he needs a
16  protective order, he needs to be down here. But he has kind of
17  slowed up my production of documents in the Maryland -- with
18  Citibank.
19      THE COURT: Well, all right. It seems to me that the
20  issue comes down to a P. I. I'm willing to schedule *one and*
21  listen to the parties under oath, if need be. But in order to
22  get a P. I., generally speaking, the most important thing that
23  I have to know is where is the money? Does he have money to
24  pay him back? Does he have other sources of income? There are
25  issues regarding bonds. And how likely -- what is the

## Page 44

1  likelihood of success here?
2      I'm not attaching what he has. What I am doing, if I
3  do it at all, is freezing the assets so he does not spend them,
4  making it useless for the counterclaims to go forward. I see
5  merit in the counterclaims. Mr. Robertson clearly disagrees.
6  He thinks that because Mr. Cartinhour signed away everything --
7  what red flag comes up here, Mr. Robertson, which you don't
8  seem to appreciate, is that this is an incredibly one-sided
9  deal. You get 3.4 million in loans, you get backing for a
10  lawsuit that lost its legs at least by '06, if not earlier.
11  And Mr. Cartinhour gets nothing other than the inability to
12  sue.
13      You say you had no fiduciary relationship to the
14  gentleman, you had no attorney/client, and that he is just
15  voluntarily giving up all this money. There is something about
16  it that a normal person -- I can tell you a juror will have the
17  same healthy amount of skepticism.
18      Some way or another, you claim that he can put you
19  into bankruptcy. The agreement says you both have to agree to
20  put you into bankruptcy. But you have three lawyers here, and
21  the money is obviously coming out of Mr. Cartinhour's pocket,
22  as far as I can tell. That will be very significant as part of
23  the discovery here.
24      Once you lose on these motions, all bets are off.
25  All your activities are going to be under careful scrutiny

## Page 45

1  because to say that these are billing records -- I have no idea
2  what backs them up.
3      But there is more time spent on a lawsuit after it's
4  gotten thrown out by the Supreme Court than I've ever
5  encountered before in my like.
6      Now, I'm sure that they will ask you about these
7  kinds of things. But the lawsuit goes out of the Second
8  Circuit -- I have to keep track of all this -- in May '06.
9      And in the Liu case, just off the top here, you
10  billed in '07 -- '07 in the case that had been thrown out 1400
11  hours. The Supreme Court denied Cert. So we really got it
12  thrown out in 12-06. Sorry. After that, in '07 and '08 -- I
13  have no idea about '09 -- you've now billed 1500 hours.
14      I worked in a law firm. Billing up 1500 hours -- in
15  the year of '05, you billed on one case 3200 hours. At
16  Williams & Connolly, if you billed up 3200 hours, they would be
17  surprised, to say the least, that that was valid. And they
18  used to bill a lot, as Mr. Fox knows.
19      So to get up to 3200, 3300 is pretty much a record
20  *for a year. But a couple of thousand hours after a case has*
21  been denied Cert from the Supreme Court raises all kinds of red
22  flags here. You don't have to be Einstein.
23      My suggestion here is that we have to go forward.
24  I'm not going to reconsider the order until we've had the
25  opportunity to have a real hearing. I suspect we may end up

### Page 46

1  having evidence and discovery.
2      MR. GRIFFIN: Your Honor, I'm not clear on how -- if
3  opposing counsel wants to take these depositions in Texas and
4  in California and Alabama, I mean, costs related to those
5  depositions, we just don't have -- we would ask that the
6  hearing be conducted first, certainly before depositions were
7  taken outside the District of Columbia in order to avoid costs
8  being --
9      THE COURT: How is he going to prove the case that he
10  has a likelihood of success on the merits and that he can't --
11  his assets are critical?  Does he have other sources of income?
12  He didn't answer my question on that.  Does he have the means
13  to pay back this money?  He says if he calls the loans, they'll
14  bankrupt him.  So, if he has a likelihood of success on the
15  merits, which is recovering more than 3.5 million, and he can't
16  pay it, then this gentleman is entitled to some kind of freeze.
17  You can agree to it, as far as I'm concerned, that's fine.
18  Otherwise, he is entitled to both discovery and to prove his
19  case, the preliminary injunction.
20      That's a nonjury event.
21      But I don't see that it overlaps with the merits.  So
22  either you agree to something and go forward for the whole ball
23  of wax or we have a P. I. short of it.  You can discuss this
24  with your opposing counsel if you want for a few minutes.  But
25  he is entitled to some kind of P.I. based on the facts so far

### Page 47

1  as we know it.
2      But a critical part of that is, one, the likelihood
3  of success.  But the other is, does Mr. Robertson have the
4  money to cover a judgment here in the event that Mr. Cartinhour
5  succeeds.
6      MR. GRIFFIN: I think that effectively, though, cuts
7  out any defense of the case if he is unable to pay for costs,
8  if he's unable to pay --
9      THE COURT: He is a lawyer.  He doesn't have a
10  constitutional right to have three lawyers sitting here.  We
11  can try to work something out, I suppose.
12      While you are saying here he should be able to spend
13  the money out of this partnership -- so Cartinhour sues him,
14  Cartinhour pays for his defense because it involves the
15  partnership?  I think you are getting a bit circular.  Sorry.
16  If he is entitled to a freeze, he is entitled to a freeze.  And
17  Mr. Robinson is not entitled to use Mr. Cartinhour's capital
18  infusion into the partnership to defend himself on what are
19  really, in a lot of ways, things that have nothing to do with
20  the partnership.  The money is not with the partnership
21  anymore.  There is not a penny in the partnership except for
22  $4,000 in a bank account.  That's all there is.
23      So if you can take loans that have zero interest and
24  you are not required to pay them back for long time, and you
25  can use it for whatever way you want, you could go travel to

### Page 48

1  Brazil, you could pay three lawyers to represent you, you can
2  do whatever you want, then you are saying at the end of the
3  day, Mr. Cartinhour, no matter what his rights are and how
4  successful he is, gets nothing because you got the money, or
5  maybe a hotel in Brazil gets the money.  That's preposterous.
6  If he has other money to cover the possible liability here,
7  then it is not a problem.
8      MR. GRIFFIN: If he were to obtain a judgment, that
9  judgment would be good for a considerable length of time.
10      THE COURT: The man is 82 years old.  That's not
11  going to be a considerable length of time.  The law allows them
12  to go forward for a P. I.  Part of the criteria is whether
13  there is a likelihood of success on the merits and an
14  irreparable injury.  Irreparable injury would be, I have a
15  strong case on liability and you'll never pay me unless you,
16  the Court, maintains the status quo.  The status quo means you
17  can't take what is left.  So far, I don't know if anything is
18  left. He's got loans of 3.4.  I have no idea whether he has
19  any capital.  That's what they're entitled to discovery on, and
20  the merits.
21      If you want to come up with some other avenue to go
22  about this -- but I have -- you know, I am not ready to sit
23  here and say, oh, well, Mr. Cartinhour, you just litigate this,
24  and maybe some day you may recover if you are lucky.  No way.
25  There is something about this, Mr. Robertson, that is not going

### Page 49

1  to pass muster.  That's where it stands right now.  I would be
2  very surprised that the D.C. Bar will think it passes muster
3  either when they hear -- it does not take much when you hear
4  the man is now 82 years old and does not come out of his house
5  very often.  If that is not true, then we'll find it out.  He
6  will have to be deposed.  We will have to hear what he
7  understood.
8      I find it very hard to think that a lay person
9  understands the value of a lawsuit, especially after the
10  District Court throws it out in the Second Circuit.
11      MR. GRIFFIN: Your Honor, could we have maybe ten
12  minutes so I have an opportunity to confer with my client and
13  also confer with counsel to see if we can work out some sort of
14  resolution with regards to the P. I. hearing?
15      THE COURT: That's fine.  We'll take a ten-minute
16  recess and we'll come back at 12:00.  The final question is
17  what the schedule is.  We can't let the P. I. hang for long.
18  So you have to take emergency, you know, the bare bones minimum
19  discovery to get to a P. I. in terms of the likelihood of
20  success and where is the money now and what other sources of
21  income.  Okay.
22      We'll resume in about ten minutes.  Thank you.
23      MR. GRIFFIN: Thank you, Your Honor.
24      (A brief recess was taken.)
25

## Page 50

1    THE COURT: Do the counsel have a proposal for how we
2  want to proceed from here?
3    MR. GRIFFIN: Your Honor, we were just in
4  discussions. I think we've agreed that we would work together
5  to verify the remaining assets that Mr. Robertson has and get
6  them into some form from Citibank or some format that is going
7  to be acceptable to counsel for Mr. Cartinhour.
8    THE COURT: Do you want to take any discovery? Maybe
9  this is the way to figure it out.
10    MR. GRIFFIN: Your Honor, from what I was talking
11  about with Mr. Griffin, at the get go, to see how the parties
12  really ought to resolve this in terms of financial issues, if
13  we could go ahead and get the bank discovery done. He and I
14  can talk. And maybe we'll need another status conference to
15  decide what really needs to happen.
16    THE COURT: We can do another status conference.
17  That's fine. Today is the 11th. I'm holding this Motion to
18  Reconsider in abeyance. But I want a schedule. Either you
19  come up with a schedule and submit it to me jointly -- that's
20  fine. I'll set something down for a hearing if need be. But I
21  think you probably need to consult within the next 24 hours and
22  come up with a schedule.
23    MR. KEARNEY: Yes, Your Honor.
24    MR. GRIFFIN: Yes, Your Honor.
25    THE COURT: If you want an evidentiary hearing, we

## Page 51

1  have to put aside some time. If you want it just on the
2  papers, that something else.
3    You are going to have to file a formal P. I.
4    MR. KEARNEY: Yes, Your Honor.
5    THE COURT: That's going to be part of your schedule.
6  So if you want to call chambers -- you can do one of two
7  things. You can call, and if we need to discuss it, if you
8  need a date for hearing, or just submit what you want. But I
9  think we need to operate rather quickly. So I suggest you call
10  up -- can you come up with a proposal by Thursday around noon,
11  call chambers and let us know where you're --
12    MR. KEARNEY: Yes, Your Honor.
13    THE COURT: We'll have a conference call at 12:00 on
14  the 14th about scheduling. At that point, you will tell me
15  who you need for discovery.
16    We can collapse this whole thing. We have that
17  right, too. You can take the whole ball of wax and collapse it
18  into a hearing on the merits, although there may be certain
19  jury triable issues here. I can't remember. Or we go for a P.
20  I., if we want to continue the status quo. We have to do
21  something to give them the opportunity to take discovery, both
22  sides here. So when you call on the 14th, let us know.
23    If you look under Rule 65, if you want, you can
24  collapse the injunction part on the merits, any equitable
25  stuff -- and not have a two-part proceeding. And you'll

## Page 52

1  expedite the whole thing.
2    How much is jury triable here, I have no idea. But
3  the damages certainly would be. Okay. We'll speak at noon on
4  the -- Thursday. Okay?
5    MR. KEARNEY: Yes, Your Honor.
6    THE COURT: All right. That's fine. We've taken
7  care of -- the Motion to Dismiss has been denied for the
8  reasons stated in open court as well as the Summary Judgment.
9  And the last is held in abeyance. But we have to move fairly
10  quickly on that. All right?
11    MR. GRIFFIN: Your Honor, are you asking for a
12  schedule within the next 24 hours or just the conference call
13  on Thursday?
14    THE COURT: I'm hoping you will have a schedule to
15  propose to me then. But if we need to set something on my
16  calendar, then I need to be involved so I can pick a date.
17    MR. GRIFFIN: We just need to touch base with some of
18  the financial institutions and find out the turnaround for
19  getting documents from them.
20    THE COURT: And whatever else you want beyond that.
21    MR. GRIFFIN: Thank you, Your Honor.
22    MR. KEARNEY: Thank you.
23    (Whereupon, at 12:05 P.M., the hearing adjourned.)
24
25

## Page 53

1
2    CERTIFICATE OF REPORTER
3
4    I, Lisa Walker Griffith, certify that the foregoing
5  is a correct transcript from the record of proceedings in the
6  above-entitled matter.
7
8
9
10

Lisa Walker Griffith, RPR          Date
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# FILED

**MAR 0 1 2010**

Clerk, U.S. District and
Bankruptcy Courts

|  |  |
|---|---|
| WADE A. ROBERTSON, | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No. 09-01642 (ESH) |
| WILLIAM C. CARTINHOUR, JR., | ) |
| Defendant. | ) |

### CONSENT PRELIMINARY INJUNCTION

Upon consideration of the representations of the parties in open Court and the voluntary agreement of the parties as evidenced by their endorsements and the endorsement of their respective counsel below, it is this 1st day of March, 2010

ORDERED, that Wade A. Robertson and those acting in concert with him or on his behalf are enjoined from transferring, withdrawing, spending, using, encumbering, lending, borrowing against or concealing any amount of money in any Charles Schwab Accounts in which Wade A. Robertson has any interest whatsoever, including but not limited to, Account Nos. 3163-0072 and 3183-9331, and any Citibank Accounts in which Wade A. Robertson or W.A.R., LLP has any interest whatsoever, including but not limited to, Citibank Accounts numbered: 15247880, 15247864, 15247872, 15247724 and 50700961; and it is further

ORDERED, that Wade A. Robertson and those acting in concert with him or on his behalf are enjoined from transferring, withdrawing, spending, using, encumbering, lending, borrowing against or concealing any assets, accounts, funds, monies, or other property of any

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 46 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 31 of 62   Page 2 of 3

kind, however denominated, which was purchased, acquired, or funded with monies directly or indirectly from the above listed Charles Schwab accounts or the W.A.R., LLP Citibank accounts listed above; and it is further

ORDERED, that any monies held directly or indirectly by Edward Griffin, Esquire, or any other attorney or expert retained by Wade A. Robertson on behalf of Wade A. Robertson in this matter, and with respect to the Bar Counsel Complaints/Investigation, and any criminal proceeding in connection with this matter, shall be surrendered for deposit into the Registry of the Court within five (5) days of the date of this Order; and it is further

ORDERED, that no money from any assets, accounts, funds, monies or other property, in which Wade A Robertson has an interest or controls, directly or indirectly, may be used for any attorneys fees or for any expense, purchase or use, unless it is acquired by Wade A. Robertson from a third party source which has no direct or indirect relationship to the assets which are subject to this Order; and it is further

ORDERED, that any assets, accounts, funds, monies, or other property   disclosed to Cartinhour's counsel within five (5) days of this Order shall not constitute a concealment of assets as contemplated hereinbefore. However, any such assets, accounts, funds, monies or other property remain subject to the terms and requirements of this Order as of today's date; and it is further

ORDERED, that this order shall expire at 5:00 p.m. on March 22, 2010, unless extended by further order of this Court; and it is further

2

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 47 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 32 of 62
Case 1:09-cv-01642-ESH   Document 70   Filed 03/01/10   Page 3 of 3

ORDERED, that unless the Parties file a notice of dismissal, the Court shall hold a

hearing on to consider a Preliminary Injunction on the ~~31st~~ *2nd* day of March, 2010 commencing at

_1:45_ , ~~a.m.~~; and it is further *P the parties will be required to attend*

ORDERED, that Wade A. Robertson agrees to forthwith dismiss or withdraw his appeal

of the Order of the United States District Court for the District of Maryland, Case No. 8:09-cv-

03436-AW denying his Motion to Quash; and it is further

ORDERED, that Wade A. Robertson shall dismiss or withdraw the pending appeals to

the United States Court of Appeals for the District of Columbia Circuit.

*inkdocuments
re
relating
to the
motion to
quash
now pending*

_____

SIGNED AND AGREED TO BY:

_____
Wade A. Robertson

_____
William C. Cartinhour, Jr.

_____
Edward N. Griffin, Esq.
Counsel for Wade A. Robertson

_____
Patrick J. Kearney, Esq.
Counsel for William Cartinhour, Jr.

ORDERED BY:

_____
UNITED STATES DISTRICT JUDGE

_3/1/10_
DATE

3

# EXHIBIT D

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 10-7033**

**September Term 2010**

**1:09-cv-01642-ESH**

**Filed On:** December 14, 2010

Wade Robertson,

        Appellant

    v.

William C. Cartinhour, Jr.,

        Appellee

**BEFORE:** Ginsburg and Garland, Circuit Judges;
Edwards, Senior Circuit Judge

## O R D E R

Upon consideration of appellee's affidavit of attorneys' fees and costs, filed pursuant to this court's October 19, 2010 order, it is

**ORDERED** that attorneys' fees and costs, in the amount of $6,446.06, be awarded to Selzer Gurvitch Rabin & Obecny, Chtd. and assessed against appellant's counsel, Ty Clevenger. The documented fees and costs appear reasonable, and appellant's counsel has not disputed the amount. The attorneys' fees and costs are payable directly between those parties. Payment should not be submitted to the Clerk.

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Michael C. McGrail
Deputy Clerk/LD

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| *In re* W.A.R. LLP | Bankruptcy Case No.: 10-32530<br><br>CHAPTER 7,  INVOLUNTARY |

| | |
|---|---|
| WADE ROBERTSON,<br><br>      Plaintiff,<br><br>vs.<br><br>WILLIAM C. CARTINHOUR, JR.,<br><br>      Defendant. | Case No.: _____<br><br>**CORE PROCEEDING** |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Wade Robertson alleges as follows:

**Jurisdiction over the Claims**

1.      This Court has subject matter jurisdiction over the claims for relief under 28

U.S.C. §§ 1334 (a) & (b).  Also, the instant matter is a "core proceeding" within the meaning of

the Bankruptcy Code.

**Venue**

2.      Venue in this judicial district is proper under 28 U.S.C. §§ 1408-1409.

**Parties**

3.      Plaintiff Wade Robertson ("Mr. Robertson") is a citizen of Tennessee and a

partner in WAR LLP, the debtor partnership for which the above entitled involuntary bankruptcy

petition is pending.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 52 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 37 of 62
Case 10-32530   Doc 2   Filed 11/17/10   Entered 11/17/10 10:36:58   Desc Main
Document   Page 2 of 11

4.      Defendant William C. Cartinhour, Jr. ("Dr. Cartinhour") is a citizen of Maryland
and a partner in WAR LLP, the debtor partnership for which the above entitled involuntary
bankruptcy petition is pending.

## Factual Allegations

5.      On September 16, 2004 and September 17, 2004, Dr. Cartinhour and Mr.
Robertson executed several written agreements establishing between themselves a multi-
disciplinary-practice professional partnership named W.A.R. LLP in the District of Columbia
(hereafter, the "Partnership").

6.      On or about January 19, 20, 21, 22, and 23 of 2006, Mr. Robertson was told by
several of Dr. Cartinhour's agents that Dr. Cartinhour intended to sue Mr. Robertson and/or the
Partnership.

7.      Subsequently, between March 13, 2006 and April 6, 2006, one of Dr.
Cartinhour's agents told Mr. Robertson of a scheme by Dr. Cartinhour to sue Mr. Robertson and
the Partnership.

8.      Subsequently, Mr. Robertson asked Dr. Cartinhour if what he had been told was
true about Dr. Cartinhour's intention to sue him and the Partnership. Dr. Cartinhour denied those
allegations. In order to further assure Mr. Robertson that the allegations were untrue, on April 7,
2006, Dr. Cartinhour went with Mr. Robertson before a notary public in the District of
Columbia. At that time, Dr. Cartinhour executed an "Indemnification, Hold Harmless, and
Agreement to Waive All Claims" for the benefit of both Mr. Robertson and the W.A.R. LLP
partnership (hereafter, the "Indemnification and Hold Harmless Agreement"). In addition to
releasing any claims against Mr. Robertson or the Partnership, Dr. Cartinhour agreed to
indemnify and to hold harmless Mr. Robertson and the Partnership for any future claims that

-2-

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 53 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 38 of 62
Case 10-32530   Doc 2   Filed 11/17/10   Entered 11/17/10 10:36:58   Desc Main
Document   Page 3 of 11

might be brought by him or on his behalf. A true and correct copy of the notarized document is

attached hereto as "Exhibit A."

9.      The Indemnification and Hold Harmless Agreement states as follows:

I, William C. Cartinhour, Jr., residing at 10500 Rockville Pike, apt. 1619, Rockville,

Maryland 20852, being of sound mind and memory and not acting under duress, menace,

fraud, or undue influence of any person, in exchange for consideration of all past

assistance and work and also for work done this day concurrent with the execution of this

document by Wade A. Robertson personally and/or W.A.R. LLP. as an entity, do hereby

AGREE and COVENANT as follows: That on behalf of myself and my heirs, executors,

administrators, successors, beneficiaries, and assigns, whether herein named or referred

to or not, do hereby release, discharge, and acquit and by these presents does hereby

release, acquit, and forever discharge Wade A. Robertson personally and/or W.A.R. LLP.

as an entity (and its servants, and employees, its divisions, subdivisions, and affiliates), of

and from any and all past, present, and future claims, counterclaims, demands, actions,

causes of action, liabilities, damages, costs, loss of services, expenses, compensation,

third-party actions, suits at law or in equity, of every nature and description, whether

known or unknown, suspected or unsuspected, foreseen, or unforeseen, real or imaginary,

actual or potential, and whether arising at law or in equity, under the common law, state

or federal law, or any other law, or otherwise, including, but not limited to, any claims

that have been or might have been asserted as a result of any relationship, hereinafter

collectively referred to as claims. Further, I hereby declare that I understand, covenant,

and agree that I will not make any claims or demands, or file any legal proceedings

against Wade A. Robertson personally and/or W.A.R. LLP. as an entity or join any of

Case 1:11-mc-00283-RCL  Document 1  Filed 05/17/11  Page 54 of 192

Case 11-00044    Doc 132-1    Filed 05/13/11    Entered 05/13/11 15:49:47    Desc Motion
to Withdraw Reference Part 1    Page 39 of 62
Case 10-32530    Doc 2    Filed 11/17/10    Entered 11/17/10 10:36:58    Desc Main
Document    Page 4 of 11

them as a party to any claim, demand, or legal proceedings nor shall I proceed against

any other party, person, firm, or corporation on the claims described above. It is my

intention hereby to effect a full and final general release of all such claims. It is expressly

understood and agreed that this release and Agreement is intended to cover, and does

cover, not only all now known injuries, losses, and damages, but any future injuries,

losses, and damages not now known or anticipated, but which may later develop or be

discovered, including all the effects and consequences thereof.

10.    With respect to the indemnification and hold harmless provisions, the

Indemnification and Hold Harmless Agreement states as follows:

I shall indemnify and hold harmless Wade A. Robertson personally and/or W.A.R. LLP.

as an entity from any and all judgments, costs, expenses, or attorney fees whatsoever

arising on account of the filing of any such claim, demand, or other legal proceeding by

myself or my heirs, executors, administrators, successors, beneficiaries, and assigns,

whether herein named or referred to or not.

11.    Mr. Robertson at all times relied upon these acts of Dr. Cartinhour and the

Indemnification and Hold Harmless Agreement and he would not have remained in the W.A.R.

LLP partnership with Dr. Cartinhour but for these acts by Dr. Cartinhour.

12.    On August 21, 2009, one of Dr. Cartinhour's attorneys wrote Mr. Robertson a

letter threatening to immediately sue him on Dr. Cartinhour's behalf.

13.    On August 28, 2009, Mr. Robertson filed *Wade Robertson v. William C.

Cartinhour, Jr.*, Case No. 1:09-cv-01642 (D.D.C.)("D.C. Case"), seeking a declaratory judgment

regarding the provisions of the Indemnification and Hold Harmless Agreement.

14.    On October 28, 2009, Dr. Cartinhour filed counter-claims (on behalf of himself

- 4 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 55 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 40 of 62
Case 10-32530   Doc 2   Filed 11/17/10   Entered 11/17/10 10:36:58   Desc Main
Document   Page 5 of 11

and the Partnership) against Mr. Robertson alleging fraud and breach of fiduciary duties. The case is set for trial before The Hon. Ellen S. Huvelle during the week of November 29, 2010.

15.   Judge Huvelle did not permit Mr. Robertson to bring claims in response to Dr. Cartinhour's counterclaims, and Mr. Robertson later filed fraud and racketeering claims against Dr. Cartinhour and various attorneys in the law firm representing him, including Patrick Kearney, Michael Bramnick, Robert Selzer, and Carlton Obecny, on November 2, 2010. That case, *Wade Robertson v. William C. Cartinhour, Jr., et al.*, Case No. 10-cv-08442 (S.D.N.Y.), is pending before Judge Laura Taylor Swain. It does not purport to bring claims on behalf of the Partnership.

16.   After October 28, 2009, Mr. Robertson began incurring substantial attorney fees and costs in defending against claims brought by Dr. Cartinhour and the Partnership in the D.C. Case.

17.   On January 11, 2010, Mr. Robertson made a demand in person to Dr. Cartinhour for indemnification of the fees and costs thus incurred and also to be held harmless for future costs and fees expected in suit. Dr. Cartinhour denied the demand.

18.   On January 11, 2010, Dr. Cartinhour told Mr. Robertson in person that he intended to initiate additional suits, including suits against other agents of Robertson and the Partnership. Mr. Robertson made a demand to be held harmless in these additional suits but Dr. Cartinhour denied the demand.

19.   To date, Mr. Robertson has expended not less than $100,000.00 in fees and costs in defending against said suit by Dr. Cartinhour. These fees and costs have all been incurred pre-trial.

20.   Mr. Robertson files this adversarial proceeding because Judge Huvelle has not yet

- 5 -

addressed the request for declaratory judgment, and Dr. Cartinhour refuses to honor the

Indemnification and Hold Harmless Agreement. In the interest of full disclosure, Mr. Robertson

did not seek injunctive relief before Judge Huvelle, but he did assert the release clause in a

motion for summary judgment. Judge Huvelle denied that motion, but she has not addressed the

hold harmless and indemnification issues.  Insofar as Dr. Cartinhour purports to bring claims on

behalf of the Partnership, Mr. Robertson believes that the matter is, without doubt, a core

proceeding subject to the jurisdiction of this Court.

<u>Claims</u>

*Count One: Injunctive Relief*

21.     Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

the foregoing paragraphs as if fully set forth herein.

22.     Per the explicit terms of the Indemnification and Hold Harmless Agreement, Mr.

Robertson is entitled to be held harmless by Dr. Cartinhour and to have all fees and costs

advanced to him in defending against any suit whatsoever brought by Dr. Cartinhour or on his

behalf.

23.     Mr. Robertson has demanded to be held harmless by Dr. Cartinhour but said

demand has been denied.

24.     Unless Dr. Cartinhour is preliminarily and permanently enjoined from engaging

in any further litigation on Dr. Cartinhour's behalf against Mr. Robertson or his agents without

first advancing necessary fees and cost to hold them harmless in such a suit, Mr. Robertson will

be irreparably injured by the irretrievable loss of his economic rights in the hold harmless to be

advanced such fees and costs in defense.

25.     Said future economic losses that would be incurred by Mr. Robertson absent the

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 57 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc Motion
to Withdraw Reference Part 1   Page 42 of 62
Case 10-32530   Doc 2   Filed 11/17/10   Entered 11/17/10 10:36:58   Desc Main
Document   Page 7 of 11

requested injunctive relief are not less than $100,000.00 per suit based upon the fact that Mr.

Robertson has already incurred more than $100,000.00 in defending against the claims and/or

suit brought against him on October 28, 2009 by Dr. Cartinhour.  Mr. Robertson's right to be

held harmless for those expenditures has already been irretrievably lost.

26.     Mr. Robertson has no adequate remedy at law for the immediate and irreparable

harm he is suffering and will continue to suffer if Dr .Cartinhour is not enjoined from proceeding

in any suit against him without first advancing Mr. Robertson the fees and costs to defend

himself as covenanted by the hold harmless provisions of the Indemnification and Hold

Harmless Agreement.

27.     Injunctive relief is needed to prevent further harm to Mr. Robertson.

28.     Injunctive relief is appropriate in these circumstances because Mr. Robertson

most likely will prevail on the merits of his claims and the balancing of the equities favors Mr.

Robertson.

*Count Two: Indemnification*

29.     Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

the foregoing paragraphs as if fully set forth herein.

30.     Per the explicit terms of the Indemnification and Hold Harmless Agreement, Mr.

Robertson is entitled to indemnification and to be reimbursed by Dr. Cartinhour for all fees and

costs expended or incurred by Mr. Robertson in defending against any suit whatsoever brought

by Dr. Cartinhour or on his behalf.

31.     Consequently, Mr. Robertson is entitled to be reimbursed not less than

$100,000.00 for the fees and costs incurred by him in defending against the claims and/or suit

brought against him on October 28, 2009 by Dr. Cartinhour.

- 7 -

Case 1:11-mc-00283-RCL Document 1 Filed 05/17/11 Page 58 of 192

Case 11-00044  Doc 132-1  Filed 05/13/11  Entered 05/13/11 15:49:47  Desc Motion
to Withdraw Reference Part 1  Page 43 of 62
Case 10-32530  Doc 2  Filed 11/17/10  Entered 11/17/10 10:36:58  Desc Main
Document  Page 8 of 11

32.    The exact amount of fees and costs incurred can be submitted to the Court

following adjudication of the merits of this claim.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Mr. Robertson, prays for the

following relief:

(a)    a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil

Procedure enjoining and restraining the Defendant and those acting in concert

with the Defendant for ten (10) days from proceeding in any suit against Mr.

Robertson without first advancing Mr. Robertson the fees and costs to defend

himself as covenanted by the hold harmless provisions of the Indemnification and

Hold Harmless Agreement, with said advancement being made by Dr. Cartinhour

depositing not less than $100,000.00 into an escrow account to be drawn upon by

Mr. Robertson's attorneys and by immediately thereafter replenishing the amount

in escrow back to $100,000.00 again after it has been drawn down to a remaining

total balance of $25,000.00 or less;

(b)    a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil

Procedure enjoining and restraining the Defendant and those acting in concert

with the Defendant from proceeding in any suit against Mr. Robertson without

first advancing Mr. Robertson the fees and costs to defend himself as covenanted

by the hold harmless provisions of the Indemnification and Hold Harmless

Agreement, with said advancement being made by Dr. Cartinhour depositing not

less than $100,000.00 into an escrow account to be drawn upon by Mr.

Robertson's attorneys and by immediately thereafter replenishing the amount in

- 8 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 59 of 192

Case 11-00044    Doc 132-1    Filed 05/13/11    Entered 05/13/11 15:49:47    Desc Motion
to Withdraw Reference Part 1    Page 44 of 62
Case 10-32530    Doc 2    Filed 11/17/10    Entered 11/17/10 10:36:58    Desc Main
Document    Page 9 of 11

escrow back to $100,000.00 again after it has been drawn down to a remaining

total balance of $25,000.00 or less;

(c)    a permanent injunction order pursuant to Rule 65 of the Federal Rules of Civil

Procedure enjoining and restraining the Defendant and those acting in concert

with the Defendant from proceeding in any suit against Mr. Robertson without

first advancing Mr. Robertson the fees and costs to defend himself as covenanted

by the hold harmless provisions of the Indemnification and Hold Harmless

Agreement, with said advancement being made by Dr. Cartinhour depositing not

less than $100,000.00 into an escrow account to be drawn upon by Mr.

Robertson's attorneys and by immediately thereafter replenishing the amount in

escrow back to $100,000.00 again after it has been drawn down to a remaining

total balance of $25,000.00 or less;

(d)    indemnification payment of not less than $100,000.00 in reimbursement for all

fees and costs expended or incurred by Mr. Robertson in defending against the

claims and/or suit brought against him on October 28, 2009 by Dr. Cartinhour.

(e)    pre-judgment and post-judgment interest in the maximum amount allowable by

law;

(f)    a grant of such other and further relief as the Court deems appropriate.

<u>**Verification**</u>

I DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY

UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS

TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND

BELIEF.

/s/ Wade Robertson_____
Wade Robertson

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 61 of 192

Case 11-00044   Doc 132-1   Filed 05/13/11   Entered 05/13/11 15:49:47   Desc  Motion
to Withdraw Reference Part 1   Page 46 of 62
Case 10-32530   Doc 2   Filed 11/17/10   Entered 11/17/10 10:36:58   Desc Main
Document   Page 11 of 11

Respectfully submitted,

/s/ Ty Clevenger
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 4806
Bryan, Texas 77805
Phone: (979) 985-5289
Fax:    (979) 530-9523

ATTORNEY FOR PLAINTIFF

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

IN RE:
      W.A.R. LLP                           Case No. 10-32530-PJD

             Debtor.                      Chapter 7

WADE ROBERTSON

      Plaintiff,
v.                                  Ad. Proc. No. 10-566

WILLIAM C. CARTINHOUR, JR.,

      Defendant.

## MOTION TO DISMISS OR TO ABSTAIN OR STAY

Comes now William C. Cartinhour, Jr., by counsel, and respectfully submits his

Motion to Dismiss the complaint filed by Plaintiff herein pursuant to Fed.R.Bankr.P.

7012(b)(1) and (b)(6) or to abstain or stay pursuant to the Court's inherent power.

## BACKGROUND

As alleged in the Complaint, without admitting the facts, Wade A. Robertson

("Robertson") and Cartinhour formed WAR, LLP ("WAR") a District of Columbia Limited

Liability Partnership. There is prior, pending litigation in the United States District Court for

the District of Columbia, Case No. 1:09-cv-01642 (the "D.C. Case") between Robertson and

Cartinhour concerning the parties. That case was not stayed despite Robertson filing a

suggestion of Bankruptcy. It was scheduled to begin on November 30, 2010, but (this is not

alleged in the Complaint) has been continued to February 21, 2010.

Significantly, Robertson initiated the D.C. Case, a fact that is not mentioned in the Complaint. A copy of his Complaint is attached hereto as Exhibit A. In the D.C. Complaint he seeks a declaratory judgment that the indemnification and hold harmless agreement are enforceable. Robertson also sought damages from Cartinhour in the D.C. Case by filing a "Counterclaim" on February 22, 2010, a copy of which is attached hereto as Exhibit B. That "Counterclaim" was dismissed by the United States District Court for the District of Columbia, due to Robertson' failure to oppose a Motion to Strike, on March 22, 2010. A copy of the Order is attached hereto as Exhibit C. Further, Robertson has filed a lawsuit (through Mr. Clevenger, counsel for Robertson herein) against Cartinhour, his attorneys and others in the United States District Court for the Southern District of New York, Case No. 1:2010-cv-08442 (the "New York Case") alleging that Cartinhour, his attorneys and others have engaged in conspiracy against him and committed various allegedly actionable legal wrongs that have damaged him in the sums of millions of dollars. A copy of the Complaint in the New York Case is attached hereto as Exhibit D.

Robertson alleges that he is entitled to an injunction and for damages as a result of the alleged breach of the indemnification agreement in the D.C. Case.

Cartinhour seeks dismissal of the instant proceeding on grounds that the Bankruptcy Court lacks subject matter jurisdiction. Further, the Robertson's Complaint fails to state a claim upon which relief can be granted in that there is no cause of action for injunction and damages against a case that Robertson, himself, initiated. Alternatively, Cartinhour requests that this Court abstain or stay this matter because the issues are intimately tied to the prior, pending litigation in the DC Case, litigation that Robertson initiated.

2

## ARGUMENT

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991). The Court, however, need not accept plaintiffs' legal conclusions which are not supported by well-pled facts. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1927, 173 L.Ed.2d 868 (2009).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Twombly*, 127 S. Ct. at 1966 (abrogating the oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 78 S.Ct. (1957), instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim would entitle him to relief"). These facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" and a complaint "does not need detailed factual allegations." *Twombly*, 127 S.Ct. at 1964, 1966. But, the Complaint must show that a claim is "plausible" "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949. The court need not accept as true those inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Id.* at 1949-50. The Court may also look to documents outside of the Complaint if they are both integral to plaintiff's complaint and explicitly relied upon in the complaint without converting a defendant's Motion to Dismiss into a Motion for Summary Judgment. *Popoola v. MD-Individual Practice Assignment*, 230

F.R.D. 424, 427 (D. Md. 2005). *citing, inter alia, Am Chiropractic Association v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## I.   The Court Lacks Subject Matter Jurisdiction.

The main case for W.A.R., LLP, a District of Columbia limited partnership, is an involuntary Chapter 7 case. The Order for Relief has been granted, although a Motion to Dismiss and to Abstain or to transfer venue is pending. However, this is an adversary proceeding brought by one alleged partner against another alleged partner. Neither partner is a debtor before this Court. Under 28 U.S.C. section 1334 a case must "arise under" title 11 or be "related to" a case under title 11. *Ostroff v. American Home Mortgage (In re Ostroff)*, 443 B.R. 442 (Bankr. D.D.C. 2010). This case clearly does not arise under title 11 in that it concerns a pre-petition agreement between two non-debtors. It also is not "related to" a case under title 11. Such a case must affect the debtor's rights or liabilities. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002), *citing, In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996).

Here, the plain allegations of the Complaint are that there is an agreement between the non-debtor parties which allegedly affects whether Cartinhour can maintain a cause of action against Robertson individually and, allegedly, gives Robertson the right to seek indemnification if that agreement is breached. There is nothing in that case that affects the debtor's rights or liabilities. Rather, it affects the rights and liabilities of the non-debtor parties. Accordingly, this Court lacks jurisdiction to hear this case. Therefore, this adversary proceeding should be dismissed.

4

## II.    The Court Should Dismiss the Complaint for Failure to State a Claim.

Robertson has now filed three (3) cases in three (3) separate districts concerning the indemnification and release agreement. He filed the D.C. Case. However, he wants this Court to stop Cartinhour from defending that case and stop him from prosecuting his own counterclaim in the D.C. Case because it allegedly violates the agreement that he seeks to have declared valid and enforceable in the D.C. Case. Essentially, Robertson wants a "mulligan" or "do over" in this Court because things have not gone well for him in the D.C. Case, due to the fact that the District Court denied his Motion for Summary Judgment and denied his Motion to Dismiss, allowing Cartinhour to go forward with claims that Robertson defrauded Cartinhour out of a $3.5 million investment – which Robertson loaned to himself at no interest. The docket is attached hereto as Exhibit E. The Court is asked to take judicial notice of all of the pleadings in that case that show that the issue of Cartinhour's ability to sue is essential to the D.C. Case.

There is simply no cause of action for Robertson to obtain an injunction and indemnification for a suit that he, himself brought. He can go to trial in the United States District Court for the District of Columbia and seek relief from the United States Court of Appeals for the District of Columbia (something he has already done on four occasions – Case Nos. 10-7015, 7016 and 7017 – appealing interlocutory orders, Case No. 10-7033[1] appealing the issuance of a preliminary injunction sequestering approximately $630,000 – which is scheduled for oral argument on January 14, 2011 – and Case No. 10-5231 seeking a writ of mandamus to remove the Honorable Ellen S. Huvelle as the presiding judge in the

---

[1] The Court is asked to take judicial notice of his allegations in each of the appeals and in request for mandamus. They all center around his allegation that he is insulated from any liability due to the existence of the hold harmless and indemnification clause. This is proof of forum shopping.

D.C. Case). The Court should dismiss the Complaint without leave to amend because he has no cause of action seeking an injunction of his own lawsuit.

### III.  Alternatively the Court Should Abstain or Stay this Case.

> We note at the outset that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants," *Landis v. North American Company*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 ( 1936), and that the entry of such an order ordinarily rests with the sound discretion of the District Court

*Ohio Environmental Counsel v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977); *Newson v. Northwest Airlines Corp.* 225 F.Supp.2d 822, 830 (W.D. Tenn. 2002). Here, there is simply no reason for this Court to proceed in this matter. The trial in the D.C. Case is set for February 21, 2011, which is far earlier than trial in any other court can occur. Further, it is the court that Robertson chose to seek the declaration of his rights under his Agreement with Cartinhour. Robertson is filing suits in jurisdictions all over the country in a frantic attempt to keep the D.C. Case from going to trial and to needlessly and vexatiously increase the cost of litigation. There is no reason that this Court should interfere with a United States District Court proceeding with a claim that Robertson brought and that will authoritatively adjudicate the claims brought in this case. Accordingly, the Court should abstain from or stay this case.

6

## CONCLUSION

For the foregoing reasons, Cartinhour requests this Court to dismiss the Complaint

Respectfully submitted,

_/s/ Patrick J. Kearney_

Patrick J. Kearney, Esquire
Selzer Gurvitch Rabin & Obecny, Chtd.
4416 East West Highway, Suite 400
Bethesda, Maryland 20814-4568
(301) 986-9600
Email:  Pkearney@sgrolaw.com

GOTTEN, WILSON, SAVORY & BEARD, PLLC

/s/ Russell W. Savory

Russell W. Savory (#12786)
88 Union Avenue, 14th Floor
Memphis, Tennessee 38103
Phone: (901) 523-1110

7

## CERTIFICATE OF SERVICE

I, Russell W. Savory, do hereby certify that a true and accurate copy of the foregoing pleading has been served on Ty Clevenger, Esq., P.O. Box 4806, Bryan, TX 77805 by United States Mail, postage prepaid this 27th day of December, 2010.

/s/ Russell W. Savory

_____

Russell W. Savory

8

# EXHIBIT A

**FILED**

AUG 28 2009

Clerk, U.S. District and
Bankruptcy Courts

1  WADE ROBERTSON,
   226 Elm Street NW,
2  Washington, DC 20001
   Telephone: (866)-845-6003
3  Facsimile: (888)-364-3330

4  *Pro-Se Plaintiff*

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE DISTRICT OF COLUMBIA

10                     CIVIL DIVISION

11

12  WADE ROBERTSON,                    )  CASE NO.:
                                       )
13         Plaintiff,                  )  **COMPLAINT FOR**
                                       )  **DECLARATORY RELIEF.**
14     v.                              )
                                       )
15  WILLIAM C. CARTINHOUR, JR.,        )
                                       )
16         Defendant.                     Case: 1:09-cv-01642
                                          Assigned To : Huvelle, Ellen S.
17                                        Assign. Date : 8/28/2009
                                          Description: Contract
18

19

20

21

22

23         Plaintiff Wade Robertson hereby alleges for his Complaint against Defendant William C.

24  Cartinhour, Jr. on personal knowledge as to his own actions and on information and belief as to

25  others, as follows:

26  ///

27  ///

28  ///

                                                                        *1*

   Complaint for Declaratory Relief                       Case No.:_____

## JURISDICTION AND VENUE

1.     Subject matter jurisdiction for this action arises under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2.     Personal jurisdiction over the Defendant is proper because he is subject to the general jurisdiction of the courts in the District of Columbia for either or both of the following reasons:

        (a) the Defendant has irrevocably consented in a valid, binding, and enforceable writing to the jurisdiction of the courts in the District of Columbia for the matters at dispute in this action; and in addition,

        (b) the Defendant is actively engaged in business in the District of Columbia, where a substantial part of the events that give rise to the claims occurred.

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events that give rise to the claims occurred in the District of Columbia, in this judicial district.

4.     The claim for declaratory judgment set forth below is filed pursuant to Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202 for the purpose of resolving an actual and justiciable controversy between the parties hereto.

## THE PARTIES

5.     Plaintiff Wade Robertson (hereafter "Robertson") is a citizen of the state of Tennessee, in the United States of America.

6.     On information and belief, Defendant William C. Cartinhour, Jr. (hereafter "Cartinhour") is a citizen of the state of Maryland.

///

///

///

-2-

Complaint for Declaratory Relief                 Case No.:_____

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 74 of 192

Case 1:10-cv-00346   Doc 13-1   Filed 05/13/01   Entered 05/13/01 05:35:47   Desc Exhibit A
to Withdraw Reference   Page 4 of 7   Page 59 of 62
Case 1:09-cv-01042-ESH   Document 1   Filed 06/28/09   Page 3 of 6

## **FACTUAL BACKGROUND**

7.   At all times relevant to this complaint, Robertson and Cartinhour were engaged together in a business partnership which, upon information and belief, is a continuing and active partnership. This partnership is located exclusively in the District of Columbia in the United States of America, and is named W.A.R. LLP.

8.   On April 7, 2006, Cartinhour executed and signed a written agreement entitled "INDEMNIFICATION, HOLD HARMLESS, AND AGREEMENT TO WAIVE ALL CLAIMS." (hereafter, the "Agreement").

9.   In the Agreement, as executed by Cartinhour, Cartinhour states and/or asserts and/or promises and/or agrees and/or covenants, in addition to other things, the following:

> That on behalf of myself and my heirs, executors, administrators, successors, beneficiaries, and assigns, whether herein named or referred to or not, do hereby release, discharge, and acquit and by these presents does hereby release, acquit, and forever discharge Wade A. Robertson personally and/or W.A.R. LLP. as an entity (and its servants, and employees, its divisions, subdivisions, and affiliates), of and from any and all past, present, and future claims, counterclaims, demands, actions, causes of action, liabilities, damages, costs, loss of services, expenses, compensation, third-party actions, suits at law or in equity, of every nature and description, whether known or unknown, suspected or unsuspected, foreseen, or unforeseen, real or imaginary, actual or potential, and whether arising at law or in equity, under the common law, state or federal law, or any other law, or otherwise, including, but not limited to, any claims that have been or might have been asserted as a result of any relationship, hereinafter collectively referred to as claims. Further, I hereby declare that I understand, covenant, and agree that I will not make any claims or demands, or file any legal proceedings against Wade A. Robertson personally and/or W.A.R. LLP. as an entity or join any of them as a party to any claim, demand, or legal proceedings nor shall I proceed against any other party, person, firm, or corporation on the claims described above. It is my intention hereby

-3-

Complaint for Declaratory Relief                                    Case No.: _____

1    to effect a full and final general release of all such claims. It is expressly understood

2    and agreed that this release and Agreement is intended to cover, and does cover, not

3    only all now known injuries, losses, and damages, but any future injuries, losses,

4    and damages not now known or anticipated, but which may later develop or be

5    discovered, including all the effects and consequences thereof. I shall indemnify

6    and hold harmless Wade A. Robertson personally and/or W.A.R. LLP, as an entity

7    from any and all judgments, costs, expenses, or attorney fees whatsoever arising on

8    account of the filing of any such claim, demand, or other legal proceeding by

9    myself or my heirs, executors, administrators, successors, beneficiaries, and assigns,

10   whether herein named or referred to or not.

11   10.   The Agreement is valid, binding, enforceable and in effect at all relevant times.

12   11.   At all relevant times, Robertson has relied upon, and acted in reliance upon the

13   Agreement.

14   12.   On information and belief, on January 9, 2009, Cartinhour made in writing, through

15   his attorney, a demand or claim on Robertson for a sum of money in excess of $1,000,000.00

16   U.S., in addition to other things.

17   13.   On information and belief, on February 6, 2009, Cartinhour again made in writing,

18   through his attorney, a demand or claim on Robertson for a sum of money in excess of

19   $1,000,000.00 U.S., in addition to other things.

20   14.   On information and belief, on August 14, 2009, Cartinhour again made in writing,

21   through his attorney, a demand or claim upon Robertson; in addition, Cartinhour threatened to

22   instigate a legal action against Robertson.

23   15.   On information and belief, on August 21, 2009, Cartinhour again made in writing,

24   through his attorney, a demand or claim upon Robertson; in addition, Cartinhour threatened to

25   instigate a legal action against Robertson.

26   16.   The demands or claims made by Cartinhour upon Robertson on January 9, 2009,

27   February 6, 2009, August 14, 2009, August 21, 2009—as set forth in the above four paragraphs

28   herein—are each, all, or any of them, a breach of the Agreement and are without justification.

-4-

Complaint for Declaratory Relief                                    Case No.:_____

17.   Robertson has incurred costs or expenses or fees as a direct result of Cartinhour's

demands or claims made upon Robertson on January 9, 2009, February 6, 2009, August 14,

2009, and August 21, 2009—as set forth in the above paragraphs.

18.   Without justification, Cartinhour has failed to fulfill his obligations under the

Agreement to **hold harmless** Robertson and pay <u>as incurred</u> all "costs, expenses, or attorney

fees" resulting from his demands or claims.

19.   Without justification, Cartinhour has failed to fulfill his obligations under the

Agreement to **indemnify** Robertson and <u>reimburse</u> Robertson all "costs, expenses, or attorney

fees" incurred by Robertson and which resulted from Cartinhour's demands or claims.

20.   Without justification, Cartinhour has breached the Agreement or otherwise failed to

fulfill his other obligations under the Agreement.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

21.   Robertson repeats and re-alleges each and every previous paragraph herein and

incorporates those paragraphs by reference as though set forth fully herein.

22.   By reason of the foregoing, an actual and justiciable controversy has arisen and now

exists between the parties regarding the Agreement, including Cartinhour's obligations under the

Agreement to release Robertson, to hold harmless Robertson and also to indemnify Robertson.

23.   Plaintiff Robertson is entitled to a judgment declaring his rights under the

Agreement.

24.   Plaintiff Robertson is entitled to a judgment declaring the obligations of Cartinhour

under the Agreement, including, but not limited to, Cartinhour's ongoing obligations to release

Robertson, and to hold harmless Robertson and to indemnify Robertson.

///

///

///

-5-

Complaint for Declaratory Relief                                    Case No.:_____

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robertson re-alleges all paragraphs above and respectfully prays for relief as follows:

     1.    that this Honorable Court determine and declare, and enter an Order setting forth, all of Robertson's rights under the Agreement, and also all of Cartinhour's obligations under the Agreement, including Cartinhour's ongoing obligations to release Robertson, and to hold harmless Robertson and to indemnify Robertson;

     2.    reasonable attorney fees and costs of suit;

     3.    such other and further relief as this court may deem just and proper.


Respectfully submitted,

Dated:  August 27, 2009

WADE ROBERTSON

226 Elm St NW
Washington, DC 20001
1-866-845-6003

-6-

Complaint for Declaratory Relief

Case No.:_____

Case 10-00546   Doc 32   Filed 05/27/11   Entered 05/27/11 05:49:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 1 of 71

# EXHIBIT B

Case 1:11-mc-00283-RCL Document 1 Filed 05/17/11 Page 79 of 192

Case 1:10-00566 Doc 3292 Filed 05/27/10 Entered 05/27/10 15:26:47 Desc Motion
to Withdraw Reference Part 29 Page 2 of 71
Case 1:09-cv-01642-ESH Document 53 Filed 02/22/10 Page 1 of 28

IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WADE ROBERTSON | ) | Civil Action No. 1:09-cv-1642 |
|  | ) | Hon. Judge Huvelle |
| *Plaintiff* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| WILLIAM C. CARTINHOUR, JR. | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTER-COMPLAINT AND COUNTER CLAIMS THERETO

Plaintiff Wade Robertson (hereinafter the "Plaintiff" or "Mr. Robertson"), by
and through undersigned counsel, respectfully submits this Answer to Defendant William
C. Cartinhour, Jr. 's (hereinafter "Defendant" or "Dr. Cartinhour"), Counterclaims, filed
October 28th, 2009.

1. Plaintiff admits as true the facts contained in paragraph 1 of Defendant's Counter-Complaint.

2. Answering paragraph 2 of Defendant's Counter-Complaint, Plaintiff Wade Robertson
   is without sufficient knowledge or information to form a belief as to the truth of the
   allegations contained in said paragraph because it is unclear exactly what period of
   time, or point in time, the allegation in the paragraph is referring to and Plaintiff
   Robertson "resides" in any one of several different jurisdictions at various times
   possibly relevant to this action. However, to the extent that the word "resident" in said
   paragraph is a semantic error intended to mean legal "citizenship," Robertson admits

1

Case 1:10-cv-00486   Doc 13-2-2   Filed 2/27/30.1   Entered 2/27/30.1 14:35:47   Desc Exhibit B
to Withdraw Reference Part 29   Page 3 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 2 of 28

that his legal "citizenship" is presently in the "State of Tennessee" and was so at the time of the filing of Defendant's Counter-Complaint and of Robertson's original Complaint.

3. Plaintiff admits that he is a lawyer licensed to practice in California and the District of Columbia. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 3 of Defendant's Counter-Complaint.

4. Plaintiff admits that the Litigation was filed in 2003. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 4 of Defendant's Counter-Complaint.

5. Plaintiff denies the allegations contained in paragraph 5 of Defendant's Counter-Complaint.

6. Plaintiff denies the allegations contained in paragraph 6 of Defendant's Counter-Complaint.

7. The partnership agreement speaks for itself. Plaintiff denies all allegations inconsistent with the agreement. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 7 of Defendant's Counter-Complaint.

8. The partnership agreement speaks for itself. Plaintiff denies all allegations inconsistent with the agreement. Plaintiff denies the allegations contained in paragraph 8 of Defendant's Counter-Complaint to the extent that Exhibit A was explicitly modified by amendment over time by the parties and is not the complete and final agreement. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 8 of Defendant's Counter-Complaint.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 81 of 192

Case 1:11-cv-00086   Doc 13-2-2   Filed 02/17/11   Entered 02/17/10 11:23:47   Desc Exhibit B
to Withdraw Reference Part 29   Page 4 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 3 of 28

9.  Plaintiff admits only that the Defendant made contributions to the partnership but only
as consistent with the terms of the partnership agreement. The partnership agreement
speaks for itself. Plaintiff denies all allegations inconsistent with the agreement.
Except as so admitted, Plaintiff denies each and every allegation contained in
paragraph 9 of Defendant's Counter-Complaint.

10. Plaintiff denies the allegations contained in paragraph 10 of Defendant's Counter-
Complaint.

11. Plaintiff denies the allegations contained in paragraph 11 of Defendant's Counter-
Complaint.

12. Plaintiff denies the allegations contained in paragraph 12 of Defendant's Counter-
Complaint as framed.

13. Plaintiff denies the allegations contained in paragraph 13 of Defendant's Counter-
Complaint.

14. Plaintiff denies the allegations contained in paragraph 14 of Defendant's Counter-
Complaint.

15. Plaintiff admits only that the Defendant made contributions to the partnership but only
as consistent with the terms of the partnership agreement. The partnership agreement
speaks for itself. Plaintiff denies all allegations inconsistent with the agreement.
Except as so admitted, Plaintiff denies each and every allegation contained in
paragraph 15 of Defendant's Counter-Complaint.

16. Answering paragraph 16 of Defendant's Counter-Complaint, Plaintiff Wade
Robertson is without sufficient knowledge or information to form a belief as to the
truth of the allegations contained in said paragraph 16 because the allegations are

3

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 82 of 192

Case 1:00-00566 Doc 322 Filed 05/27/10 Entered 05/27/10 15:29:47 Desc Motion to Withdraw Refer Page Page 5 of 29  Page 5 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 4 of 28

ambiguous and misleading as to the "motion" referred to, and on that basis Robertson denies each and every allegation contained therein.  Plaintiff admits only that a motion for the defendants in *Liu et al. v. Credit Suisse Boston et al.*, Case No. 1:03-cv-20459-JEM (S.D.N.Y. May 18, 2004) (the "Securities Suit"), was granted by the trial court in approximately April of 2005 but that it was not a final motion ending the litigation of that lawsuit either in that trial court or thereafter. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 16 of Defendant's Counter-Complaint.

17. Plaintiff denies the allegations contained in paragraph 17 of Defendant's Counter-Complaint.

18. Answering paragraph 18 of Defendant's Counter-Complaint Plaintiff admits that an appeal was taken from a trial court's ruling in the Securities Suit.  Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 18 of Defendant's Counter-Complaint.

19. Plaintiff admits as true the facts contained in paragraph 19 of Defendant's Counter-Complaint.

20. Plaintiff denies the allegations contained in paragraph 20 of Defendant's Counter-Complaint as framed.

21. Plaintiff admits only that the Defendant made contributions to the partnership but only as consistent with the terms of the partnership agreement. The partnership agreement speaks for itself.  Plaintiff denies all allegations inconsistent with the agreement.  Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 21 of Defendant's Counter-Complaint.

4

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 83 of 192

Case 1:10-cv-00546   Doc 132-2 Filed 02/27/11   Entered 02/27/11 18:45:47   Docs Exhibit B
to Withdraw Reference Part 2   Page 6 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 5 of 28

22. Plaintiff admits that Defendant signed the Indemnification, Hold Harmless and Agreement to Waive All Claims. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 22 of Defendant's Counter-Complaint.

23. Plaintiff admits only that the Defendant made contributions to the partnership but only as consistent with the terms of the partnership agreement. The partnership agreement speaks for itself. Plaintiff denies all allegations inconsistent with the agreement. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 23 of Defendant's Counter-Complaint.

24. Plaintiff denies all the allegations contained in paragraph 24 of Defendant's Counter-Complaint.

25. Plaintiff denies all the allegations contained in paragraph 25 of Defendant's Counter-Complaint.

26. Plaintiff admits that he sent Exhibit E to defendant. The letter speaks for itself. Plaintiff denies all allegations inconsistent with the express language of the letter. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 26 of Defendant's Counter-Complaint.

27. Plaintiff denies the allegations contained in paragraph 27 of Defendant's Counter-Complaint.

28. Plaintiff denies the allegations contained in paragraph 28 of Defendant's Counter-Complaint.

29. The partnership agreement speaks for itself. Plaintiff denies all allegations inconsistent with the agreement. Plaintiff denies the allegations contained in paragraph 29 of Defendant's Counter-Complaint.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 84 of 192

Case 1:09-cv-00506   Doc 322   Filed 05/13/11   Entered 05/16/11 05:39:47   Desc Exhibit B
to Withdraw Reference Part 29   Page 7 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 6 of 28

30. Plaintiff Wade Robertson is without sufficient knowledge or information to form a
belief as to the truth of the allegations contained in said paragraph 30. Except as so
admitted, Plaintiff denies each and every allegation contained in paragraph 30 of
Defendant's Counter-Complaint.

31. Plaintiff denies the allegations contained in paragraph 31 of Defendant's Counter-
Complaint.

32. Plaintiff denies the allegations contained in paragraph 32 of Defendant's Counter-
Complaint.

33. Plaintiff denies the allegations contained in paragraph 33 of Defendant's Counter-
Complaint.

34. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through
33 as if fully rewritten herein.

35. Plaintiff admits only that the Defendant made contributions to the partnership but only
as consistent with the terms of the partnership agreement. The partnership agreement
speaks for itself. Plaintiff denies all allegations inconsistent with the agreement.
Except as so admitted, Plaintiff denies each and every allegation contained in
paragraph 35 of Defendant's Counter-Complaint.

36. Plaintiff Wade Robertson is without sufficient knowledge or information to form a
belief as to the truth of the allegations contained in said paragraph 36. Except as so
admitted, Plaintiff denies each and every allegation contained in paragraph 36 of
Defendant's Counter-Complaint.

37. Plaintiff denies the allegations contained in paragraph 37 of Defendant's Counter-
Complaint.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 85 of 192

Case 1-0-00566 Doc 3222   Filed 05/27/10   Entered 05/27/10 10:52:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 8 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 7 of 28

38. Plaintiff denies the allegations contained in paragraph 38 of Defendant's Counter-Complaint.

39. Plaintiff denies the allegations contained in paragraph 39 of Defendant's Counter-Complaint.

40. Plaintiff denies the allegations contained in paragraph 40 of Defendant's Counter-Complaint.

41. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through 40 as if fully rewritten herein.

42. Plaintiff denies the allegations contained in paragraph 42 of Defendant's Counter-Complaint.

43. Plaintiff denies the allegations contained in paragraph 43 of Defendant's Counter-Complaint.

44. Plaintiff denies the allegations contained in paragraph 44 of Defendant's Counter-Complaint.

45. Plaintiff denies the allegations contained in paragraph 45 of Defendant's Counter-Complaint.

46. Plaintiff denies the allegations contained in paragraph 46 of Defendant's Counter-Complaint.

47. Plaintiff denies the allegations contained in paragraph 47 of Defendant's Counter-Complaint.

48. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through 47 as if fully rewritten herein.

49. Plaintiff admits only the singular fact that he and the Defendant entered into a partnership known as W.A.R. LLP. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 49 of Defendant's Counter-Complaint.

50. Plaintiff denies the allegations contained in paragraph 50 of Defendant's Counter-Complaint.

51. Plaintiff denies the allegations contained in paragraph 51 of Defendant's Counter-Complaint.

52. Plaintiff denies the allegations contained in paragraph 52 of Defendant's Counter-Complaint.

53. Plaintiff denies the allegations contained in paragraph 53 of Defendant's Counter-Complaint.

54. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through 53 as if fully rewritten herein.

55. Plaintiff admits only the singular fact that he and the Defendant entered into a partnership agreement. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 55 of Defendant's Counter-Complaint.

56. Plaintiff denies the allegations contained in paragraph 56 of Defendant's Counter-Complaint.

57. Plaintiff Wade Robertson is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph 57. Except as so admitted, Plaintiff denies each and every allegation contained in paragraph 57 of Defendant's Counter-Complaint.

8

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 87 of 192

Case 1:09-00466   Doc 3-2   Filed 2/27/11   Entered 2/27/11 15:29:47   Desc Exhibit B
to Withdraw Reference   Part 2   Page 10 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 9 of 28

58. Plaintiff denies the allegations contained in paragraph 58 of Defendant's Counter-
Complaint.

59. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through
58 as if fully rewritten herein.

60. Admitted.

61. Plaintiff denies the allegations contained in paragraph 61 of Defendant's Counter-
Complaint.

62. Plaintiff denies the allegations contained in paragraph 62 of Defendant's Counter-
Complaint.

63. Plaintiff denies the allegations contained in paragraph 63 of Defendant's Counter-
Complaint.

64. Plaintiff denies the allegations contained in paragraph 64 of Defendant's Counter-
Complaint.

65. Plaintiff denies the allegations contained in paragraph 65 of Defendant's Counter-
Complaint.

66. Plaintiff denies the allegations contained in paragraph 66 of Defendant's Counter-
Complaint.

67. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through
66 as if fully rewritten herein.

68. Plaintiff denies the allegations contained in paragraph 68 of Defendant's Counter-
Complaint.

69. Plaintiff denies the allegations contained in paragraph 69 of Defendant's Counter-
Complaint.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 88 of 192

Case 1:10-cv-00486   Doc 32-2   Filed 02/17/11   Entered 02/17/01 10:23:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 11 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 10 of 28

70. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through
    69 as if fully rewritten herein.

71. Plaintiff denies the allegations contained in paragraph 71 of Defendant's Counter-
    Complaint.

72. Plaintiff denies the allegations contained in paragraph 72 of Defendant's Counter-
    Complaint.

73. Plaintiff denies the allegations contained in paragraph 73 of Defendant's Counter-
    Complaint.

74. Plaintiff incorporates his Answers to the allegations contained in paragraphs 1 through
    73 as if fully rewritten herein.

75. Plaintiff Wade Robertson is without sufficient knowledge or information to form a
    belief as to the truth of the allegations contained in said paragraph 75. Except as so
    admitted, Plaintiff denies each and every allegation contained in paragraph 75 of
    Defendant's Counter-Complaint.

76. Plaintiff denies the allegations contained in paragraph 76 of Defendant's Counter-
    Complaint.

77. Plaintiff denies the allegations contained in paragraph 77 of Defendant's Counter-
    Complaint.

78. Plaintiff denies the allegations contained in paragraph 78 of Defendant's Counter-
    Complaint.

79. Plaintiff denies the allegations contained in paragraph 79 of Defendant's Counter-
    Complaint.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 89 of 192

Case 1:00-00466   Doc 322   Filed 05/17/01   Entered 05/17/01 10:23:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 12 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 11 of 28

80. Plaintiff denies the allegations contained in paragraph 80 of Defendant's Counter-
Complaint.

81. Plaintiff denies the allegations contained in paragraph 81 of Defendant's Counter-
Complaint.

<div align="center">

**PRAYERS FOR RELIEF**

</div>

In answer to the prayers for relief contained in Defendant's counter-complaint,

Plaintiff denies that Defendant is entitled to any of the relief sought.

<div align="center">

**GENERAL DENIAL**

</div>

Plaintiff denies each and every allegation of the counter-complaint not expressly

admitted in this answer.

<div align="center">

**JURY DEMAND**

</div>

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not

limited to, those issues and claims set forth in any amended complaint or consolidated

action.

<div align="center">

**AFFIRMATIVE DEFENSES**

</div>

**First Affirmative Defense:** Defendant's claims should be dismissed for failure to state a

claim upon which relief can be granted.

**Second Affirmative Defense:** Defendant's claims are barred by the statute of limitations.

**Third Affirmative Defense:** Defendant's claims are barred by estoppel.

**Fourth Affirmative Defense:** Defendant's claims are barred by waiver.

**Fifth Affirmative Defense:** Defendant's claims are barred by Plaintiff's setoff.

**Sixth Affirmative Defense:** Defendant's claims are barred by the Indemnification, Hold

Harmless and Agreement to Waive All Claims. Defendant, in the Indemnification, Hold

<div align="center">

11

</div>

Case 1:09-00406   Doc 13-2   Filed 02/17/01   Entered 02/17/01 10:23:47   Desc Exhibit B
to Withdraw Reference Part 29   Page 13 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 12 of 28

Harmless and Agreement to Waive All Claims, released all present and future claims in

tort, contract or otherwise against Mr. Roberston and/or W.A.R. LLP.

**Seventh Affirmative Defense:** Defendant's claims are barred by accord and satisfaction.

**Eighth Affirmative Defense:** Defendant's claims are barred by laches.

**Ninth Affirmative Defense:** Defendant's claims are barred by assumption of risk.

**Tenth Affirmative Defense:** Defendant's claims are barred by contributory negligence.

**Eleventh Affirmative Defense:** Defendant's claims are barred by promissory estoppel.

**Twelfth Affirmative Defense:** Defendant's claims are barred by release.

**Thirteenth Affirmative Defense:** Defendant's claims are barred by res judicata.

**Fourteenth Affirmative Defense:** Defendant's claims are barred by mitigation, failure to

mitigate.

**Fifteenth Affirmative Defense:** Defendant's claims are barred by lack of standing,

privity or competency to maintain the suit.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 91 of 192

Case 1:10-00046   Doc 32-2   Filed 05/13/01   Entered 05/13/10 12:35:47   Desc Exhibit A
to Withdraw Reference   Part 29   Page 14 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 13 of 28

### PLAINTIFF'S COUNTERCLAIMS AGAINST
### DEFENDANT'S COUNTER-COMPLAINT

For Plaintiff's counterclaims against Defendant Cartinhour, Plaintiff hereby states

as follows:

1. Dr. Cartinhour and Mr. Robertson (collectively referred to herein as the "Parties")

    met in late 2004, and after extensive discussions regarding *Liu et al. v. Credit Suisse*

    *Boston et al.*, Case No. 1:03-cv-20459-JEM (S.D.N.Y. May 18, 2004) (the "Securities

    Suit"), which Mr. Robertson was working on, they agreed to become business

    partners.

2. Based on those discussions, the Parties executed an agreement to enter into a business

    partnership on September 16, 2004. The Parties then executed a partnership

    agreement on September 17, 2004, which was amended on March 21, 2005, December

    6, 2005 and April 10, 2006. The Parties also executed two related agreements: (1) an

    Indemnification, Hold Harmless and Agreement to Waive All Claims, and (2) an

    Attestation and Certification of No Attorney-Client Relationship with Attorney Wade

    A. Robertson. Collectively these agreements constitute the business relationship and

    understanding between the Parties (the Contracts).

#### The Business Agreement

3. The prospective business partners entered into an agreement on September 16, 2004,

    to enter into a business partnership for the provision of legal services (the "Business

    Agreement").

4. The Business Agreement notes that the proposed partnership had been the subject of

    numerous discussions, that the Parties had shared preliminary information related to

    the venture, that the proposed venture had "been amended or revised numerous times"

13

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 92 of 192

Case 1:10-00546   Doc 32-2   Filed 06/27/01   Entered 06/27/01 05:23:47   Desc Exhibit B
to Withdraw Reference Part 2  Page 15 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 14 of 28

leading up to the finalized agreement, and that all reliance on those prior
communications were waived, since the Parties intended this written agreement to be
the "entire understanding between us." The Business Agreement also stated that "no
further agreements made after the execution of this agreement will alter or invalidate
any of the provisions set forth herein unless specifically done so by reference to this
agreement, and in the event of any ambiguous or otherwise conflicting language
between this agreement and any future agreements, the terms of this agreement will
control and remain binding upon each of us."

5. The Business Agreement anticipated any future concerns over the fact that Mr.
Robertson was an attorney and expressly stated that no attorney-client relationship did
or would exist between the partners: "We each agree that although Robertson is an
attorney, and although the business partnership between Cartinhour and Robertson
will have as its sole business the provision of legal services, at no time prior to now
has Robertson been, nor at any time in the future shall Robertson be Cartinhour's
attorney, nor shall any attorney-client relationship between Cartinhour and Robertson
be implied at any time. We also agree that so long as the business partnership between
us continues to exists, there can in any event be no attorney-client relationship
between Cartinhour and Robertson. We also further agree that any changes to the
provisions of this paragraph can only be made by a writing that is signed by both
parties and that is witnessed and notarized by a public notary reflecting the date of
such a change."

6. The Business Agreement provided that both of the Parties would be active participants
in the business and that Dr. Cartinhour would provide financial and business analysis

14

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 93 of 192

Case 1:10-cv-00486   Doc 132-2   Filed 02/17/01   Entered 02/17/01 10:23:47   Desc Exhibit B to Withdraw Reference Part 2   Page 16 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 15 of 28

of the practices of various public companies in furtherance of the partnership's legal

clients, and "[provide] analysis of the viability and legitimacy of cross-

border/international investments, particularly in Eastern Europe." Dr. Cartinhour also

warranted that he had such expertise, and the Business Agreement noted the intention

of expanding the partnerships services to include non-legal services at some future

time if allowed by changes to the "Professional Rules governing attorneys and

attorney partnerships in the District of Columbia."

7. Dr. Cartinhour also agreed to be bound and abide by the D.C. Rules of Professional

Conduct in all his actions related to the business partnership.

8. The Business Agreement stated that the intent of the Parties was to enter into a

partnership for an indefinite period of time and that it last beyond the scope of any one

legal matter.

9. The Business Agreement recognized the disparity between the Parties' financial

conditions and their ability to capitalize the venture, and stated: "[w]e each

acknowledge and agree that numerous and complex factors have been considered by

each of us separately, and by both of us jointly, in determining what each of us should

individually contribute to the business partnership's capital and what each of us should

be entitled to as a fair and appropriate allocation of financial interest and/or equity in

the partnership. We agree that each and any of the factors considered by us were

sufficient for us to make a fair determination in this regard. . . . Further, an additional

factor that we have considered is the differences between the potential earnings to the

partnership's capital accounts as attributable from Robertson individually and from

Cartinhour individually. We further acknowledge and agree that the partnership will

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 94 of 192

Case 1:00-00566   Doc 3222   Filed 05/27/11   Entered 05/27/11 05:24:47   Desc Motion to Withdraw Reference Part 2   Page 17 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 16 of 28

utilize loan provisions from the working capital to the partners until such time as there

is taxable income and that our choice in doing so is for reasons related to perceived tax

benefits."

10. The Business Agreement required the Parties to stay independently apprised and

informed of all matters related to the partnership "regardless of the actions or

communications of the other partner."

11. The Parties were required to share joint responsibility for preparing and maintaining

books and records, accounting and reporting, and that for these provisions "any

objections made more than 91 days after the event complained of shall be deemed not

timely and any failure complained of after such time has passed shall be deemed as

waived by the party making the objections."

12. The Business Agreement further notes that Dr. Cartinhour has been provided with all

the information necessary to keep him apprised of all legal matters undertaken by the

partnership, including public docket information, and that Dr. Cartinhour expressly

waives any duty for Mr. Robertson to keep Dr. Cartinhour informed about the status of

the legal engagements undertaken by the partnership.

13. The Business Agreement clearly states the intention of the Parties that Dr. Cartinhour

would not be allowed to rely upon any representations or omissions by Mr. Robertson

related to the active litigation matters of the partnership in order to avoid exactly the

sort of conflict of interest that Dr. Cartinhour has now accused Mr. Robertson of

having. The Business Agreement states in particular:  "Cartinhour agrees that he has

already received from Robertson, and is in possession of, sufficient information

regarding all of Robertson's legal business and cases within the scope of the

16

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 95 of 192

Case 1:00-cv-01322-... Filed 05/... Entered 05/... Doc Exhibit B
to Withdraw Reference Part 2 Page 18 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 17 of 28

partnership that is necessary to enable Cartinhour to independently track or otherwise

investigate any and all public filings and rulings made in those cases; and that such

information in Cartinhour's possession includes but is not limited to the court

information and public docket numbers of all of Robertson's active litigation matters.

And Cartinhour expressly agrees, promises, and affirmatively covenants that he has an

independent and continuing duty to timely investigate and follow, and that he will

continue to timely investigate and follow, all publicly-known developments in

Robertson's litigation matters that are within the scope of the partnership, including

any and all public filings and court decisions in any such litigation matter. And

further, Cartinhour expressly agrees, promises, and affirmatively covenants that he

will exercise his own judgment, consult if necessary with outside counsel, make his

own determinations, and rely upon his own independent conclusions, with regards to

all publicly-available materials for any of Robertson's litigation matters that are within

the partnership's business. Cartinhour agrees and covenants that he will rely solely

upon his own determinations and conclusions regarding the status and continuing

viability of any and all active litigation cases engaged in by Robertson within the

partnership business. Cartinhour further expressly acknowledges the inherent

uncertainty of all litigation matters as may be assumed . . . and expressly consents to

this assumption of risk . . ."

14. The Business Agreement goes on to make additional waivers and disclaimers with

regards to any communications between the Parties, and states that "[the Parties] each

acknowledge and agree that both of us-Robertson and Cartinhour- will from time to

time make various statements either orally or in writing to each other and that the

17

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 96 of 192

Case 1:00-00286   Doc 13-2   Filed 2/27/01   Entered 2/27/10 10:23:47   Desc Exhibit B
to Withdraw Reference Part 2 Page 19 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 18 of 28

context may not always be clear and that there is always a risk of miscommunication or confusion between the parties; therefore, we agree to restrict any and all communications between us that are of a material nature regarding the business partnership to a writing signed by both of us and that we will not otherwise rely on any communications not conforming to the manner set forth by this paragraph."

15. The Business Agreement also states that both Parties have had the opportunity to consult with independent legal counsel "before entering into this written agreement or the partnership itself." In fact, Dr. Cartinhour therein "expressly acknowledges and agrees that he has consulted first beforehand with his own independent attorney regarding the partnership and this agreement, and that his attorney advised him against entering into this partnership, but that Cartinhour has decided to enter into the partnership and this agreement notwithstanding the advice of his attorney."

16. The Business Agreement requires that the Parties maintain the confidentiality of the Contracts.

<p style="text-align:center"><u>The Partnership Agreement</u></p>

17. The Parties executed a Partnership Agreement to form W.A.R. LLP, a limited liability partnership, on September 17, 2004, and they amended it together on March 21, 2005, December 6, 2005 and April 10, 2006 (the "Partnership Agreement"). The partnership agreement and each amendment to the Partnership Agreement was executed by both Parties before a notary.

18. The Partnership Agreement expressly limits the liability of the partners, and states in part that "[t]he partners in the Partnership shall not be personally liable, directly or indirectly, by way of contribution or otherwise, for any of the Partnership's

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 97 of 192

Case 1:10-00566  Doc 3222  Filed 05/23/01  Entered 05/23/01 05:39:47  Desc Motion to Withdraw Reference 20 of 229 Page 20 of 71

Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 19 of 28

obligations incurred while the Partnership is a limited liability partnership, whether arising in contract, tort, or otherwise. Rather, the Partnership shall be solely responsible for such obligations, together with any partner whose personal misconduct led to the obligation. "

19. The sole purpose of the partnership is "the provision of legal services, and to do all other incidental acts pursuant to the laws of the District of Columbia." It further provides that "William C. Cartinhour, Jr. shall provide his expertise in the matters of investments, and/or securities, and/or business finance generally as it directly assists Wade Robertson in his provision of legal services towards various securities class actions that he is pursuing, or intends to pursue, on behalf of his clients."

20. The Partnership Agreement notes that the current legal engagements are "exactly one large securities class action litigation which includes numerous subclasses of the investing public, and any monies, proceeds, profits or property that he may receive at any point in the future in that representation are 100 contingent upon the outcome of that litigation, an outcome which is entirely unknowable at the present time."

21. Under the Partnership Agreement, the partners were to make cash contributions to the partnership, which were taken by the partnership and "deposited into a general banking account for the LLP."

22. Dr. Cartinhour contributed $3,500,000 representing 99.9% of total capital interest and Mr. Robertson contributed $3,500 representing 0.1% of total capital interest.

23. The Partnership Agreement further states that "[t]here shall be no interest on capital contributions. No partner shall be paid or otherwise entitled to interest on any capital contribution."

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 98 of 192

Case 1:09-00566   Doc 322   Filed 02/17/01   Entered 02/17/01 05:34:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 21 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 20 of 28

24. The only fiduciary duty required by the Partnership Agreement was for the partners not to engage in competing business with the partnership, and to account to the partnership for fees generated by services arising out of the business of the partnership.

25. Mr. Robertson was granted the specific authority to: "(b) To execute any and all agreements, contracts, documents, certifications, and instruments necessary and convenient in connection with the construction, acquisition, management, maintenance, and operation of the Partnership property;"

26. The annual reporting requirement from the original agreement was first waived for the 2004 fiscal year and then struck by the later amendments.

27. The Partnership Agreement called for dissolution by either liquidation by agreement of all the partners or pursuant to the Buyout Provision. If the partnership's total capital is insufficient to pay all partners other than Mr. Robertson in full their respective total capital contributions, then each partner is limited to recovering their pro-rata share of the total remaining capital, but Mr. Robertson's share shall be forfeit to the other partners.

### The Release & Indemnification Agreement

28. Dr. Cartinhour executed a notarized Release & Indemnification Agreement (the "Release") on April 7, 2006. The Release releases all present and future claims against Mr. Robertson and/or W.A.R. LLP. It further requires Dr. Cartinhour to personally indemnify Mr. Robertson and/or W.A.R. LLP for all costs and attorneys fees arising out of any claim brought by Dr. Cartinhour or his heirs. Furthermore, the indemnification language states that: "I shall indemnify and hold harmless Wade A.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 99 of 192

Case 1:09-00566 Doc 3222 Filed 02/27/01 Entered 02/27/01 11:28:47 Desc Exhibit B
to Withdraw Reference Part 2 Page 22 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 21 of 28

Robertson personally and/or W.A.R. LLP. as an entity from any and all judgments,

costs, expenses, or attorney fees whatsoever arising on account of the filing of any

such claim, demand, or other legal proceeding by myself or my heirs, executors,

administrators, successors, beneficiaries, and assigns, whether herein named or

referred to or not."

29. The Release & Indemnification Agreement was never amended or modified by the

Parties.

<u>The Attestation of No Attorney-Client Relationship</u>

30. Dr. Cartinhour executed a notarized Attestation of No Attorney-Client Relationship

(the "Attestation") between him and Mr. Robertson on April 7, 2006. The notarized

document expressly disclaims an attorney-client relationship between the two Parties.

It states:

Wade A. Robertson is not my attorney, and I have never engaged Wade A.
Robertson as an attorney for any legal advice, nor has Wade A. Robertson
ever consented or agreed either expressly or implicitly to represent me as
an attorney in any legal matter or to offer me any legal advice as an
attorney. I have no claims against Wade A. Robertson of any kind with
respect to him in his profession as an attorney or that could arise from any
attorney-client relationship, whether actual or mistakenly assumed, or
otherwise.

Any interactions that I have had or will have with Wade A. Robertson are
strictly business relationships, and no exchange of any information,
documents, or anything whatsoever between us establishes in any way any
attorney-client relationship between he and I, and I have been duly, fully,
and repeatedly informed of this fact and have explicitly agreed to this.

31. The Attestation of No Attorney-Client Relationship was never amended or modified

by the Parties.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 100 of 192

Case 1:10-cv-00456  Doc 3-22  Filed 05/16/11  Entered 05/27/11 05:39:47  Desc Exhibit B
Case 1:09-cv-10170-SAM  Referenced 09-10170  Page 22 of 28

32. The Securities Suit spanned almost four years, from February 28, 2003 when the
    initial complaint was filed in the Southern District of Florida, *see In re Initial Pub.
    Offering Sec. Litig.*, 341 F. Supp. 2d 328, 329-30 (S.D.N.Y. 2004), to December 4,
    2006, when the U.S. Supreme Court denied the class-action plaintiffs' petition for writ
    of certiorari, *see Liu v. Credit Suisse First Boston Corp., Inc.*, 549 U.S. 1077 (2006).

33. The Securities Suit was litigated in two venues: the initial complaint was filed in the
    Southern District of Florida; approximately six months later, the case was transferred
    to the Southern District of New York. *See In re Initial Pub. Offering Sec. Litig.*, 341
    F. Supp. 2d at 330.

34. Although the class action suit did not go to trial, the case involved extensive pre-trial
    motions practice, including Plaintiffs' motions for leave to amend, Defendants'
    motions to dismiss, and Plaintiffs' subsequent motions for reconsideration, *see In re
    Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261 (S.D.N.Y. 2005); *In re Initial
    Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298 (S.D.N.Y. 2005).

35. Mr. Robertson first became personally involved with the Securities Suit in 2002. He
    entered into a retainer agreement with the original plaintiff, Amy Liu, and maintained
    an attorney-client relationship with all of the additional named plaintiffs. He then
    retained the assistance of other attorneys as needed to prosecute the claims.

36. Mr. Robertson was personally involved in every aspect of the Securities Suit. He had
    engaged in extensive preparation for the Securities Suit before it was filed. He did
    extensive factual and legal research related to the claims. He had a significant and
    substantive role in drafting the pleadings, correspondence, motions and other
    documents related to the suit. He attended every hearing and court appearance related

to the Securities Suit. He coordinated the efforts of the other counsel he had brought in to the matter and updated his clients regarding the status of the case.

37. Mr. Robertson spent thousands of hours working on the Securities Suit and devoted well over a year of his life to its prosecution.

38. Prior to the creation of the partnership, Mr. Robertson spent thousands of hours on matters related to the prosecution of the Securities Suit.

39. Since the creation of the partnership, Mr. Robertson spent over seven thousand hours on matters related to W.A.R. LLP, including, but not limited to, the prosecution of the Securities Suit.

40. Throughout the course of the partnership Mr. Robertson has kept Dr. Cartinhour apprised of the status of the Securities Suit by letter, by telephone and by face to face conversations. We have exchanged letters and had numerous conversations related to the Securities Suit and the Partnership.

41. On or about October 18, 2004, I informed Dr. Cartinhour by letter that "All of the Defendants have filed motions to dismiss."

42. On or about April 7, 2005, I informed Dr. Cartinhour by letter that "We have received an order issued by the judge last week; the judge granted Defendant's motions to dismiss."

43. On or about May 27, 2005, I informed Dr. Cartinhour by letter that "As I indicated to you when we spoke, I believe the judge's rulings are clearly erroneous and we will appeal them if we are unable to persuade the judge to set aside her order with our motions to reconsider."

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 102 of 192

Case 1:10-cv-00286  Doc 132-2  Filed 02/17/11  Entered 02/17/11 10:23:47  Desc Exhibit
to Withdraw Reference Part 2  Page 25 of 71
Case 1:09-cv-01642-ESH   Document 53   Filed 02/22/10   Page 24 of 28

44. On or about December 11, 2006, I informed Dr. Cartinhour by letter that "Last week,
the U.S. Supreme Court denied our petition for writ of certiorari that we filed in the
Liu v. CSFB case. . . . I will attempt to move forward with the separate matter that you
and I agreed to. Let's discuss, in person if possible."

<div align="center">

**COUNT I BREACHES OF CONTRACTS**

</div>

45. Plaintiff incorporates paragraphs 1 through 44 as if fully rewritten herein.

46. Plaintiff and Defendant executed various contractual agreements (the "Contracts").

47. Defendant breached the Contracts by, including, but not limited to: failing to
contribute services to the Partnership, failing to uphold the confidentiality of the
Contracts, engaging in litigation in breach of the Contracts, failing to credit Plaintiff
for the services he has contributed to the Partnership both (a) prior to the formation of
the Partnership, and (b) during the life of the Partnership.

48. Plaintiff has been harmed by these breaches of contract, including, but not limited to,
incurring significant legal fees and costs.

<div align="center">

**COUNT II SET OFF**

</div>

49. Plaintiff incorporates paragraphs 1 through 48 as if fully rewritten herein.

50. Plaintiff and Defendant agreed that Plaintiff would contribute services to the
Partnership, which would confer a benefit upon Defendant as an owner of an interest
in the Partnership.

51. Plaintiff has contributed valuable services to the Partnership both (1) prior to the
formation of the Partnership, and (2) during the life of the Partnership.

52. Defendant was aware that Plaintiff was contributing valuable services to the
Partnership.

<div align="center">

24

</div>

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 103 of 192

Case 1:10-cv-00566   Doc 132-2 Filed 02/07/11 Entered 02/07/11 10:33:47 Desc Exhibit
Case 1:09-cv-07 6 Withdraw Defendant 33 of 29 Filed 09/22/9 of Page 25 of 28

53. Plaintiff is entitled to a setoff against any amounts due for the services he contributed
to the Partnership.

## COUNT III QUANTUM MERUIT

54. Plaintiff incorporates paragraphs 1 through 53 as if fully rewritten herein.

55. Plaintiff has contributed valuable services to the Partnership.

56. Plaintiff and Defendant agreed that Plaintiff would contribute services to the
Partnership, which would confer a benefit upon Defendant as a owner of an interest in
the Partnership.

57. Plaintiff has contributed valuable services to the Partnership both (1) prior to the
formation of the Partnership, and (2) during the life of the Partnership.

58. As a member of the Partnership, Defendant accepted Plaintiff's services and enjoyed
the use of them.

59. Defendant was aware that Plaintiff was contributing valuable services to the
Partnership, and that Plaintiff would be entitled to the value of those services.

60. Plaintiff is entitled to damages equal to the value of the services he contributed to the
Partnership.

## COUNT IV MISREPRESENTATION

61. Plaintiff incorporates paragraphs 1 through 60 as if fully rewritten herein.

62. Defendant made various representations to Plaintiff, including, but not limited to that
he would contribute services to the Partnership, uphold the confidentiality of the
Contracts, and credit Plaintiff for the services he contributed to the Partnership.

63. Defendant intended that Plaintiff rely upon his representations.

25

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 104 of 192

Case 1:09-cv-00556   Doc 32-2   Filed 06/27/01   Entered 06/28/01 15:24:47   Desc Exhibit B
Case 1:09-cv-00556 Withdraw Redemption 63 Filed 06/29 Page 27 of 7 age 26 of 28

64. Defendant was aware that Plaintiff would rely upon his representations and that if they were erroneous that they would cause damages to Plaintiff.

65. Plaintiff took action upon Defendants representations, including but not limited to, entering into the Contracts and contributing services to the Partnership.

66. Plaintiff has suffered damages caused by Defendant's misrepresentations, including, but not limited to, incurring significant legal fees and costs.

## JURY DEMAND

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any complaint, amended complaint, counter-complaint, counterclaims, amended counter-complaint, amended counterclaims or consolidated action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

A.     Award to Plaintiff compensatory damages in an amount to be determined by the trier of fact;

B.     Award to Plaintiff's attorneys' fees and other reasonable litigation costs to be determined by the trier of fact;

C.     Award to Plaintiff's such punitive damages to be determined by the trier of fact.

DATED: February 22, 2010

Respectfully submitted,

Edward N. Griffin, Esq.
GRIFFIN WHITAKER LLC
D.C.D.C. Bar No. 494057
7474 Greenway Center Drive
Suite 550
Greenbelt, MD 20770
Telephone 301.513.5082
Fax 888.367.0383

            /S/Edward Griffin/S/
Edward N. Griffin

Attorney for Mr. Robertson

27

## CERTIFICATE OF SERVICE

I hereby certify that December 7, 2009, I caused a true copy of the foregoing to be served on counsel of record through the Court's electronic filing system.

Dated: February 22, 2010.

Respectfully submitted,

<u>        /S/Edward Griffin/S/        </u>
Edward N. Griffin

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WADE A. ROBERTSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 09-01642 (ESH) |
| WILLIAM C. CARTINHOUR, JR., | ) |
| Defendant. | ) |

## ORDER

Based on the hearing held on this date, it is hereby **ORDERED** that:

1)      defendant/counter-plaintiff's motion to strike Wade Robertson's counterclaim is **GRANTED** as unopposed;

2)      by consent of the parties, the preliminary injunction [Dkt. 70] that was agreed to by the parties on March 1, 2010, is extended and shall remain in effect until the Court resolves defendant/counter-plaintiff's pending motion for a preliminary injunction on the merits; and

3)      the hearing on defendant/counter-plaintiff's motion for a preliminary injunction is continued until March 26, 2010, at 9:30 a.m.

**SO ORDERED.**

                                            /s/
                                    ELLEN SEGAL HUVELLE
                                    United States District Judge

DATE:  March 22, 2010

# EXHIBIT D



JUDGE SWAIN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

WADE ROBERTSON,

    Plaintiff,

vs.

WILLIAM C. CARTINHOUR, JR., VESNA
KUSTUDIC, TANJA MILICEVIC (a.k.a.
TANJA POPOVIC), ALEKSANDAR
POPOVIC, ALBERT SCHIBANI, PATRICK
J. KEARNEY, MICHAEL BRAMNICK,
ROBERT S. SELZER, CARLTON T.
OBECNY, JAMES G. DATTARO, NEIL
GURVITCH, ANDREW R. POLOTT, H.
MARK RABIN, and ELYSE L.
STRICKLAND,

    Defendants.

**10 CIV 8442**

Case No.:

_____ CV _____ ( )

**JURY TRIAL DEMANDED**

RECEIVED
NOV 0 9 2010
U.S.D.C. S.D. N.Y.
CASHIERS

### ORIGINAL COMPLAINT

Plaintiff Wade Robertson ("Mr. Robertson") alleges as follows:

### Jurisdiction over the Claims

1.    This Court has subject matter jurisdiction over the claims for relief under 18
U.S.C. § 1964(c) (racketeering); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1367
(supplemental jurisdiction). The RICO claims arise under the laws of the United States, and the
state-law claims are so related to the RICO claims that they form part of the same case or
controversy. This Court further has jurisdiction under 28 U.S.C. § 1332 ( diversity jurisdiction)
over state claims insofar as the Plaintiff is a citizen of Tennessee and all the Defendants are
citizens of states other than Tennessee or of countries outside the United States.

### Personal Jurisdiction and Venue

2.     Personal jurisdiction over all Defendants is predicated upon 18 U.S.C. §§ 1965(a),

(b), and (d).  Venue in this judicial district is predicated upon 18 U.S.C. §§ 1965(a) and (b).  At

least one Defendant is found or resides in this district; several Defendants transact their affairs in

this district; at least some, likely most, and possibly all Defendants have an agent here in this

district; and also because the ends of justice require that other parties residing in other districts be

brought before the court.  Venue is also proper upon 28 U.S.C. § 1391(b)(2) and (d) because a

substantial part of the events or omissions giving rise to the claims occurred in the Southern

District of New York, and because some Defendants are aliens.

<div align="center">

**Parties**

</div>

3.     Plaintiff Wade Robertson is a resident of Tennessee.

4.     Patrick J. Kearney is a shareholder in the law firm of Selzer Gurvitch Rabin &

Obecny, Chtd., and he is a resident of Maryland.

5.     Defendant Michael Brannick is an attorney employed by the law firm of Selzer

Gurvitch Rabin & Obecny, Chtd., and he may be served at his offices in Maryland.

6.     Defendant Robert S. Selzer is a shareholder in the law firm of Selzer Gurvitch

Rabin & Obecny, Chtd., and he may be served with process in New York County, New York.

7.     Defendant James G. Dattaro is a shareholder in the law firm of Selzer Gurvitch

Rabin & Obecny, Chtd., and he is a resident of Maryland.

8.     Defendant Neil Gurvitch is a shareholder in the law firm of Selzer Gurvitch Rabin

& Obecny, Chtd., and he is a resident of Maryland.

9.     Defendant Carlton T. Obecny is a shareholder in the law firm of Selzer Gurvitch

Rabin & Obecny, Chtd., and he is a resident of Maryland.

10.     Defendant Andrew R. Polott is a shareholder in the law firm of Selzer Gurvitch

<div align="center">- 2 -</div>

Rabin & Obecny, Chtd., and he is a resident of Maryland.

 11. Defendant H. Mark Rabin is a shareholder in the law firm of Selzer Gurvitch

Rabin & Obecny, Chtd., and he is a resident of Maryland.

 12. Defendant Elyse L. Strickland is a shareholder in the law firm of Selzer Gurvitch

Rabin & Obecny, Chtd., and she is a resident of Maryland.

 13. Defendant William C. Cartinhour, Jr. is a physician, an international investor, and

a client of the law firm of Selzer Gurvitch Rabin & Obecny, Chtd.  He resides in Maryland.

 14. Defendant Vesna Kustudic may be found and/or resides in New York County,

New York.

 15. Defendant Tanja Milicevic (a.k.a. Tanja Popovic) is a citizen of Serbia who, on

information and belief, may be found in New York County, New York, and also transacts her

affairs and/or has an agent in New York County, New York.

 16. Defendant Aleksandar Popovic is a citizen of Serbia who, on information and

belief, may be found in New York County, New York, and also transacts his affairs and/or has an

agent in New York County, New York.

 17. Defendant Albert Schibani is an attorney and a resident of Virginia.


### Non-Party Relevant Entity

 18. The law firm Selzer Gurvitch Rabin & Obecny, Chtd., (hereafter "SRGO") is

located in the United States at 4416 East West Highway, Suite 400; Bethesda, Maryland 20814.

The following attorneys are shareholders of the law firm: Defendants Obecny, Kearney, Selzer,

Dattaro, Gurvitch, Polott, Rabin, and Strickland.  As shareholders, these persons each manage

and control the operations and business of the law firm.  In addition to the above shareholders,

Case 1:11-mc-00283-RCL    Document 1    Filed 05/17/11    Page 113 of 192

Case 1:10-00596    Doc 32-2    Filed 03/1/11    Entered 03/7/11 14:33:47    Desc Exhibit D
to Withdraw Reference Part 20    Page 36 of 71

Defendant Bramnick is an attorney employed by the law firm.  On information and belief,

Defendant Bramnick shares in at least some management and control over the operations of the

firm with respect to legal matters on which he works.  This belief is based upon the fact that he

has filed numerous written grievances against Mr. Robertson since August of 2009 on behalf of

Dr. Cartinhour, but he has done so without any of the firm's other attorneys co-appearing with

him in those grievances.  The SGRO law firm has profited not less than approximately $65,000

from the acts and events set forth below.  Further discovery will likely reveal that SGRO has

profited far more than $65,000.

<center>**Factual Allegations**</center>

Background

     19.     Beginning in 1998, prices for Internet-related stocks increased dramatically before

the "bubble burst" in 2000.  Much of the increase was due to securities fraud. Between January

2001 and December 2001, approximately seventy plaintiffs' law firms filed more than one

thousand class-action complaints on behalf of approximately 1,000 investors against 300+

companies that had conducted initial public offerings ("IPOs") and fifty-five of the largest and

most prominent investment banking firms that underwrote those IPOs.  Collectively, the

defendants in that action were represented by more than 100 law firms.  Ultimately, all these

actions were transferred to and consolidated in the same court in the Southern District of New

York. On April 19, 2002, an "Executive Committee" of plaintiffs' firms appointed by the court

filed 300+ amended complaints plus a set of master allegations common to all complaints.

The Plaintiffs' lawyers in that action estimated that investors lost as much as $55 billion from the

alleged misconduct.  The plaintiff's lawyers themselves stood to reap many hundreds of millions

<center>- 4 -</center>

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 114 of 192

Case 1:00-00596   Doc 32-2   Filed 05/13/11   Entered 05/13/10 23:35:47   Desc Exhibit
to Withdraw Reference Page 1 of 30   Page 37 of 71

of dollars in fees if they were successful. This consolidated New York action was captioned as
"*In Re IPO*", and will be hereafter referred to as such.

20.     During the same period, another group of plaintiffs' attorneys – headed by
Plaintiff Wade Robertson – was busy investigating and prosecuting a separate but related
securities class action known as the "Liu action." These attorneys (hereafter, the "Liu action
attorneys") first filed on February 23, 2003 in the Southern District of Florida, and the suit
named approximately 185 defendants in allegations of fraud committed across approximately
fifty (50) IPOs. The Liu action overlapped to a degree in both allegations and class periods with
*In Re IPO*. The Liu action attorneys sought to minimize the overlap by amending the complaint
on June 19, 2003; however, on August 12, 2003 the Panel on Multidistrict Litigation transferred
the Liu action to the same court as *In Re IPO* in the Southern District of New York for either
coordinated or consolidated pretrial proceedings.

21.     Shortly prior to the transfer of the Liu action, a partial settlement was announced
on June 26, 2003 in *In Re IPO* whereby one class of defendants settled class claims for $1 billion
with the plaintiffs' classes, pending certification and judicial approval. The announcement of the
partial settlement was widely publicized in the U.S. media.

22.     Upon the Liu action's transfer to the Southern District of New York, the court
there conducted an initial hearing on September 22, 2003, and it was determined that despite
overlap in factual allegations and also some class claim periods, the Liu action would not be
consolidated but would instead be *coordinated* and allowed to proceed in parallel with *In Re
IPO*.

23.     Over the next year, the Liu action was streamlined to represent class members
who invested in any of fourteen (14) separate technology stocks between August 1999 and July

- 5 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 115 of 192

Case 1:10-cv-00546   Doc 3242   Filed 05/27/10   Entered 05/27/10 10:52:47   Desc Main
to Withdraw Reference Part 2 Page 38 of 71

2001.  The class periods for each stock ranged in duration from a few months to more than one
year.  The class members were represented by a court-appointed lead plaintiff and fourteen
additional named class plaintiffs.  One large Wall Street underwriter was named as the central
defendant, and five representative technology companies were named as supporting defendants.
The estimated total damages represented by the Liu action claims were approximately $41.7
billion, which included the claims overlapping with *In Re IPO*.  Without the overlapping claims,
however, the Liu class members sustained at least $8.8 billion in damages.

     24.    By the summer of 2004, the Liu action attorneys had worked many thousands of
hours on the case since before its original filing, and they had done so entirely on the basis of
contingent-fee arrangements.  Mr. Robertson, who had worked on the Liu action since late 2002,
*i.e.*, prior to its filing, had worked at least 3000 hours by that time.  The Liu action attorneys had
also invested substantially in out-of-pocket costs.  Based upon their client fee agreements and the
controlling law of the original venue (which did not limit fees to lodestar recovery), they
anticipated at least a 25% attorney fee-award, plus costs, from any judgment or settlement in the
plaintiffs' favor.

Dr. Cartinhour's Proposition

     25.    On or about September 6, 2004, Mr. Robertson was introduced by mutual
acquaintances to Defendant William C. Cartinhour, Jr. ("Dr. Cartinhour") who was living and
operating businesses in the Washington, D.C.– Maryland– Virginia metropolitan area.

     26.    Between September 6, 2004 and September 16, 2004, (hereafter, the
"Introductory Period"), Dr. Cartinhour and Mr. Robertson had numerous discussions.  Dr.
Cartinhour and the mutual acquaintances told Mr. Robertson that Dr. Cartinhour was a very
wealthy, Ivy-League-educated, sophisticated international businessman who had many decades

Case 1:11-mc-00283-RCL    Document 1    Filed 05/17/11    Page 116 of 192

Case 1:10-cv-00485-RCL    Doc 32-2    Filed 05/17/11    Entered 05/15/10 19:35:47    Desc Exhibit D
to Withdraw Reference Part 2    Page 39 of 71

of experience investing and running various companies. They also told Mr. Robertson that Dr.
Cartinhour had many attorneys working for him.

      27.    During the Introductory Period, Dr. Cartinhour told Mr. Robertson that he had
heard about the large securities-fraud class action ongoing in New York, and that he had heard
about the $1 billion settlement reached in *In Re IPO*. Dr. Cartinhour also told Mr. Robertson that
he was aware of the Liu action, and that he expected Mr. Robertson would earn a great amount
of money as an attorney in that case. Dr. Cartinhour told Mr. Robertson that he expected that all
the attorneys in *In Re IPO* and in the Liu action would earn a great deal of money based upon
what he had read and heard.

      28.    During the Introductory Period, Dr. Cartinhour proposed that he and Mr.
Robertson work together, and that they combine their resources into a joint venture. Dr.
Cartinhour told Mr. Robertson that he was interested in the potential economic success of Mr.
Robertson's legal work in the Liu action, and also that he was interested in subsequent securities
class actions that Mr. Robertson could bring.

      29.    During the Introductory Period, Dr. Cartinhour told Mr. Robertson that he
recognized that Mr. Robertson already had an enormous investment of time, efforts, and money
in the Liu action. He told Mr. Robertson that he owned and/or controlled a number of domestic
and international companies, including a domestic company engaged in consulting and investing.

      30.    During the Introductory Period, Dr. Cartinhour proposed to Mr. Robertson that
they form a multi-disciplinary partnership in the District of Columbia[1] in which Mr. Robertson
would continue working as an attorney on securities class actions, including the Liu action, while
Dr. Cartinhour would build, develop, or otherwise contribute a related consulting business that

---

[1] The District of Columbia professional rules governing attorneys specifically permit
multidisciplinary partnerships between lawyers and non-lawyers.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 117 of 192

Case 1:10-cv-00546  Doc 32-2  Filed 06/28/01  Entered 06/28/01 10:23:47  Desc Exhibit B
to Withdraw Reference Part 2 0  Page 40 of 71

provided investment and/or financial consulting services ancillary to the legal services provided
by Mr. Robertson.

31.    During the Introductory Period, Dr. Cartinhour proposed that he and Mr.
Robertson each contribute services and cash to the partnership, and that all profits derived from
either Mr. Robertson's legal business or from Dr. Cartinhour's consulting business would be
reinvested into the partnership in perpetuity until a future dissolution. Dr. Cartinhour proposed
that he invest a large and disproportionate amount of cash capital into the partnership in order to
equitably offset the contribution of Mr. Robertson's goodwill and outsized potential profits from
his work on the Liu action.

32.    During the Introductory Period, Dr. Cartinhour proposed that his and Mr.
Robertson's contribution of services to the partnership be valued at pre-determined rates and
recorded in the partnership's accounts. He further proposed that, upon dissolution, he and Mr.
Robertson be entitled to reimbursement from the partnership's accounts for their total
contribution of services to the partnership before the excess profits were split between them. Dr.
Cartinhour proposed that Mr. Robertson's reimbursement have priority over Dr. Cartinhour's
reimbursement, and that he (*i.e.*, Dr. Cartinhour) take a minority stake in the partnership's equity
in light of Mr. Robertson's pre-existing contributions.

33.    During the Introductory Period, Mr. Robertson told Dr. Cartinhour that he would
only consider the proposed partnership if it was expressly agreed that Mr. Robertson and Dr.
Cartinhour would never have an attorney-client relationship but would only be business partners.
Mr. Robertson had never been Dr. Cartinhour's attorney. Dr. Cartinhour agreed that there would
be no attorney-client relationship between them if they formed the proposed partnership.
Further, Dr. Cartinhour proposed that this mutual understanding, mutual consent, and explicit

- 8 -

Case 1:11-mc-00283-RCL Document 1 Filed 05/17/11 Page 118 of 192

Case 1:10-cv-00566 Doc 32-2 Filed 05/13/01 Entered 05/13/01 05:23:47 Desc Exhibit
to Withdraw Reference Part 40 Page 41 of 71

restriction be included as part of the formal partnership agreements.

    34.    During the Introductory Period, Mr. Robertson told Dr. Cartinhour that he would

not enter into the proposed partnership unless Dr. Cartinhour received beforehand independent

counsel and advice from one of Dr. Cartinhour's many attorneys regarding the terms of the

proposed partnership and its suitability for Dr. Cartinhour. Dr. Cartinhour agreed that he would,

and he proposed that the act of obtaining such advice, and his informed consent going forward,

be specifically included as part of the formal partnership agreements.

The Partnership Agreements

    35.    At the close of the Introductory Period, between September 16, 2004 and

September 17, 2004, Dr. Cartinhour and Mr. Robertson executed several written agreements

establishing the partnership in terms identical to those proposed as discussed above in the

foregoing paragraphs. The partnership was named W.A.R. LLP. In the agreements, Dr.

Cartinhour and Mr. Robertson explicitly agreed that Mr. Robertson's services to the partnership

would be valued at $485 per hour, and that Dr. Cartinhour's services would be valued at $500

per hour, and that the total of their respective contributions would be recorded in the

partnership's accounts. Further, Dr. Cartinhour explicitly agreed in the agreements that there

would be no attorney-client relationship between Dr. Cartinhour and Mr. Robertson as long as

the partnership lasted. Further, Dr. Cartinhour explicitly covenanted and represented in the

agreements that before entering into the partnership with Mr. Robertson, he had consulted with

his own attorney first regarding the proposed partnership, that his own attorney had advised him

against entering the partnership, but that he was knowingly choosing to enter into the partnership

notwithstanding the advice of his counsel.

    36.    Dr. Cartinhour executed three written agreements on September 16, 2004 and

September 17, 2004 with Mr. Robertson establishing the W.A.R. LLP partnership. Dr.
Cartinhour also wrote a bank check on September 17, 2004 for $1 million to deposit into the
partnership's banking accounts. On or about September 17, 2004, Dr. Cartinhour mailed copies
of the three executed agreements to Mr. Robertson via the United States Postal Service, which
Mr. Robertson then subsequently received on September 21, 2004. Mr. Robertson at all times
relied upon these acts of Dr. Cartinhour and would not have entered into, or remained in the
W.A.R. LLP partnership with him but for these acts by Dr. Cartinhour.

  37. On March 21, 2005, Dr. Cartinhour executed another written agreement with Mr.
Robertson, this time amending certain terms of the W.A.R. LLP partnership agreements. After
executing the written agreement, Dr. Cartinhour mailed copies of the agreement to Mr.
Robertson on or about March 21, 2005 via the United States Postal Service, which Mr.
Robertson then subsequently received on March 25, 2005. Mr. Robertson at all times relied upon
this act of Dr. Cartinhour and would not have remained in the W.A.R. LLP partnership with him
but for these acts by Dr. Cartinhour.

  38. As of March 21, 2005, Mr. Robertson had invested not less than $822,075.00 in
contributed services to the W.A.R. LLP partnership according to the terms of the partnership
agreements.

  39. On April 5, 2005, Dr. Cartinhour wire transferred an additional $1 million across
state lines and into the partnership's banking accounts. Mr. Robertson at all times relied upon
this act of Dr. Cartinhour and would not have remained in the W.A.R. LLP partnership with him
but for these acts by Dr. Cartinhour.

  40. As of April 5, 2005, Mr. Robertson had invested not less than $892,885.00 in
contributed services to the W.A.R. LLP partnership according to the terms of the partnership

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 120 of 192

Case 1:10-00496   Doc 32-2   Filed 03/15/11   Entered 03/15/11 13:35:47   Desc Exhibit
to Withdraw Reference Part 2   Page 43 of 71

agreements.

    41.     On December 6, 2005, Dr. Cartinhour executed another written agreement with

Mr. Robertson, this time amending certain terms of the W.A.R. LLP partnership agreements. On

or about December 6, 2005, Dr. Cartinhour mailed copies of the agreement to Mr. Robertson via

the United States Postal Service, which Mr. Robertson subsequently received on December 9,

2005. Mr. Robertson at all times relied upon this act of Dr. Cartinhour and would not have

remained in the W.A.R. LLP partnership with him but for this act by Dr. Cartinhour.

    42.     As of December 6, 2005, Mr. Robertson had invested not less than $2,012,750.00

in contributed services to the W.A.R. LLP partnership according to the terms of the partnership

agreements.

The Purported Charity in Serbia

    43.     Immediately after entering into the W.A.R. LLP partnership, on September 17,

2004 Dr. Cartinhour told Mr. Robertson that he had previously created a charitable foundation in

Serbia (hereafter the "Cartinhour Serbian charity"). Dr. Cartinhour told Mr. Robertson that he

wanted all of his financial interests in the partnership assigned to his Cartinhour Serbian charity.

On information and belief, the purported charity had been formally chartered with the assistance

of Defendant Popovic, a Serbian lawyer. The facts in support of this belief are that, on or about

January 19, 20, 21, 22, and 23 of 2006, Defendant Milicevic told Mr. Robertson that Defendant

Popovic helped charter the purported charity.

    44.     The Cartinhour Serbian charity is named the "William C. Cartinhour, Jr.

Foundation." The foundation is headquartered in Belgrade, Serbia, and its Serbian tax

identification number is 103891898.

    45.     In December of 2005, Dr. Cartinhour told Mr. Robertson that the Cartinhour

- 11 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 121 of 192

Case 1:10-00566   Doc 132-2   Filed 12/27/10   Entered 12/27/10 10:35:47   Desc Exhibit A
to Withdraw Reference   Part 2   Page 44 of 71   Page 43 of 70

Serbian charity was his intended destination for all of his millions of dollars in personal and

business assets and that he had already moved significant assets out of the United States and into

that entity. Dr. Cartinhour told Mr. Robertson that Defendants Popovic, Kustudic, Milicevic

were either on the board of directors or were officers of the Cartinhour Serbian charity.

46.      In April of 2006, Dr. Cartinhour told Mr. Robertson that a U.S. tax attorney was

also on the board of directors of the Cartinhour Serbian Charity. On information and belief, that

tax attorney is Defendant Schibani. The facts in support of this belief are that Defendant

Schibani advertises himself as an "International Tax Specialist and General Counsel" (see

http://schibani.com/), and he advertises his specific experience as a tax consultant in Kosovo,

Serbia (see http://schibani.com/6.html), and he has represented Dr. Cartinhour as an attorney in

written communications with Mr. Robertson regarding other matters (i.e. the partnership).

47.      On information and belief, the Cartinhour Serbian charity has not engaged in any

charitable giving, nor in any charitable activities as would be recognized by United States tax

authorities. The facts in support of this belief are that no records of any such activity could be

located, that on or about January 19, 20, 21, 22, and 23 of 2006, Defendant Milicevic told Mr.

Robertson that the Cartinhour Serbian charity was not engaged in any charitable activities.

48.      On information and belief, Dr. Cartinhour and Defendants Popovic, Kustudic,

Milicevic, and Schibani used the purported Cartinhour Serbian charity to transfer assets from the

United States to third parties without paying taxes in the United States. The facts in support of

this belief are statements made by Defendant Milicevic to this effect on or about January 19, 20,

21, 22, and 23 of 2006.

49.      On information and belief, Dr. Cartinhour and his co-conspirators have used the

purported Cartinhour Serbian charity to engage in tax fraud upon the United States federal

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 122 of 192

Case 1:10-cv-00546 Doc 32-2 Filed 06/13/11 Entered 06/13/11 13:49:47 Desc Exhibit B
to Withdraw Reference Part 2 Page 45 of 71 Page 240

government. The facts in support of this belief are the aforementioned statements of Defendant
Milicevic.

The Purported Consulting Company

50.    On September 17, 2004, immediately after entering into the W.A.R. LLP
partnership, Dr. Cartinhour told Mr. Robertson that he wanted to utilize a domestic consulting
company that he owned, TCT LLC, to enable him to build the consulting business segment of the
W.A.R. LLP partnership for which he (*i.e.*, Dr. Cartinhour) was responsible under the terms of
the partnership agreement.

51.    From the beginning of the WAR LLP partnership in September of 2004 through
December of 2005, Dr. Cartinhour and Mr. Robertson periodically discussed Dr. Cartinhour's
stated intentions to fulfill his part of the partnership agreement (pertaining to building or
contributing a consulting business for the partnership) by merging TCT LLC into the W.A.R.
LLP partnership.  No affirmative actions were taken during that time, however, to merge the two
entities and Mr. Robertson knew nothing material about the operations of TCT LLC.

52.    On December 6, 2005, Dr. Cartinhour and Mr. Robertson executed another
written agreement amending certain terms of the W.A.R. LLP partnership agreements. That new
amendment pertained largely to setting up trust provisions in the existing partnership agreements
in order to assign Dr. Cartinhour's personal financial interest in the partnership to his Cartinhour
Serbian charity.  At that same time, Dr. Cartinhour asked Mr. Robertson to consider immediately
taking the position of president of the TCT LLC company and merging TCT LLC with W.A.R.
LLP in order to start their partnership's consulting business.

53.    Mr. Robertson asked Dr. Cartinhour about the operations and business records of
TCT LLC and told him that he (*i.e.,* Mr. Robertson) would need to conduct due diligence on

- 13 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 123 of 192

Case 1:10-cv-00566  Doc 132-2 Filed 12/27/10 Entered 12/27/10 10:34:47 Desc Exhibit
to Withdraw Reference Part 2 0  Page 46 of 71

TCT LLC before he could agree to any of Dr. Cartinhour's requests. In response, Dr. Cartinhour

directed Mr. Robertson to speak with a number of people, including Defendants Kustudic,

Milicevic, and Popovic.

    54.    Between December 6, 2005 and January 29, 2006, Mr. Robertson communicated

with Defendants Kustudic, Milicevic, and Popovic, and they provided business documents to

him regarding TCT LLC. Mr. Robertson was unable to verify any legitimate business activity

for TCT LLC, and he discovered that Defendant Milicevic, who was a purported employee of

TCT LLC, had submitted what appeared to Mr. Robertson to be false statements in immigration

visa applications to the United States government in an effort to falsely obtain a "green card"

permanent visa. Mr. Robertson also discovered plans by Defendants Kustudic, Milicevic, and

Popovic to add Defendant Kustudic as an employee of TCT LLC and to likewise submit false

immigration documents in an effort to obtain a "green card" permanent visa.

    55.    On or about January 20th or 21st of 2006, Mr. Robertson told Dr. Cartinhour that

he would not become president of the TCT LLC company or have any direct association

whatsoever with it and that he would not agree to merging TCT LLC with W.A.R. LLP. Mr.

Robertson told Dr. Cartinhour that he was concerned that TCT LLC was being used as a front for

immigration fraud.

    56.    On January 21, 2006, Dr. Cartinhour wrote a letter to Mr. Robertson and sought to

appease Mr. Robertson and to coax him into reconsidering his decision on TCT LLC. Dr.

Cartinhour wrote "[t]hat the signatures you might need to sign were only the most prosaic, hoo

hum kind of things—not a cause to feel wary."

    57.    Around the same time, on or about January 19, 20, 21, 22, and 23 of 2006, Mr.

Robertson was busy confronting Defendants Kustudic, Milicevic, and Popovic with his

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 124 of 192

Case 1:10-00586   Doc 32-2   Filed 2/27/10   Entered 02/27/10 10:23:47   Desc Exhibit
to Withdraw Reference Part 2  Page 47 of 71   Page 46 of 240

conclusions about TCT LLC's immigration fraud. Defendant Milicevic told Mr. Robertson that

if he attempted to reveal TCT LLC's fraud to federal authorities, she and Defendants Kustudic

and Popovic would falsely allege that he (*i.e.*, Mr. Robertson) had participated in the

immigration fraud since the time he entered the W.A.R. LLP partnership with Dr. Cartinhour.

She also warned Mr. Robertson that he had everything to lose because he was an attorney,

whereas they had nothing to lose because they could go back to Serbia. Further, she told Mr.

Robertson that if he interfered with or otherwise thwarted the assignment and transfer of Dr.

Cartinhour's partnership interest in W.A.R. LLP to the Cartinhour Serbian charity, they would

sue him "into bankruptcy."

58.   During the same conversation, Defendant Milicevic told Mr. Robertson that Dr.

Cartinhour had previously paid $100,000 to a Serbian mobster named Vladan Bulatovic to

coerce and threaten one of Dr. Cartinhour's business partners in Serbia to transfer all of the

partner's business assets into the Cartinhour Serbian charity. According to her, the partner

originally fled into hiding, but Mr. Bulatovic tracked him down and successfully coerced him to

transfer all the assets to the purported charity. Dr. Cartinhour subsequently denied Defendant

Milicevic's allegations.

59.   Between January 23, 2006 and January 29, 2006, Mr. Robertson had heated

communications with Dr. Cartinhour regarding the TCT LLC fraud and the threatening

statements of Defendant Milicevic. These communications climaxed on January 30, 2006, when

Dr. Cartinhour wrote a letter to Mr. Robertson admitting as follows: "TCT [LLC] is and was a

fraud, but the only victim so far is me. Everyone involved is much better rid of this monster

before green cards are gained and a real felony has been committed."

60.   During the days that followed, Mr. Robertson demanded that Dr. Cartinhour shut

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 125 of 192

Case 1:10-00586   Doc 32-2   Filed 05/13/11   Entered 05/13/11 15:45:47   Desc Exhibit A
to Withdraw Reference Part 2   Page 48 of 71

down TCT LLC, and Dr. Cartinhour agreed to do so. In addition, Dr. Cartinhour told Mr.

Robertson that Defendant Milicevic's threats were not real. Dr. Cartinhour also told Mr.

Robertson that he (*i.e.*, Dr. Cartinhour) would never make such a false accusation against Mr.

Robertson and that he would never sue Mr. Robertson. Dr. Cartinhour told Mr. Robertson that

"my word is my bond."

61.     During February and March of 2006, Dr. Cartinhour took affirmative steps to shut

down TCT LLC and Mr. Robertson assisted him with ministerial business matters related to the

closure.

62.     On or about March 13, 2006, someone other than Mr. Robertson told an attorney

at the law firm of Maggio & Kattar, P.C., a law firm representing TCT LLC regarding

immigration issues, that Mr. Robertson was general counsel for TCT LLC. Mr. Robertson

learned of this from a letter dated March 13, 2006 addressed to him, which began as follows:

"Per your request as General Counsel for TCT [] LLC ..."  That statement was not true. Mr.

Robertson was not TCT LLC's "general counsel" nor its attorney; in fact, Mr. Robertson had no

connection whatsoever except through his relationship with Dr. Cartinhour.

63.     Mr. Robertson immediately confronted Dr. Cartinhour about the Maggio and

Kattar letter. Dr. Cartinhour assured Mr. Robertson that it was simply a mistake, and that one of

the "girls" from TCT LLC had probably misspoken. Mr. Robertson suggested a writing to make

clear that he did not represent TCT LLC and to foreclose any claims that he was Dr. Cartinhour's

attorney. Dr. Cartinhour agreed.

64.     On one occasion between March 13, 2006 and April 6, 2006, Mr. Robertson met

with Defendant Kustudic at a Starbucks coffee-shop in DuPont square in Washington, D.C. to

exchange some documents on behalf of Dr. Cartinhour. At that time, he attempted to appease

- 16 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 126 of 192

Case 1:10-cv-00546   Doc 32   Filed 05/16/11   Entered 05/16/11 05:23:47   Desc Exhibit B
to Withdraw Reference Part 2   Page 49 of 71

her by telling her that although the closing of TCT LLC would impact her negatively, it would be offset by the eventual transfer of Dr. Cartinhour's interest in the W.A.R. LLP partnership to the Cartinhour Serbian charity, of which she was a board member and/or officer. The conversation quickly became acrimonious, and Defendant Kustudic remarked that closing TCT LLC did not matter to her in any event because she and Dr. Cartinhour had "planned all along" to take "all" of Mr. Robertson's money anyway as soon as the Liu action was completed.

65.     Afterward, Mr. Robertson complained to Dr. Cartinhour about Defendant Kustudic's remarks and threats. Dr. Cartinhour told Mr. Robertson that Defendant Kustudic was merely angry about TCT LLC and that her remarks were not true.

66.     On April 7, 2006, Mr. Robertson and Dr. Cartinhour went together before a notary public in the District of Columbia so Dr. Cartinhour could execute a formal closing document for TCT LLC, which he did. Then, in order to alleviate Mr. Robertson's concerns about the threats made by Defendants Kustudic and Milicevic, and Popovic, Dr. Cartinhour executed several agreements. Dr. Cartinhour executed an "Attestation and Certification of No Attorney-Client Relationship with Attorney Wade Robertson" whereby he swore that Mr. Robertson had *never* been his attorney at any time. Dr. Cartinhour told Mr. Robertson that the broad attestation clearly covered TCT LLC and anything conceivably related to it. In addition, Dr. Cartinhour executed an "Indemnification, Hold Harmless, and Agreement to Waive All Claims" for the benefit of both Mr. Robertson and the W.A.R. LLP partnership. The document released any claims against Mr. Robertson from Dr. Cartinhour, or his assigns or beneficiaries (*i.e.* the Cartinhour Serbian charity and / or its beneficiaries). In executing the document, Dr. Cartinhour told Mr. Robertson that he would never sue Mr. Robertson. Mr. Robertson at all times relied upon these acts of Dr. Cartinhour and would not have remained in the W.A.R. LLP

- 17 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 127 of 192

Case 1:10-cv-00566   Doc 134-2 Filed 12/07/10  1 Entered 12/07/10 1 u:345447 Desc Exhibit D
to Withdraw Reference Part 20   Page 50 of 71

partnership with him but for these acts by Dr. Cartinhour.

     67.    On April 9, 2006, Dr. Cartinhour executed a formal W.A.R. LLP partnership "vote" per the terms of the partnership's agreements to authorize Mr. Robertson to work on other litigation matters via the partnership after the conclusion of the Liu action, regardless of how the Liu action was concluded. On April 10, 2006, Dr. Cartinhour executed another written agreement with Mr. Robertson, this time amending certain terms of the W.A.R. LLP partnership agreements. Dr. Cartinhour also wrote another bank check on April 10, 2006 for $1.5 million to deposit into the partnership's banking accounts. On or about April 10, 2006, Dr. Cartinhour mailed copies of the two executed agreements to Mr. Robertson via the United States Postal Service, which Mr. Robertson subsequently received on April 14, 2006. Mr. Robertson at all times relied upon these acts of Dr. Cartinhour and would not have remained in the W.A.R. LLP partnership with him but for these acts by Dr. Cartinhour.

     68.    As of April 10, 2006, Mr. Robertson had invested not less than $2,334,790.00 in contributed services to the W.A.R. LLP partnership according to the terms of the partnership agreements.

The Conclusion of the Liu Action

     69.    On or about February 3, 2008, Mr. Robertson finally exhausted all efforts on the Liu action, including attempts to re-file it on behalf of a new group of class plaintiffs. The Liu action ultimately yielded no profit for the W.A.R. LLP partnership.

     70.    As of February 3, 2008, Mr. Robertson had invested not less than $3,741,290.00 in contributed services to the W.A.R. LLP partnership according to the terms of the partnership agreements.

     71.    Pursuant to the April 9, 2006 "vote" agreement between Dr. Cartinhour and Mr.

- 18 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 128 of 192

Case 1:10-cv-00586   Doc 32-2   Filed 08/15/11   Entered 08/15/11 14:33:47   Desc Exhibit D
to Withdraw Reference Part 2 Page 51 of 71

Robertson for the W.A.R. LLP partnership, Mr. Robertson began investigating another securities

class action matter, and he continued working on the matter until about August 23, 2009.

Dr. Cartinhour's Extortion Attempt

72.     On January 9, 2009, Defendant Albert Schibani wrote a letter to Mr. Robertson,

purportedly on behalf of Dr. Cartinhour, demanding that Mr. Robertson immediately return *all* of

the money that Dr. Cartinhour had invested in the W.A.R. LLP partnership. Mr. Schibani mailed

it to Mr. Robertson via the United States Postal Service, and Mr. Robertson subsequently

received it on January 14, 2009. Defendant Schibani's demand letter did not acknowledge Mr.

Robertson's investment of contributed services to the W.A.R. LLP partnership per the

partnership agreements. Defendant Schibani's letter misstated facts relating to the W.A.R. LLP

partnership— such as quoting from an outdated version of the partnership agreement— and it

falsely claimed that Dr. Cartinhour was entitled to all the money he invested in the W.A.R. LLP

partnership.

73.     Based upon the misstatement of facts in Defendant Schibani's January 9, 2009

letter, and the peculiar nature of the demands, Mr. Robertson did not believe that Defendant

Schibani represented Dr. Cartinhour but instead that Defendant Schibani represented Defendants

Kustudic and/or Milicevic and/or Popovic. Mr. Robertson wrote back to Defendant Schibani on

January 27, 2010 suggesting this.

74.     On February 6, 2009, Defendant Schibani wrote back to Mr. Robertson again with

demands but he did not deny that he was representing Defendants Kustudic and/or Milicevic

and/or Popovic. He did, however, include with his letter a brief non-explanatory note dated

February 4, 2009, and purportedly signed by Dr. Cartinhour, stating that Defendant Schibani was

representing Dr. Cartinhour.

- 19 -

75.     Upon receiving the February 6, 2009 letter from Defendant Schibani with Dr.

Cartinhour's purported note enclosed therein, Mr. Robertson then became concerned that the

threats made by Defendants Kustudic, Milicevic, and Popovic to Mr. Robertson in 2006 were

indeed true, notwithstanding Dr. Cartinhour's assurances to the contrary and the agreements he

signed in support of those assurances.

76.     Subsequently, at the direction of Dr. Cartinhour and Defendant Schibani,

Defendant Carlton Obecny of the law firm Selzer Gurvitch Rabin & Obecny, Chtd. wrote letters

to Mr. Robertson on August 14, 2009 and August 21, 2009.  Defendant Obecny's letter cc'd both

Defendant Schibani and Dr. Cartinhour.  In the August 21, 2009 letter, Defendant Obecny

threatened to sue Mr. Robertson within seven days.  Mr. Obecny sent the letters via the United

States Postal Service, and Mr. Robertson received the letters on August 20, 2009 and August 26,

2009, respectively.  No acknowledgement was made in Defendant Obecny's demand letters of

Mr. Robertson's investment of contributed services to the W.A.R. LLP partnership per the

partnership agreements.

77.     Based upon the misstatements in Defendant Obecny's and Defendant Schibani's

letters, the peculiar nature of the demands, the fact that Defendant Obecny wrote the letter at the

behest of Defendant Schibani, and the fact that Defendant Schibani had not denied that he

represented Defendants Kustudic and/or Milicevic and/or Popovic, Mr. Robertson believed that

Defendant Obecny and his firm also were acting at the behest of Defendants Kustudic and/or

Milicevic and/or Popovic.  On August 27, 2009, Mr. Robertson wrote back to Defendant Obecny

expressing this concern and warning that he (*i.e.*, Defendant Obecny) might be tortiously

interfering with the W.A.R. LLP partnership.

78.     Defendant Obecny wrote back to Mr. Robertson during September of 2009, but

- 20 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 130 of 192

Case 1:10-cv-00546   Doc 132-2   Filed 2/57/11   Entered 2/87/11 10:3:45:47   Desc Exhibit A
to Withdraw Reference Part 2 of 4   Page 53 of 71

Defendant Obecny did not deny that he was representing Vesna Kustudic and/or Tanja Milicevic and/or Aleksandar Popovic. Mr. Robertson therefore concluded that Defendants Schibani and Obecny represented Defendants Kustudic and/or Milicevic and/or Popovic, in addition to Dr. Cartinhour. As a result of the foregoing, Mr. Robertson is informed and believes that Defendants Schibani and Obecny represented— and continue to represent-- Defendants Kustudic and/or Milicevic and/or Popovic, in addition to Dr. Cartinhour.

Declaratory Judgment Action in Washington, D.C.

79.     On August 28, 2009, in response to the August 21, 2009 letter of Defendant Obecny, Mr. Robertson filed a complaint for declaratory judgment seeking to avoid suit on the grounds of the "Indemnification, Hold Harmless, and Agreement to Waive All Claims" executed by Dr. Cartinhour on April 6, 2006 before a notary public (as described above).

80.     On October 28, 2009, Defendant Kearney filed verified counterclaims against Mr. Robertson on behalf of Dr. Cartinhour. On information and belief, Defendant Kearney was acting in concert with and/or at the instruction of Defendant Obecny, because Defendant Obecny had threatened the litigation which Defendant Kearney subsequently filed.

81.     The verified counterclaims filed by Defendant Kearney included false allegations that Mr. Robertson had been Dr. Cartinhour's attorney. The verified counterclaims sought to deprive Mr. Robertson of his entire investment of contributed services to the W.A.R. LLP partnership by asserting that the partnership contracts were void as unconscionable because Dr. Cartinhour allegedly had not been represented by independent counsel and because Mr. Robertson allegedly had been Dr. Cartinhour's attorney. The counterclaims stated that "[a]t all relevant times, Robertson was acting as an attorney to Cartinhour and advising him in connection with entering into, and investing in, the [W.A.R. LLP] Partnership." This sworn allegation by

- 21 -

Case 1:11-mc-00283-RCL    Document 1    Filed 05/17/11    Page 131 of 192

Case 1:10-cv-00566    Doc #: 32-2    Filed 06/15/11    Entered 06/15/11 16:34:47    Desc Exhibit B
to Withdraw Reference Part 2    Page 240    Page 54 of 71

Dr. Cartinhour contradicted both the W.A.R. LLP partnership papers and also the sworn "Attestation and Certification of No Attorney-Client Relationship with Attorney Wade Robertson" that Dr. Cartinhour had executed before a notary public on April 7, 2006.

    82.    Mr. Robertson later learned that Dr. Cartinhour and Defendants Kearney, Bramnick, Obecny, and Selzer were fully aware on October 28, 2009 (i.e., the date the counterclaims were filed) that Dr. Cartinhour was represented by independent counsel when he entered the W.A.R. LLP partnership with Mr. Robertson. Dr. Cartinhour's counsel had been Larry Ash, an attorney in Washington, D.C. In fact, Defendants Kearney, Bramnick, Obecny, and Selzer communicated with Mr. Ash prior to filing Dr. Cartinhour's false sworn counter-claims. On November 3, 2009, just a few days after they filed Dr. Cartinhour's sworn counterclaims, Defendant Bramnick sent an email to Larry Ash thanking him for "taking the time to speak with [him] recently regarding Dr. Cartinhour."

    83.    On December 24, 2009, despite having knowledge of Mr. Ash's role in advising Dr. Cartinhour, Defendants Kearney and Bramnick filed in court an opposition with a sworn affidavit of Dr. Cartinhour attached. Defendants Kearney and Bramnick asserted that "Robertson induced Cartinhour to enter into [the W.A.R. LLP] Partnership . . . Robertson was acting as Cartinhour's attorney during this period with respect to the Partnership and other legal matters." Dr. Cartinhour's affidavit stated as follows: "I had no other attorney review any of the documents that I signed in connection with my business dealings with Robertson." This was false, and Dr. Cartinhour and his attorneys knew it was false when they filed it.

    84.    On January 4, 2010, in response to a court order for an accounting of the W.A.R. LLP partnership, accountant Tim Gray submitted an affidavit with supporting accounting schedules showing that Mr. Robertson had a $3.83 million investment in the partnership, that Dr.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 132 of 192

Case 1:00-00566   Doc 342   Filed 2/27/3/91   Entered 02/75/9 10:23:47   Desc Exhibit
to Withdraw Reference Part 240 Page 55 of 71

Cartinhour had a $3.5 million investment, and that Mr. Robertson's investment was entitled to

priority over Dr. Cartinhour's in any liquidation.

85.     On January 7, 2010, despite all the evidence that Mr. Robertson had not acted as

Dr. Cartinhour's attorney, Defendants Kearney and Bramnick filed in court an opposition to

prevent a *sua sponte* "freeze order" from being lifted on a reconsideration request. Defendants

Kearney and Bramnick explicitly stated that Mr. Robertson's defenses, *e.g.*, that he had never

been Dr. Cartinhour's attorney, were "bald face lies." In support of their argument, Defendants

Kearney and Bramnick attached the March 13, 2006 letter of Maggio and Kattar addressing Mr.

Robertson as general counsel for TCT LLC. This was the same letter that had previously led to

the "Attestation and Certification of No Attorney-Client Relationship with Attorney Wade

Robertson" that Dr. Cartinhour had executed before a notary public on April 7, 2006.

Defendants Kearney and Bramnick possessed copies of Dr. Cartinhour's April 7, 2006 affidavit,

but they filed their false accusations and presented the inaccurate letter anyway.

86.     In their January 7, 2010 opposition filing, Defendants Kearney and Bramnick also

attached a decision from a federal case in California (the "California Case") in which Mr.

Robertson had been a plaintiff and Tim Gray (the accountant, *supra*) had been a key witness in

support of Mr. Robertson's claims there.

87.     On January 11, 2010, Mr. Robertson met and spoke with Dr. Cartinhour. Dr.

Cartinhour told Mr. Robertson that he wanted *all* the money of the W.A.R. LLP partnership to go

to the Cartinhour Serbian charity notwithstanding Mr. Robertson's investment of contributed

services to the W.A.R. LLP partnership. Mr. Robertson reminded Dr. Cartinhour that they had

an agreement in the W.A.R. LLP partnership dating back to September of 2004. But Dr.

Cartinhour asserted that the agreement was unimportant; further, he asserted that he had always

- 23 -

intended to obtain all of W.A.R. LLP partnership's money for transfer to the Cartinhour Serbian

charity. Mr. Robertson complained to Dr. Cartinhour about the false allegations filed by him and

Defendant Kearney and told him that he believed it was essentially extortion. Mr. Robertson

told Dr. Cartinhour that he could not immediately liquidate their partnership and satisfy the

monetary demands that Dr. Cartinhour was making in the litigation but that he could offer him ·

all the cash that was available and asked if they could work something out without continuing the

litigation. Dr. Cartinhour agreed to immediately drop the litigation and to resolve the situation

privately. Mr. Robertson asked Dr. Cartinhour if he was certain, and Dr. Cartinhour told him as

follows: "My word is my bond."

     88.    But Dr. Cartinhour lied. The very next day, on January 12, 2010, Defendant

Kearney and Dr. Cartinhour filed an emergency motion to restrain Mr. Robertson from

contacting or communicating with Dr. Cartinhour. Dr. Cartinhour filed a false affidavit in

support of the emergency motion. At that point, Mr. Robertson fully realized that he was being

extorted by Dr. Cartinhour, and also Defendants Kustudic, Milicevic, and Popovic. Mr.

Robertson did not contest or oppose the emergency motion.

     89.    Sometime in January or February 2010, Defendant Kearney, Defendant Bramnick

and/or someone acting in concert with them retaliated against Mr. Gray for his testimony on

January 4, 2010 concerning the W.A.R. LLP partnership accounting. An attorney from

Maryland called the California attorney who represented the party adverse to Mr. Robertson in

the California Case. The calling attorney falsely stated that Mr. Gray was a co-conspirator and

participant in a scheme with Mr. Robertson and another person to defraud Dr. Cartinhour out of

his life savings. The calling attorney portrayed Dr. Cartinhour as a frail elderly man. The calling

attorney said that they had a "solid case" for federal criminal charges against Mr. Gray and Mr.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 134 of 192

Case 1:10-cv-00586   Doc 242   Filed 05/13/11   Entered 05/15/11 05:35:47   Desc Motion to Withdraw Reference Part 2   Page 57 of 71

Robertson, and that they were going to "get them." The calling attorney asked further questions about Mr. Gray's business. From that conversation, at least one letter was produced and mailed via the United States Postal Service outlining the false allegations that Mr. Gray was involved in a criminal enterprise. Mr. Gray's office landlord received that letter outlining the false allegations that Mr. Gray was involved in a criminal enterprise. Shortly thereafter, Mr. Gray's office landlord evicted him, citing the allegations that Mr. Gray was involved in criminal activities. Mr. Gray requested a copy of the letter from his landlord, but none was provided. Further discovery is required in order to obtain the letter, to determine the further contents of the phone communication, and to obtain the exact identity of the attorney who called from Maryland and/or who created that letter and/or who mailed that letter. On information and belief, the attorney who called from Maryland to retaliate against Tim Gray was either Defendant Kearney, or Bramnick. This belief is based upon the information set forth in the above paragraphs, including the following: (1) Defendants Kearney and Bramnick were aware of Mr. Gray's identity because of his testimony; (2) Defendants Kearney and Bramnick were aware of the California Case wherein Mr. Gray was as a witness for Mr. Robertson; (3) the allegations against Mr. Gray mirrored the allegations that Defendants Kearney and Bramnick made on behalf of Dr. Cartinhour; (4) Defendants Kearney and Bramnick had motive to retaliate against Mr. Gray because his testimony undermined their case; and (5) no other identifiable person had the motive to make such baseless accusation against Mr. Gray.

90.     On February 15, 2010, Dr. Cartinhour responded under oath to Mr. Robertson's First Set of Amended Interrogatories, but despite Dr. Cartinhour's and Defendants Kearney's and Bramnick's knowledge of Larry Ash's identity, contact information, and potential testimony, they willfully concealed him and instead provided perjured answers. According to the certificate

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 135 of 192

Case 1:10-cv00586  Doc 32-2 Filed 2/8/11 Entered 2/8/11 19:83:47 Desc Exhibit A
to Withdraw Reference Part 2 Page 58 of 71

of service, Defendant Bramnick mailed the fraudulent document to Mr. Robertson's counsel of

record, Edward Griffin, via the United States Postal Service on February 15, 2010.

91.     On February 22, 2010, Defendant Kearney and Defendant Bramnick filed an

emergency motion for a temporary restraining order and preliminary injunction requesting a

seizure of *all* of Mr. Robertson's assets. Defendants Kearney and Bramnick attached in support

a sworn affidavit purporting to be from Dr. Cartinhour and bearing his signature. On

information and belief, Defendant Selzer was complicit in both the motion and the supporting

affidavit of Dr. Cartinhour based upon the fact that Defendant Selzer subsequently appeared at

the motion hearing. The motion and supporting affidavit of Dr. Cartinhour were electronically

filed. On information and belief, the electronic filing was across state lines based upon the fact

that the court was located in a different state from the Maryland offices of Defendants Kearney,

Bramnick, and Seltzer.

92.     On March 22 and 26, 2010, at a hearing on Dr. Cartinhour's motion for a

preliminary injunction against Mr. Robertson, Defendants Kearney, Bramnick, and Selzer argued

to the court that Mr. Robertson had been Dr. Cartinhour's attorney, including his "general

counsel" in TCT LLC. In support of their contention, Defendants Kearney, Bramnick, and

Selzer presented the court with the March 13, 2006 letter of Maggio and Kattar addressing Mr.

Robertson as general counsel for TCT LLC. This was the same letter that had previously led to

the "Attestation and Certification of No Attorney-Client Relationship with Attorney Wade

Robertson" that Dr. Cartinhour executed before a notary public on April 7, 2006.

93.     The court granted Dr. Cartinhour's request for relief and all of the W.A.R. LLP

partnership's assets, as well as all of Mr. Robertson's personal assets, were enjoined and seized

by attachment.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 136 of 192

Case 1:10-00596   Doc 132-2   Filed 2/27/11   Entered 2/27/11 14:33:47   Desc Exhibit
to Withdraw Reference Part 2   Page 28 of 40   Page 59 of 71

94.      On March 26, 2010, Dr. Cartinhour admitted in courtroom testimony that the

February 22, 2010 affidavit purportedly from him and purportedly bearing his signature

contained false statements, he had never seen it before, and it was completely *fabricated*. The

fabricated affidavit was filed by Defendants Kearney and Bramnick in collusion with Defendant

Selzer. Thereafter, in separate appellate proceedings, when Mr. Robertson's counsel pointed the

courts to Dr. Cartinhour's testimony implicating his own attorneys in the fabrication of evidence,

Defendants Kearney and Bramnick tried to save themselves from professional discipline and

criminal charges by attacking Dr. Cartinhour's competence and credibility. Specifically,

Defendants Kearney and Bramnick argued that Dr. Cartinhour was old and confused, even

though they adduced no testimony to that effect during the hearing nor in two subsequent

depositions. Further discovery will likely reveal that Dr. Cartinhour was unaware that

Defendants Kearney and Bramnick were attacking his competence and credibility in order to

save themselves.

95.      On April 1, 2010, Defendants Selzer, Kearney, and Bramnick filed in court a

"Motion for Partial Summary Judgment" with an affidavit from Dr. Cartinhour attached. In their

"Statement Of Material Facts Not In Dispute," Defendants Selzer, Kearney and Bramnick wrote

as follows: "Robertson did not verbally advise Cartinhour to seek independent counsel when

entering into the Business Agreement, [W.A.R. LLP] Partnership Agreement and Amendments

thereto, nor was Cartinhour afforded this opportunity." Dr. Cartinhour's attached affidavit,

averred under penalty of perjury, stated as follows: "I was not represented by independent

counsel at the time to review the [W.A.R. LLP] Partnership Agreement[s]." These statements

were false, and Dr. Cartinhour's and his attorneys knew they were false when they filed them.

96.      On May 27, 2010, Dr. Cartinhour provided Supplemental Answers under penalty

- 27 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 137 of 192

Case 1:00-cv-00566   Doc 342   Filed 05/16/11   Entered 05/16/11 15:24:47   Desc Exhibit B to Withdraw Reference   Part 2   Page 60 of 71

of perjury to Mr. Robertson's First Set of Amended Interrogatories, but despite Dr. Cartinhour's

and Defendants Kearney and Bramnick's knowledge of Larry Ash's identity, contact information

and potential testimony, they willfully concealed him and instead submitted perjured answers.

According to the certificate of service, Defendant Bramnick mailed the fraudulent document

which omitted material information to Mr. Robertson's counsel of record, Edward Griffin, via

the United States Postal Service on May 27, 2010.

      97.     Also on May 27, 2010, Dr. Cartinhour separately provided Supplemental

Responses to Mr. Robertson's First Request for Production of Documents, but despite Dr.

Cartinhour's and Defendants Kearney and Bramnick's knowledge of Larry Ash's identity,

contact information and potential testimony, they willfully concealed him and instead submitted

false answers. According to the certificate of service, Defendant Bramnick mailed the fraudulent

document which omitted material information to Mr. Robertson's counsel of record, Edward

Griffin, via the United States Postal Service on May 27, 2010.

      98.     On June 17, 2010, Dr. Cartinhour responded to Mr. Robertson's Second Request

for Production of Documents, but despite Dr. Cartinhour's and Defendants Kearney and

Bramnick's knowledge of Larry Ash's identity, contact information and potential testimony, they

willfully concealed him. According the certificate of service, Defendant Bramnick mailed the

fraudulent document which omitted material information to Mr. Robertson's counsel of record,

Edward Griffin, via the United States Postal Service on June 17, 2010.

      99.     On or about June 25, 2010, Mr. Robertson's counsel of record, Edward Griffin,

through independent investigation, obtained the identity and contact information for Mr. Ash

from a third party.

      100.    On July 16, 2010, Mr. Robertson's counsel of record, Edward Griffin, deposed

- 28 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 138 of 192

Case 1:00-cv-01686   Doc 322   Filed 05/23/11   Entered 05/23/11 05:23:47   Desc Motion
to Withdraw Reference Part 2   Page 61 of 71

Mr. Ash. Mr. Ash testified that he had advised Dr. Cartinhour in 2004 not to enter into the

partnership with Mr. Robertson (i.e., W.A.R. LLP) and that he had counseled Dr. Cartinhour

regarding documents related to the then proposed partnership with Mr. Robertson.

Allegations pertaining to Respondeat Superior Liability of Certain Defendants

      101.    On August 18, 2010, one of Mr. Robertson's attorneys sent an e-mail to

Defendants Kearney, Selzer, Dattaro, Gurvitch, Obecny, Polott, Rabin, and Strickland, i.e., all

the shareholders in SGRO, setting forth the evidence that Mr. Kearney, Mr. Bramnick and Mr.

Selzer had obstructed justice. The SGRO partners were informed that these three attorneys had

fabricated an affidavit, suborned perjury, and produced false discovery responses in order to

conceal the identify of Mr. Ash. The partners were further informed that SGRO and the three

attorneys had a conflict of interest with Dr. Cartinhour insofar as Mr. Kearney and Mr. Bramnick

were attacking Dr. Cartinhour's competence and credibility in order to protect themselves from

professional liability. Finally, the partners were informed that they had a supervisory duty to

investigate the matter and "put a stop to any unlawful activity." The partners did not respond.

      102.    On August 18, 2010, one of Mr. Robertson's attorneys advised all the SGRO

partners by letter that Maryland Rule of Professional Conduct 5.1 rendered them culpable if they

ratified the misconduct of another attorney in their firm or if they failed to take remedial action.

None of the attorneys at SGRO took any remedial action.

      103.    On August 30, 2010, Mr. Kearney filed a document with the U.S. Court of

Appeals for the District of Columbia Circuit wherein he attacked Dr. Cartinhour's competence

and credibility again. (Mr. Kearney also misrepresented the nature of Dr. Cartinhour's prior

testimony in an attempt to conceal his own professional misconduct.) In other words, the SGRO

partners ratified Mr. Kearney's ongoing pattern of fraud and misconduct. To this day, none of

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 139 of 192

Case 1:10-00566   Doc 32-2   Filed 05/18/11   Entered 05/18/11 10:23:47   Desc Exhibit B to Withdraw Reference Part 2   Page 62 of 71

the SGRO partners has attempted to remediate the fraud perpetrated by Defendants Kearney,

Bramnick, and Selzer. Further discovery will likely reveal that SGRO and its attorneys have

been complicit in the broader racketeering activities of Dr. Cartinhour and his Serbian co-

conspirators, perhaps assisting Mr. Schibani in the international tax avoidance scheme.

Damages

104. At all times, Mr. Robertson relied in good faith on Dr. Cartinhour's acts and

representations. In particular, Mr. Robertson relied on the following:

- The three written agreements executed on September 16, 2004 and September 17, 2004
  by Dr. Cartinhour establishing the W.A.R. LLP partnership. (*supra*, ¶36);

- Dr. Cartinhour's bank check of September 17, 2004 for $1 million deposited into the
  partnership's banking accounts. (*supra*, ¶36);

- The written agreement executed on March 21, 2005 by Dr. Cartinhour amending certain
  terms of the W.A.R. LLP partnership agreements. (*supra*, ¶37);

- The April 5, 2005 wire transfer by Dr. Cartinhour of an additional $1 million into the
  W.A.R. LLP partnership's banking accounts. (*supra*, ¶39);

- The written agreement executed on December 6, 2005 by Dr. Cartinhour amending
  certain terms of the W.A.R. LLP partnership agreements. (*supra*, ¶41);

- The April 7, 2006 execution by Dr. Cartinhour of the formal closing document for TCT
  LLC. (*supra*, ¶66);

- The April 7, 2006 execution by Dr. Cartinhour of "Attestation and Certification of No
  Attorney-Client Relationship with Attorney Wade Robertson." (*supra*, ¶66);

- The April 7, 2006 execution by Dr. Cartinhour of the "Indemnification, Hold Harmless,
  and Agreement to Waive All Claims." (*supra*, ¶66);

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 140 of 192

Case 1:00-00466   Doc 32   Filed 05/15/11   Entered 05/15/11 05:25:47   Desc Exhibit D
to Withdraw Reference Part 2   Page 63 of 71

- The written partnership "vote" executed on April 9, 2006 by Dr. Cartinhour with Mr. Robertson, per the terms of the W.A.R. LLP's partnership's agreements. (*supra*, ¶67);

- The written agreement executed on April 10, 2006 by Dr. Cartinhour amending certain terms of the W.A.R. LLP partnership agreements. (*supra*, ¶67);

- Dr. Cartinhour's bank check on April 10, 2006 for $1.5 million deposited into the partnership's banking accounts. (*supra*, ¶67);

105. Because Dr. Cartinhour attached all of the W.A.R. LLP partnership assets as alleged above, the partnership's business has been destroyed, the partnership has been bankrupted, and Mr. Robertson has lost all of his investment in the W.A.R. LLP partnership.

106. As determined by the partnership agreements, the value of Mr. Robertson's investment in the failed partnership is $3,833,440.00.

107. Mr. Robertson and Mr. Gray had planned to work together on a payroll tax recovery business, but Mr. Gray excluded Mr. Robertson from the business in 2010 because of the false allegations against Mr. Robertson. Mr. Robertson has been damaged in an amount yet to be determined.

108. The call from the yet-unknown Maryland attorney damaged Mr. Robertson's personal reputation and his business goodwill by falsely alleging that Mr. Robertson was criminally liable for defrauding an elderly man of his life savings. Mr. Robertson has been damaged in an amount yet to be determined.

### Claims

*Count One: Violation of 18 U.S.C. § 1962(c)*

109. Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in paragraphs 1 through 108 above as if fully set forth herein.

110.    Plaintiff Wade Robertson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

111.    Defendants William C. Cartinhour, Jr., Vesna Kustudic, Tanja Milicevic (a.k.a. Tanja Popovic), Aleksandar Popovic, Albert Schibani, Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert S. Selzer are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

112.    The Cartinhour Serbian charity (*i.e.* the "William C. Cartinhour, Jr. Foundation.") is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in and the activities of which affected interstate commerce during the relevant times.

113.    Defendants William C. Cartinhour, Jr., Vesna Kustudic, Tanja Milicevic (a.k.a. Tanja Popovic), Aleksandar Popovic, and Albert Schibani were each employed by or associated with an enterprise, that is, the Cartinhour Serbian charity, through their positions as members of the board of directors or as officers or as both, and they did each conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) & (5) in violation of 18 U.S.C. § 1962(c). Defendants Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert S. Selzer were each employed by or associated with an enterprise, that is, the Cartinhour Serbian charity, through their positions as attorneys and they did each conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) & (5) in violation of 18 U.S.C. § 1962(c).

114.    The pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) consisted of the following:

(a.)    multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

- 32 -

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 142 of 192

Case 1:00044   Doc 32-2   Filed 05/16/11   Entered 05/16/11 15:49:47   Desc Exhibit D
to Withdraw Reference Part 2   Page 65 of 71

(b.)   multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(c.)   multiple instances of obstruction of justice in violation of 18 U.S.C. §
1503;

(d.)   multiple instances of retaliating against a witness in violation of 18 U.S.C.
§ 1513;

(e.)   bank fraud in violation of 18 U.S.C. § 1344;

(f.)   and extortion.

115.   As a direct and proximate cause of Defendants Cartinhour, Kustudic, Milicevic,

Popovic, Schibani, Obecny, Kearney, Bramnick, and Selzer's said acts in violation of 18 U.S.C.

§ 1962(c) as listed above, Plaintiff Wade Robertson has been injured in his business and/or

property within the meaning of 18 U.S.C. § 1964(c), with damages believed to be not less than

$3,833,440.00.

116.   Defendants James G. Dattaro, Neil Gurvitch, Andrew R. Polott, H. Mark Rabin,

Elyse L. Strickland are each and all liable respondeat superior for ratifying or otherwise

authorizing the acts alleged above of Defendants Carlton T. Obecny, Patrick J. Kearney, Michael

Bramnick, and Robert S. Selzer.

*Count Two: Violation of 18 U.S.C. § 1962(d) by*

*Conspiracy to Violate 18 U.S.C. § 1962(c)*

117.   Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

paragraphs 1 through 108 above as if fully set forth herein.

118.   Plaintiff Wade Robertson is a "person" within the meaning of 18 U.S.C. §§

1961(3) and 1964(c).

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 143 of 192

Case 1:10-cv-00566   Doc 132-2   Filed 03/7/31   Entered 03/7/31 14:33:47   Desc Exhibit A
to Withdraw Reference Part 2   Page 66 of 71

119.   Defendants William C. Cartinhour, Jr., Vesna Kustudic, Tanja Milicevic (a.k.a.
Tanja Popovic), Aleksandar Popovic, Albert Schibani, Carlton T. Obecny, Patrick J. Kearney,
Michael Bramnick, and Robert S. Selzer are each a "person" within the meaning of 18 U.S.C. §§
1961(3) and 1962(c).

120.   The Cartinhour Serbian charity (i.e. the "William C. Cartinhour, Jr. Foundation.")
is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was
engaged in and the activities of which affected interstate commerce during the relevant times.

121.   Defendants William C. Cartinhour, Jr., Vesna Kustudic, Tanja Milicevic (a.k.a.
Tanja Popovic), Aleksandar Popovic, and Albert Schibani were each employed by or associated
with an enterprise, that is, the Cartinhour Serbian charity, through their positions as members of
the board of directors or as officers or as both, and Defendants Carlton T. Obecny, Patrick J.
Kearney, Michael Bramnick, and Robert S. Selzer were each employed by or associated with the
same enterprise through their positions as attorneys. All said Defendants in this paragraph did
conspire within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(c), that is, said Defendants
did conspire to conduct or participate, directly or indirectly, in the conduct of such enterprise's
affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) &
(5) in violation of 18 U.S.C. § 1962(c).

122.   The pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) consisted
of the following:

(a.)   multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

(b.)   multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(c.)   multiple instances of obstruction of justice in violation of 18 U.S.C. §

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 144 of 192

Case 1-00566   Doc 32-2   Filed 05/23/11   Entered 05/23/11 05:23:47   Desc Exhibit D
to Withdraw Reference Part 2   Page 67 of 71

1503;

(d.)   multiple instances of retaliating against a witness in violation of 18 U.S.C.
§ 1513;

(e.)   bank fraud in violation of 18 U.S.C. § 1344;

(f.)   and extortion.

123.   By reason of violation of 18 U.S.C. § 1962(d) committed by Defendants
Cartinhour, Kustudic, Milicevic, Popovic, Schibani, Obecny, Kearney, Bramnick, and Selzer as
set forth herein, Plaintiff Wade Robertson has been injured in his business and/or property within
the meaning of 18 U.S.C. § 1964(c), with damages believed to be not less than $3,833,440.00.

124.   Defendants James G. Dattaro, Neil Gurvitch, Andrew R. Polott, H. Mark Rabin,
Elyse L. Strickland are each and all liable respondeat superior for ratifying or otherwise
authorizing the acts alleged above of Defendants Carlton T. Obecny, Patrick J. Kearney, Michael
Bramnick, and Robert S. Selzer.

*Count Three: Violation of 18 U.S.C. § 1962(c)*

125.   Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in
paragraphs 1 through 108 above as if fully set forth herein.

126.   Plaintiff Wade Robertson is a "person" within the meaning of 18 U.S.C. §§
1961(3) and 1964(c).

127.   Defendants Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert
S. Selzer are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

128.   The law firm of Selzer Gurvitch Rabin & Obecny, Chtd. is an "enterprise" within
the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in and the
activities of which affected interstate commerce during the relevant times.

- 35 -

Case 1:11-mc-00283-RCL  Document 1  Filed 05/17/11  Page 145 of 192

Case 1:10-00486  Doc 32-2  Filed 06/16/01  Entered 06/16/01 11:23:47  Desc Exhibit D
, to Withdraw Reference Part 2 Page 240  Page 68 of 71

129.    Defendants Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert

S. Selzer were each employed by or associated with an enterprise, that is, the law firm, through

their positions as shareholders or employees or as both, and they did each conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity within the meaning of 18 U.S.C. §§ 1961(1) & (5) in violation of 18 U.S.C. § 1962(c).

130.    The pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) consisted

of the following:

       (a.)    multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

       (b.)    multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

       (c.)    multiple instances of obstruction of justice in violation

              of 18 U.S.C. § 1503;

       (d.)    multiple instances of retaliating against a witness in violation

              of 18 U.S.C. § 1513.

131.    As a direct and proximate cause of Defendants Obecny, Kearney, Bramnick, and

Selzer's said acts in violation of 18 U.S.C. § 1962(c) as listed above, Plaintiff Wade Robertson

has been injured in his business and/or property within the meaning of 18 U.S.C. § 1964(c), with

damages believed to be not less than $3,833,440.00.

132.    Defendants James G. Dattaro, Neil Gurvitch, Andrew R. Polott, H. Mark Rabin,

Elyse L. Strickland are each and all liable respondeat superior for ratifying or otherwise

authorizing the acts alleged above of Defendants Carlton T. Obecny, Patrick J. Kearney, Michael

Bramnick, and Robert S. Selzer.

*Count Four: Violation of 18 U.S.C. § 1962(d) by*

*Conspiracy to Violate 18 U.S.C. § 1962(c)* ·

133.    Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in paragraphs 1 through 108 above as if fully set forth herein.

134.    Plaintiff Wade Robertson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

135.    Defendants Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert S. Selzer are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

136.    The law firm of Selzer Gurvitch Rabin & Obecny, Chtd.  is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in and the activities of which affected interstate commerce during the relevant times.

137.    Defendants Carlton T. Obecny, Patrick J. Kearney, Michael Bramnick, and Robert S. Selzer were each employed by or associated with an enterprise, that is, the law firm, through their positions as shareholders or employees or as both.  All said Defendants in this paragraph did conspire within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(c), that is, said Defendants did conspire to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) & (5) in violation of 18 U.S.C. §§ 1962(c).

138.    The pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) consisted of the following:

(a.)    multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

(b.)    multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(c.)    multiple instances of obstruction of justice in violation of 18 U.S.C. § 1503;

(d.)    multiple instances of retaliating against a witness in violation

- 37 -

of 18 U.S.C. § 1513.

139.    By reason of violation of 18 U.S.C. § 1962(d) committed by Defendants Obecny,

Kearney, Bramnick, and Selzer as set forth herein, Plaintiff Wade Robertson has been injured in

his business and/or property within the meaning of 18 U.S.C. § 1964(c), with damages believed

to be not less than $3,833,440.00.

140.    Defendants James G. Dattaro, Neil Gurvitch, Andrew R. Polott, H. Mark Rabin,

Elyse L. Strickland are each and all liable respondeat superior for ratifying or otherwise

authorizing the acts alleged above of Defendants Carlton T. Obecny, Patrick J. Kearney, Michael

Bramnick, and Robert S. Selzer.

### *Count Five: Fraud*

141.    Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

paragraphs 1 through 108 above as if fully set forth herein.

142.    All Defendants acted knowingly, intentionally, and with malice.

143.    All the Defendants are liable to the Plaintiff for damages resulting from their

conspiracy to defraud the Plaintiff.

### *Count Six: Defamation*

144.    Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

paragraphs 1 through 108 above as if fully set forth herein.

145.    All the Defendants are liable to the Plaintiff for damages resulting from their or

their co-conspirators' slander or libel of the Plaintiff.

### *Count Seven: Business Defamation*

146.    Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in

paragraphs 1 through 108 above as if fully set forth herein.

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 148 of 192

Case 10-00566   Doc 3242   Filed 06/28/11   Entered 06/28/11 05:23:47   Desc Exhibit D
to Withdraw Reference Part 240 Page 71 of 71

147.    All the Defendants are liable to the Plaintiff for damages resulting from their or their co-conspirators' defamation of the Plaintiff's business.

*Count Eight: Tortious Interference*

148.    Plaintiff Mr. Robertson repeats and realleges each of the allegations contained in paragraphs 1 through 108 above as if fully set forth herein.

149.    All the Defendants are liable to the Plaintiff for damages resulting from their tortious interference with the Plaintiff's contracts, business relations, and economic opportunities.

## Conclusion

WHEREFORE, the Plaintiff prays for a judgment in his favor and asks the Court to award compensatory damages, treble damages, punitive damages, costs, and attorney fees to the Plaintiff, as well as all other relief to which the Plaintiff is entitled, including declaratory and equitable relief.

Respectfully submitted,

Ty Clevenger
SDTX Bar No. 727184
P.O. Box 4806
Bryan, Texas 77805
Phone: (979) 985-5289
Fax:    (979) 530-9523

ATTORNEY FOR PLAINTIFF.

JURY TRIAL DEMANDED

Case 11...44  Doc 132-3  Filed 05/13/11  Entered 05/13/11 15:49:47  Des... .notion

# EXHIBIT E

District of Columbia live database                    Page 1 of 43

APPEAL, TYPE-M

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:09-cv-01642-ESH

ROBERTSON v. CARTINHOUR          Date Filed: 08/28/2009
Assigned to: Judge Ellen S. Huvelle   Jury Demand: Defendant
Case in other court: USCA, 10-07016   Nature of Suit: 190 Contract:
                     USCA, 10-07017   Other
                     10-07033         Jurisdiction: Diversity
Cause: 28:2201 Declaratory Judgement

**Plaintiff**

**WADE ROBERTSON**          represented by **Edward N. Griffin**
                                          GRIFFIN WHITAKER LLC
                                          7474 Greenway Center Drive
                                          Suite 550
                                          Greenbelt, MD 20770
                                          (301) 513-5080
                                          Fax: (888) 367-0383
                                          Email:
                                          egriffin@griffinwhitaker.com

                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE*
                                          *NOTICED*

                                          **Alain J. Ifrah**
                                          IFRAH, PLLC
                                          1627 I Street, NW
                                          Suite 1100
                                          Washington, DC 20006
                                          (202) 912-4819
                                          Email: jeff@ifrahlaw.com
                                          *TERMINATED: 01/13/2010*

District of Columbia live database                                    Page 2 of 43

**Jeffrey R. Hamlin**
IFRAH PLLC
1627 Eye Street, NW
Suite 1100
Washington, DC 20006
(571) 228-3740
Email: jrhamlin@aol.com
*TERMINATED: 01/13/2010*

V.

**Defendant**

**WILLIAM C.**                    represented by   **Patrick John Kearney**
**CARTINHOUR, Jr.**                               SELZER GURVITCH
                                                  RABIN & OBECNY,
                                                  CHARTERED
                                                  4416 East West Highway
                                                  Suite 400
                                                  Bethesda, MD 20814-4568
                                                  (301) 986-9600
                                                  Fax: (301) 986-1301
                                                  Email:
                                                  pkearney@sgrolaw.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE*
                                                  *NOTICED*

                                                  **Robert Stanley Selzer**
                                                  SELZER GURVITCH
                                                  RABIN & OBECNY,
                                                  CHARTERED
                                                  4416 East West Highway
                                                  Suite 400
                                                  Bethesda, MD 20814-4568
                                                  (301) 986-9600
                                                  Email: rselzer@sgrolaw.com
                                                  *LEAD ATTORNEY*

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 152 of 192

Case 1:10-00566   Doc 13-3   Filed 05/18/11   Entered 05/18/11 09:23:47   Desc Exhibit 5
to Withdraw Reference Part 3 of 20   Page 4 of 44

District of Columbia live database                                    Page 3 of 43

*ATTORNEY TO BE NOTICED*

**Michael J. Bramnick**
SELZER GURVITCH
RABIN & OBECNY,
CHARTERED
4416 East West Highway
Suite 400
Bethesda, MD 20814-4568
(601) 634-3117
Email:
mbramnick@sgrolaw.com
*ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**ROBERT ASH**                  represented by **Michael A. Hass**
                                OBER, KALER, GRIMES &
                                SHRIVER
                                1401 H Street, NW
                                Suite 500
                                Washington, DC 20005-3324
                                (202) 326-5070
                                Fax: (202) 326-5270
                                Email: mahass@ober.com
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**WILLIAM C.                    represented by **Patrick John Kearney**
CARTINHOUR, Jr.**               (See above for address)
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 153 of 192

Case 1:00046 Doc 323  Filed 05/18/01  Entered 05/18/01 05:49:47  Desc Exhibit F
to Withdraw Reference Part 3 of 20 Page 5 of 44

District of Columbia live database                    Page 4 of 43

|  | | **Robert Stanley Selzer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE*<br>*NOTICED* |
|  | | |
|  | | **Michael J. Bramnick**<br>(See above for address) |

**V.**

**Counter Defendant**

**WADE ROBERTSON**          represented by  **WADE ROBERTSON**
226 Elm Street, NW
Washington, DC 20001
(866) 845-6003
Fax: (888) 364-3330
PRO SE

                                   **Edward N. Griffin**
                                   (See above for address)
                                   *LEAD ATTORNEY*
                                   *ATTORNEY TO BE*
                                   *NOTICED*

**Counter Claimant**

**WADE ROBERTSON**          represented by  **Edward N. Griffin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

                                   **Alain J. Ifrah**
                                   (See above for address)
                                   *TERMINATED: 01/13/2010*

                                   **Jeffrey R. Hamlin**

District of Columbia live database                    Page 5 of 43

                                        (See above for address)
                                        *TERMINATED: 01/13/2010*

**V.**

**Counter Defendant**

**WILLIAM C.**          represented by   **Patrick John Kearney**
**CARTINHOUR, Jr.**                     (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE*
                                        *NOTICED*

                                        **Robert Stanley Selzer**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE*
                                        *NOTICED*

                                        **Michael J. Bramnick**
                                        (See above for address)

**Counter Claimant**

**WILLIAM C.**          represented by   **Patrick John Kearney**
**CARTINHOUR, Jr.**                     (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE*
                                        *NOTICED*

                                        **Robert Stanley Selzer**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE*
                                        *NOTICED*

                                        **Michael J. Bramnick**
                                        (See above for address)

District of Columbia live database                          Page 6 of 43

## V.

**Counter Defendant**

**WADE ROBERTSON**          represented by   **Edward N. Griffin**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE*
                                            *NOTICED*

**Counter Claimant**

**WADE ROBERTSON**          represented by   **Edward N. Griffin**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE*
                                            *NOTICED*

## V.

**Counter Defendant**

**WILLIAM C.               represented by   **Patrick John Kearney**
CARTINHOUR, Jr.**                           (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE*
                                            *NOTICED*

                                            **Robert Stanley Selzer**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE*
                                            *NOTICED*

                                            **Michael J. Bramnick**
                                            (See above for address)

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/28/2009 | 1 | COMPLAINT against WILLIAM C. CARTINHOUR, Jr |

District of Columbia live database                        Page 7 of 43

| | | |
|---|---|---|
| | | ( Filing fee $ 350, receipt number 4616023593) filed by WADE ROBERTSON. (Attachments: # 1 Civil Cover Sheet)(rdj) (Entered: 08/31/2009) |
| 08/28/2009 | | Summons (1) Issued as to WILLIAM C. CARTINHOUR, Jr. (rdj) (Entered: 08/31/2009) |
| 10/28/2009 | 2 | ANSWER to 1 Complaint with Jury Demand, COUNTERCLAIM against WADE ROBERTSON by WILLIAM C. CARTINHOUR, Jr. Related document: 1 Complaint filed by WADE ROBERTSON. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Kearney, Patrick) (Entered: 10/28/2009) |
| 10/30/2009 | 3 | ORDER Setting Initial Scheduling Conference. Initial Scheduling Conference is set for Friday, November 20, 2009, at 10:00 a.m. Signed by Judge Ellen S. Huvelle on October 30, 2009. (AG) Modified on 10/30/2009 (AG, ). (Entered: 10/30/2009) |
| 11/02/2009 | | Set/Reset Hearings: Initial Scheduling Conference set for 11/20/2009 at 10:00 AM in Courtroom 14 before Judge Ellen S. Huvelle. (tr) (Entered: 11/02/2009) |
| 11/06/2009 | 4 | MOTION to Continue scheduling conference, MOTION for Extension of Time for parties to confer and to respond to defendant's counter-claims by WADE ROBERTSON (jf, ) (Entered: 11/09/2009) |
| 11/06/2009 | 5 | MOTION for Order shortening time for a decision on motion to continue scheduling conference by WADE ROBERTSON. (jf, ) (Entered: 11/09/2009) |
| 11/09/2009 | 6 | Memorandum in opposition to re 5 MOTION for Order, 4 MOTION to Continue MOTION for Extension of Time to filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Kearney, Patrick) (Entered: 11/09/2009) |
| | | |

District of Columbia live database                    Page 8 of 43

| | | |
|---|---|---|
| 11/09/2009 | | MINUTE ORDER denying as MOOT 5 plaintiff's Motion for Order Shortening Time for defendant to respond. Defendant has filed a response to the pending motion. Signed by Judge Ellen S. Huvelle on November 9, 2009. (AG) (Entered: 11/09/2009) |
| 11/09/2009 | | MINUTE ORDER granting in part and denying in part 4 plaintiff's Motion to Continue Initial Scheduling Conference and granting in part and denying in part 4 plaintiff's Motion for Extension of Time to Answer Counterclaims. It is hereby ORDERED that the Initial Scheduling Conference set for November 20, 2009, is CONTINUED until December 15, 2009, at 9:30 a.m.; it is further ORDERED that the parties shall follow Local Civil Rule 16.3 with respect to all other related deadlines; and it is further ORDERED that plaintiff shall have until December 7, 2009, to file an answer to the defendant's counter-claims. Signed by Judge Ellen S. Huvelle on November 9, 2009. (AG, ) (Entered: 11/09/2009) |
| 11/18/2009 | 7 | NOTICE of Appearance by Michael J. Bramnick on behalf of WILLIAM C. CARTINHOUR, Jr (Bramnick, Michael) (Entered: 11/18/2009) |
| 11/20/2009 | 8 | NOTICE *of Filing of Certificate of Service* by WILLIAM C. CARTINHOUR, Jr re 7 Notice of Appearance (Attachments: # 1 Certificate of Service) (Bramnick, Michael) (Entered: 11/20/2009) |
| 11/25/2009 | 9 | NOTICE of Appearance by Edward N. Griffin on behalf of WADE ROBERTSON (Griffin, Edward) (Entered: 11/25/2009) |
| 11/30/2009 | | Set/Reset Hearings: Initial Scheduling Conference set for 12/15/2009 at 9:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (gdf) (Entered: 11/30/2009) |
| 12/07/2009 | 10 | MOTION for Leave to File *Motion to Dismiss* by WADE ROBERTSON (Attachments: # 1 Text of |

| | | |
|---|---|---|
| | | Proposed Order Proposed Order)(Griffin, Edward) (Entered: 12/07/2009) |
| 12/07/2009 | 11 | NOTICE *of filing under seal* by WADE ROBERTSON re 10 MOTION for Leave to File *Motion to Dismiss* (Griffin, Edward) (Entered: 12/07/2009) |
| 12/10/2009 | 12 | MOTION for Leave to File *Under Seal Motion for Summary Judgment* by WADE ROBERTSON (Attachments: # 1 Text of Proposed Order Proposed Order)(Griffin, Edward) (Entered: 12/10/2009) |
| 12/10/2009 | 13 | NOTICE *of Filing Under Seal Motion for Summary Judgment* by WADE ROBERTSON re 12 MOTION for Leave to File *Under Seal Motion for Summary Judgment* (Griffin, Edward) (Entered: 12/10/2009) |
| 12/10/2009 | 14 | NOTICE of Appearance by Alain J. Ifrah, Jeffrey R. Hamlin on behalf of WADE ROBERTSON (znmw, ) (Entered: 12/11/2009) |
| 12/11/2009 | 15 | ENTERED IN ERROR.....NOTICE *or Report and Joint Discovery Plan of the Parties Pursuant to Rule 26(f) and Local Rule 16.3* by WILLIAM C. CARTINHOUR, Jr, WADE ROBERTSON (Griffin, Edward) Modified on 12/14/2009 (jf, ). (Entered: 12/11/2009) |
| 12/11/2009 | 16 | NOTICE *or Report of Plaintiff's Statement of the Case and Statutory Support* by WADE ROBERTSON (Griffin, Edward) (Entered: 12/11/2009) |
| 12/11/2009 | 17 | MEET AND CONFER STATEMENT. (jf, ) (Entered: 12/14/2009) |
| 12/14/2009 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 15 NOTICE or Report and Joint Discovery Plan of the Parties Pursuant to Rule 26(f) and Local Rule 16.3 was entered in error and refiled by the Clerk's Office under the correct category. (See Docket Entry 17 to view document)(jf, ) (Entered: 12/14/2009) |
| 12/15/2009 | 18 | ORDER denying plaintiff's 10 Motion for Leave to File |

District of Columbia live database                Page 10 of 43

| | | |
|---|---|---|
| : | | and 12 Motion for Leave to File. Defendant shall file his oppositions to plaintiff's motion to dismiss and motion for summary judgment on or before December 24, 2009, and plaintiff shall file his replies on or before January 4, 2010. On or before January 4, 2010, Plaintiff shall file an affidavit with the Court that includes an accounting of the partnership funds and a description of the legal services performed by plaintiff on behalf of the partnership. A hearing is set for January 7, 2010, at 2:30 p.m. Plaintiff shall appear at the hearing. Signed by Judge Ellen S. Huvelle on December 15, 2009. (lcesh1) (Entered: 12/15/2009) |
| 12/15/2009 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 12/15/2009. Responses due by 12/24/2009, Reply due by 1/4/2010. Oral Argument set for 1/7/2010 at 2:30 pm in Courtroom 14 before Judge Ellen S. Huvelle. (Court Reporter Lisa Griffith) (gdf) (Entered: 12/17/2009) |
| 12/16/2009 | 19 | ORDER that plaintiff is enjoined from spending, giving away, concealing, or transferring any of the money given by defendant to the partnership. Signed by Judge Ellen S. Huvelle on 12/15/09. (See order for detail)(gdf) (Entered: 12/17/2009) |
| 12/17/2009 | | Remark: Order 19 mailed via certified mail to Wade Robertson, 226 Elm Street, NW, Washington, DC 20001 (gdf) (Entered: 12/17/2009) |
| 12/23/2009 | | MINUTE ORDER: As the Court has denied the plaintiffs' motions to file motions under seal, see docket entry 18 , it is hereby ORDERED that the Clerk of Court shall file both motions, attached to 11 Notice (Other) filed by WADE ROBERTSON, and 13 Notice (Other) filed by WADE ROBERTSON, on the public docket. The motions are deemed filed as of the date the notices were filed. Signed by Judge Ellen S. Huvelle on December 23, 2009. (AG) (Entered: 12/23/2009) |
| | | |

Case 1:10-cv-00596   Doc 3-23   Filed 08/13/10   Entered 08/13/10 19:33:47   Desc Exhibit B
to Withdraw Reference Part 3   Page 12 of 44
District of Columbia live database                                    Page 11 of 43

| 12/23/2009 | 27 | MOTION to Dismiss by WADE ROBERTSON (Attachments: # 1 Affidavit & Exh 1-2, 4-7, # 2 Exhibit 3, # 3 Text of Proposed Order)(jf) (Filed Nunc Pro Tunc to 12/07/09, pursuant to Minute Order 12/23/09). (Entered: 01/05/2010) |
| 12/23/2009 | 30 | MOTION for Summary Judgment by WADE ROBERTSON (Attachments: # 1 Affidavit, # 2 Exhibit 1-4, # 3 Text of Proposed Order) (Filed Nunc Pro Tunc to 12/10/09, pursuant to Minute Order 12/23/09).(jf, ) (Entered: 01/11/2010) |
| 12/24/2009 | 20 | RESPONSE *Oppositon to Plaintiff's Motion to Dismiss and Plaintiff's Motion for Summary Judgment (not linked because the documents have not been docketed, having previously been filed under seal )* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Affidavit Exhibit 1, # 2 Exhibit 1 A, # 3 Exhibit 1 B, # 4 Exhibit 1 C, # 5 Exhibit 1 D, # 6 Exhibit 1 E, # 7 Exhibit 1 F, # 8 Exhibit 1 G, # 9 Exhibit 1 H, # 10 Exhibit 1 I, # 11 Exhibit 1 J, # 12 Exhibit 1 K, # 13 Exhibit 1 L, # 14 Exhibit 1 M, # 15 Affidavit Ex 2, Rule 56(f), # 16 Text of Proposed Order)(Kearney, Patrick) (Entered: 12/24/2009) |
| 12/28/2009 | 21 | ENTERED IN ERROR.,.,.,MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* by WADE ROBERTSON (Attachments: # 1 Exhibit Exhibit 1)(Griffin, Edward) Modified on 12/29/2009 (jf, ). (Entered: 12/28/2009) |
| 12/28/2009 | 22 | Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* by WADE ROBERTSON (Attachments: # 1 Exhibit Letter from Counsel for Defendant dated December 24, 2009)(Griffin, Edward) (Entered: 12/28/2009) |
| 12/29/2009 | 23 | Unopposed MOTION to Continue *January 7, 2010 hearing until January 11, 2010* by WADE |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 161 of 192

Case 1:10-00586   Doc 3-3   Filed 05/17/11   Entered 05/17/11 19:34:47   Desc Exhibit B
to Withdraw Reference Part 3   Page 13 of 44

District of Columbia live database                    Page 12 of 43

| | | |
|---|---|---|
| | | ROBERTSON (Griffin, Edward) (Entered: 12/29/2009) |
| 12/29/2009 | | MINUTE ORDER granting 23 Plaintiff's Motion to Continue Hearing. Hearing presently set for January 7, 2010, is CONTINUED until Monday, January 11, 2010, at 10:30 a.m. in Courtroom 14. Signed by Judge Ellen S. Huvelle on December 29, 2009. (AG) (Entered: 12/29/2009) |
| 12/29/2009 | | Reset Hearings: Motion Hearing set for 1/11/2010 @ 10:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (tj) (Entered: 12/29/2009) |
| 12/29/2009 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* was entered in error as duplicate filing to 22 .(jf, ) (Entered: 12/29/2009) |
| 01/04/2010 | 24 | REPLY to opposition to 27 Motion to Dismiss filed by WADE ROBERTSON. (Griffin, Edward) Modified on 1/5/2010 to correct linkage (jf, ). (Entered: 01/04/2010) |
| 01/04/2010 | 25 | RESPONSE TO ORDER OF THE COURT re 18 Order on Motion for Leave to File,,,,, *Affidavit of Wade Robertson in Response to the Court's December 15, 2009, Order* filed by WADE ROBERTSON. (Attachments: # 1 Exhibit Robertson Affidavit Exhibit A - Accounting of Legal Services, # 2 Exhibit Robertson Affidavit Exhibit B - WAR LLP Accounting, # 3 Affidavit Affidavit of Accountant Timothy Gray, # 4 Affidavit Affidavit of Attorney John Watts in Support of Robertson Affidavit, # 5 Affidavit Affidavit of Attorney Ty Clevenger in Support of Robertson Affidavit) (Griffin, Edward) (Entered: 01/04/2010) |
| 01/04/2010 | 26 | REPLY to opposition to motion re 12 MOTION for Leave to File *Under Seal Motion for Summary Judgment* filed by WADE ROBERTSON. (Hamlin, Jeffrey) (Entered: 01/04/2010) |
| | | |

District of Columbia live database                                    Page 13 of 43

| 01/07/2010 | 28 | Memorandum in opposition to re 22 Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff*Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Kearney, Patrick) (Entered: 01/07/2010) |
|---|---|---|
| 01/08/2010 | 29 | REPLY re 25 Response to Order of the Court,, *(Reply to Plaintiff's Accounting"* filed by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 01/08/2010) |
| 01/11/2010 | 31 | ORDER denying 27 plaintiff's Motion to Dismiss, denying 30 plaintiff's Motion for Summary Judgment, and holding in abeyance 22 plaintiff's Motion for Reconsideration. A conference call is scheduled for January 14, 2010, at 12:00 p.m. Signed by Judge Ellen S. Huvelle on January 11, 2010. (lcesh1) (Entered: 01/11/2010) |
| 01/11/2010 |  | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Motion Hearing held on 1/11/2010 re 30 MOTION for Summary Judgment filed by WADE ROBERTSON, 27 MOTION to Dismiss filed by WADE ROBERTSON, 22 Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff*Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* filed by WADE ROBERTSON. (Court Reporter Lisa Griffith) (gdf) (Entered: 01/27/2010) |
| 01/12/2010 | 32 | Emergency MOTION for Preliminary Injunction *to enjoin Wade Robertson from contacting William* |

District of Columbia live database                    Page 14 of 43

| | | |
|---|---|---|
| | | *Cartinhour* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Affidavit of Patrick J. Kearney, # 3 Exhibit Email, # 4 Affidavit of Michael J. Bramnick, # 5 Affidavit of William C. Cartinhour, Jr., # 6 Exhibit, # 7 Exhibit Letter, # 8 Text of Proposed Order)(Bramnick, Michael) (Entered: 01/12/2010) |
| 01/12/2010 | | MINUTE ORDER. A conference call is scheduled for January 13, 2010, at 2:30 p.m. At that time, plaintiff shall indicate his position on defendant's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. Signed by Judge Ellen S. Huvelle on January 12, 2010. (lcesh1) (Entered: 01/12/2010) |
| 01/13/2010 | 33 | NOTICE OF WITHDRAWAL OF APPEARANCE as to WADE ROBERTSON. Attorney Jeffrey R. Hamlin and Alain J. Ifrah terminated. (Hamlin, Jeffrey) (Entered: 01/13/2010) |
| 01/13/2010 | 34 | NOTICE of Proposed Order *(Attached Proposed Consent Order on TRO and Preliminary Injunction)* by WILLIAM C. CARTINHOUR, Jr re 32 Emergency MOTION for Preliminary Injunction *to enjoin Wade Robertson from contacting William Cartinhour* (Attachments: # 1 Text of Proposed Order)(Kearney, Patrick) (Entered: 01/13/2010) |
| 01/13/2010 | | MINUTE ORDER. The hearing previously scheduled for January 14, 2010, at 11:00 a.m. is VACATED. A conference call will be held on January 14, 2010, at 12:00 p.m. Signed by Judge Ellen S. Huvelle on January 13, 2010. (lcesh1) (Entered: 01/13/2010) |
| 01/14/2010 | | MINUTE ORDER granting 32 Motion for Preliminary Injunction. Parties filed a proposed consent order 34 which the Court has signed and the Clerk will file. Signed by Judge Ellen S. Huvelle on January 14, 2010. (AG) (Entered: 01/14/2010) |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 164 of 192

Case 1:10-cv-00486   Doc 3-3   Filed 06/16/11   Entered 06/16/11 09:34:47   Desc Exhibit E
to Withdraw Reference Part 16   Page 16 of 44

District of Columbia live database

Page 15 of 43

| 01/14/2010 | 35 | ORDER REFERRING CASE to Magistrate Judge Alan Kay. Signed by Judge Ellen S. Huvelle on January 14, 2010. (lcesh1) (Entered: 01/14/2010) |
|---|---|---|
| 01/14/2010 | 36 | ORDER setting a Settlement Conference for 2/18/2010, at 10:00 AM in Chambers before Magistrate Judge Alan Kay. Signed by Magistrate Judge Alan Kay on 01/14/10. (DM) (Entered: 01/14/2010) |
| 01/14/2010 | 37 | CASE REFERRED to Magistrate Judge Alan Kay for settlement. (kb) (Entered: 01/19/2010) |
| 01/15/2010 | 38 | CONSENT ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION. Signed by Judge Ellen S. Huvelle on 1/14/10. (gdf) (Entered: 01/19/2010) |
| 01/22/2010 | 39 | NOTICE of Proposed Order *extending Plaintiff's time to Answer Defendant's Counterclaims Until After the Scheduled Mediation* by WADE ROBERTSON (Griffin, Edward) (Entered: 01/22/2010) |
| 01/25/2010 | 40 | ORDER, directing Plaintiff Wade A. Robinson's answer to Defendant's Counterclaim is due Monday, 2/22/2010. Signed by Judge Ellen S. Huvelle on 1/22/10. (gdf) (Entered: 01/26/2010) |
| 02/03/2010 | 41 | MOTION to Quash *Defendant's Subpoena* by WADE ROBERTSON (Attachments: # 1 Exhibit Attachment A, # 2 Exhibit Attachment B, # 3 Text of Proposed Order Proposed Order)(Griffin, Edward) (Entered: 02/03/2010) |
| 02/04/2010 | 42 | Memorandum in opposition to re 41 MOTION to Quash *Defendant's Subpoena* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit A to C, # 2 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/04/2010) |
| 02/04/2010 | | MINUTE ORDER denying 41 Plaintiff's Motion to Quash: plaintiff's motion is DENIED WITHOUT PREJUDICE due to his failure to provide any legal |

Case 1:00-cv-3253  Filed 02/78/01  Entered 02/78/01 05:24:47  Desc Exhibit E
to Withdraw Reference Part 17  Page 17 of 44
District of Columbia live database                          Page 16 of 43

|  |  |  |
|---|---|---|
|  |  | support for his motion, as required by Fed. R. Civ. P. 45 (3)(B). Signed by Judge Ellen S. Huvelle on February 4, 2010. (AG) (Entered: 02/04/2010) |
| 02/04/2010 | 43 | MOTION to Quash *Subpoena for personal records* by WADE ROBERTSON (Attachments: # 1 Exhibit Attachment A, # 2 Exhibit Attachment B, # 3 Text of Proposed Order Proposed Order)(Griffin, Edward) (Entered: 02/04/2010) |
| 02/04/2010 | 44 | Memorandum in opposition to re 43 MOTION to Quash *Subpoena for personal records* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit A to C, # 2 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/04/2010) |
| 02/05/2010 |  | MINUTE ORDER denying 43 Motion to Quash. Having considered plaintiff/counter-defendant's motion to quash and defendant/counter-plaintiff's opposition thereto, the Court denies the motion finding that the use of Federal Rule of Civil Procedure 45 to obtain discovery of the Charles Schwab & Co., Inc. records is proper, and Robertson's challenge to the scope of the request is unpersuasive since Cartinhour is entitled to track the funds he invested in the partnership. Signed by Judge Ellen S. Huvelle on February 5, 2010. (AG, ) (Entered: 02/05/2010) |
| 02/05/2010 | 45 | MOTION to Amend/Correct *Counter Complaint* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Exhibit Amended Counter Complaint, # 3 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/05/2010) |
| 02/12/2010 | 46 | NOTICE OF INTERLOCUTORY APPEAL as to Motion Hearing,, 31 Order on Motion to Dismiss, Order on Motion for Summary Judgment, Order on Motion for Reconsideration,,, by WADE ROBERTSON. Filing fee $ 455, receipt number 0090-2095512. Fee Status: Fee Paid. Parties have been notified. (Griffin, Edward) |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 166 of 192

. Case 1:00-5566   Doc 32-3   Filed 06/25/01   Entered 06/25/01 15:36:47   Desc Exhibit E
to Withdraw Reference Part 3   Page 18 of 44

District of Columbia live database                              Page 17 of 43

| | | (Entered: 02/12/2010) |
|---|---|---|
| 02/12/2010 | 47 | NOTICE OF INTERLOCUTORY APPEAL as to 19 Order, 31 Order on Motion to Dismiss, Order on Motion for Summary Judgment, Order on Motion for Reconsideration,,, by WADE ROBERTSON. Filing fee $ 455, receipt number 0090-2095525. Fee Status: Fee Paid. Parties have been notified. (Griffin, Edward) (Entered: 02/12/2010) |
| 02/16/2010 | | MINUTE ORDER postponing mediation date from 02/18/10 to 03/05/10, at 10:30 a.m., in chambers, room 2333, by request of counsel. Signed by Magistrate Judge Alan Kay on 02/16/10. (DM) (Entered: 02/16/2010) |
| 02/18/2010 | 48 | Memorandum in opposition to re 45 MOTION to Amend/Correct *Counter Complaint* filed by WADE ROBERTSON. (Griffin, Edward) (Entered: 02/18/2010) |
| 02/18/2010 | 49 | NOTICE OF INTERLOCUTORY APPEAL as to Order on Motion to Quash,, by WADE ROBERTSON. Filing fee $ 455, receipt number 0090-2100127. Fee Status: Fee Paid. Parties have been notified. (Griffin, Edward) (Entered: 02/18/2010) |
| 02/18/2010 | 50 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 46 Notice of Interlocutory Appeal,. (jf, ) (Entered: 02/18/2010) |
| 02/18/2010 | 51 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 47 Notice of Interlocutory Appeal,. (jf, ) (Entered: 02/18/2010) |
| 02/18/2010 | 52 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 49 Notice of Interlocutory Appeal. (jf, ) (Entered: 02/18/2010) |
| 02/22/2010 | | MINUTE ORDER granting 45 defendant's Motion to |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 167 of 192

Case 1:00656  Doc 323  Filed 08/7001  Entered 08/7001 95:2047  Doc Exhibit
District of Columbia live database  to Withdraw Reference Part 9  Page 19 of 44  Page 18 of 43

| | | |
|---|---|---|
| | | Amend/Correct his counter complaint. Rule 15 of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to a party seeking to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). There has been no showing that defendant's proposed amendments are futile, have been proposed in bad faith, or would unduly prejudice plaintiff. Discovery in this case just recently began, and this is defendant's first attempt to amend his counter complaint. There is therefore no basis to deny defendant's motion. Signed by Judge Ellen S. Huvelle on February 22, 2010. (lcesh1) (Entered: 02/22/2010) |
| 02/22/2010 | 53 | STRICKEN PURSUANT TO ORDER FILED 3/22/10.....ANSWER to 2 Answer to Complaint, Counterclaim,,, COUNTERCLAIM against WILLIAM C. CARTINHOUR, Jr by WADE ROBERTSON. Related document: 2 Answer to Complaint, Counterclaim,, filed by WILLIAM C. CARTINHOUR, Jr., 1 Complaint filed by WADE ROBERTSON.(Griffin, Edward) Modified on 3/23/2010 (zjf, ). (Entered: 02/22/2010) |
| 02/22/2010 | 54 | Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Exhibit A to C, # 3 Exhibit D to G, # 4 Text of Proposed Order for TRO)(Kearney, Patrick) (Entered: 02/22/2010) |
| 02/22/2010 | 55 | Emergency MOTION for Order *Holding Wade Robertson in Contempt* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/22/2010) |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 168 of 192

Case 1:10-cv-00586   Doc 32-3   Filed 2/27/31   Entered 2/27/31 11:34:47   Desc Exhibit
to Withdraw Reference   Page 20 of 44
District of Columbia live database                    Page 19 of 43

| 02/22/2010 | 56 | MOTION for Reconsideration re Order on Motion to Amend/Correct,,, by WADE ROBERTSON (Griffin, Edward) (Entered: 02/22/2010) |
|---|---|---|
| 02/22/2010 | 59 | MOTION for Preliminary Injunction by WILLIAM C. CARTINHOUR, Jr. (See Docket Entry 54 to view document. Counsel is reminded to select all parts of the motion in future). (znmw, ) (Entered: 02/23/2010) |
| 02/22/2010 | 60 | MOTION to Vacate (in the alternative) Order on Motion to Amend/Correct, by WADE ROBERTSON. (See Docket Entry 56 to view document. Counsel is reminded to select all parts of the motion in future). (znmw, ) (Entered: 02/23/2010) |
| 02/22/2010 | 61 | AMENDED COUNTERCLAIM against WADE ROBERTSON filed by WILLIAM C. CARTINHOUR, Jr.(znmw, ) (Entered: 02/23/2010) |
| 02/23/2010 | 57 | MOTION for Recusal by WADE ROBERTSON (Attachments: # 1 Affidavit of Wade Robertson In Support of Motion for Recusal)(Griffin, Edward) (Entered: 02/23/2010) |
| 02/23/2010 | | MINUTE ORDER. A hearing is scheduled for Monday, March 1, 2010, at 10:30 a.m. Both parties, in addition to their counsel, shall attend the hearing. The Court will hear evidence and argument on all pending motions. Written oppositions to pending motions shall be filed on or before February 26, 2010, at 12:00 p.m. Signed by Judge Ellen S. Huvelle on February 23, 2010. (lcesh1) (Entered: 02/23/2010) |
| 02/23/2010 | 58 | Memorandum in opposition to re 56 MOTION for Reconsideration re Order on Motion to Amend/Correct,,, filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/23/2010) |
| 02/23/2010 | | Set/Reset Deadlines/Hearings: Responses due by 2/26/2010. Motion Hearing set for 3/1/2010 10:30 AM |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 169 of 192

Case 1:10-cv-00546  Doc 323  Filed 02/75/01  Entered 02/75/01 15:23:47  Desc Exhibit
to Withdraw Reference Page 3 of Page 21 of 44

District of Columbia live database                              Page 20 of 43

| | | in Courtroom 14 before Judge Ellen S. Huvelle. (gdf) (Entered: 02/23/2010) |
|---|---|---|
| 02/25/2010 | | USCA Case Number 10-7015 for <u>46</u> Notice of Interlocutory Appeal filed by WADE ROBERTSON. (dr) (Entered: 02/25/2010) |
| 02/25/2010 | | USCA Case Number 10-7016 for <u>47</u> Notice of Interlocutory Appeal, filed by WADE ROBERTSON. (dr) (Entered: 02/25/2010) |
| 02/25/2010 | | USCA Case Number 10-7017 for <u>49</u> Notice of Interlocutory Appeal filed by WADE ROBERTSON. (dr) (Entered: 02/25/2010) |
| 02/25/2010 | <u>62</u> | ENTERED IN ERROR.....Emergency MOTION to Strike Order, Set/Reset Deadlines/Hearings, <u>19</u> Order by WADE ROBERTSON (Griffin, Edward) Modified on 2/26/2010 (zjf, ). (Entered: 02/25/2010) |
| 02/25/2010 | <u>63</u> | Emergency MOTION to Strike Order, Set/Reset Deadlines/Hearings, <u>19</u> Order by WADE ROBERTSON (Griffin, Edward) (Entered: 02/25/2010) |
| 02/26/2010 | <u>64</u> | MEMORANDUM re 59 MOTION for Preliminary Injunction filed by WILLIAM C. CARTINHOUR, Jr., <u>54</u> Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by WILLIAM C. CARTINHOUR, Jr. by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 02/26/2010) |
| 02/26/2010 | <u>65</u> | Memorandum in opposition to re <u>57</u> MOTION for Recusal filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # <u>1</u> Exhibit Transcript of 1-11-10 hearing, # <u>2</u> Text of Proposed Order)(Kearney, Patrick) (Entered: 02/26/2010) |
| 02/26/2010 | <u>66</u> | Memorandum in opposition to re <u>63</u> Emergency MOTION to Strike Order, Set/Reset Deadlines/Hearings, <u>19</u> Order, <u>62</u> Emergency MOTION to Strike Order, Set/Reset Deadlines/Hearings, <u>19</u> Order |

Case 1:09-cv-00566 Doc #203 Filed 05/17/11 Entered 05/17/11 13:45:47 Desc Exhibit 5 to Withdraw Reference Page 3 of 24   Page 22 of 44   Page 21 of 43

District of Columbia live database

| | | |
|---|---|---|
| | | filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Text of Proposed Order)(Kearney, Patrick) (Entered: 02/26/2010) |
| 02/26/2010 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 62 Emergency MOTION to Strike Order, Set/Reset Deadlines/Hearings, 19 Order was entered in error as a duplicate to 63 .(jf, ) (Entered: 02/26/2010) |
| 02/26/2010 | 67 | Memorandum in opposition to re 55 Emergency MOTION for Order *Holding Wade Robertson in Contempt* filed by WADE ROBERTSON. (Attachments: # 1 Supplement Objections to Evidence in Support of Defendant's Motion for Contempt)(Griffin, Edward) (Entered: 02/26/2010) |
| 02/26/2010 | 68 | Memorandum in opposition to re 59 MOTION for Preliminary Injunction, 54 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by WADE ROBERTSON. (Attachments: # 1 Supplement Objections to Evidence in Support of Defendant's Motion)(Griffin, Edward) (Entered: 02/26/2010) |
| 02/26/2010 | | MINUTE ORDER. Before the Court are Plaintiffs Motion to Reconsider or in the Alternative Vacate This Courts Order of February 22, 2010 [56, 60], Plaintiffs Motion to Recuse Pursuant [to] 28 U.S.C. § 144 57 , and Plaintiffs Emergency Motion to Strike or Vacate & to Stay All Further Proceedings 63 . After consideration of these motions, the oppositions thereto, and the relevant case law, the Court finds that the filing of plaintiffs appeals does not divest the Court of jurisdiction over the case generally or the matters raised in those appeals. Plaintiffs appeals were taken on non-appealable orders, and plaintiff did not seek certification from this Court to file interlocutory appeals. The Court also finds that the affidavit filed by plaintiff in support of his motion for |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 171 of 192

Case 1:10-cv-00596   Doc 3-23   Filed 2/87/11   Entered 2/87/11 11:83:47   Desc Exhibit G
to Withdraw Reference Part 3 of Page 23 of 44

District of Columbia live database                                    Page 22 of 43

| | | recusal is legally insufficient under 28 U.S.C. § 144 and therefore does not require recusal of the undersigned. A memorandum opinion will follow that will more fully set forth the Courts reasons for these rulings. The Court will proceed with the hearing scheduled for March 1, 2010, and the parties are required to attend that proceeding. Signed by Judge Ellen S. Huvelle on February 26, 2010.(lcesh1) (Entered: 02/26/2010) |
|---|---|---|
| 03/01/2010 | 69 | ORDER denying as moot 54 defendant/counter-plaintiff's Motion for TRO; denying 55 defendant counter-plaintiff's Motion for Contempt Order; denying as moot defendant/counter-plaintiff's 59 Motion for Preliminary Injunction; and denying as moot 22 plaintiff/counter-defendant's Motion for Reconsideration. Signed by Judge Ellen S. Huvelle on March 1, 2010. (lcesh1) (Entered: 03/01/2010) |
| 03/01/2010 | 70 | CONSENT PRELIMINARY INJUNCTION, that Wade A. Robinson shall dismiss or withdraw the pending Interlocutory appeal relating to the motion to quash now pending in the United States Court of Appeal for the District of Columbia Circuit, Preliminary Injunctin Hearing set for 3/22/2010 01:45 PM in Courtroom 14 before Judge Ellen S. Huvelle.. Signed by Judge Ellen S. Huvelle on 3/1/10. (gdf, ) (Main Document 70 replaced on 3/5/2010) (gdf, ). (Entered: 03/02/2010) |
| 03/01/2010 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Motion Hearing held on 3/1/2010 re 22 Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff*Amended MOTION for Reconsideration re 21 MOTION for Reconsideration *of thr Court's December 15 Order Enjoining Plaintiff* filed by WADE ROBERTSON, 55 Emergency MOTION for Order *Holding Wade Robertson in Contempt* filed by WILLIAM C. CARTINHOUR, Jr., 54 Emergency MOTION for Temporary Restraining Order *and* |

District of Columbia live database                           Page 23 of 43

| | | |
|---|---|---|
| | | *Preliminary Injunction* filed by WILLIAM C. CARTINHOUR, Jr.. (Court Reporter Crystal Pilgrim.) (gdf, ) (Entered: 03/09/2010) |
| 03/04/2010 | 71 | Consent MOTION for Reconsideration re 70 Order, Set Hearings,, *to redact confidential information* by WADE ROBERTSON (Attachments: # 1 Exhibit Proposed Redacted Order)(Griffin, Edward) (Entered: 03/04/2010) |
| 03/05/2010 | | MINUTE ORDER granting 71 plaintiff's Motion for Reconsideration. A redacted version of the parties' consent preliminary injunction will replace 70 the order currently posted. Signed by Judge Ellen S. Huvelle on March 5, 2010. (lcesh1) (Entered: 03/05/2010) |
| 03/05/2010 | 72 | MEMORANDUM AND OPINION. Signed by Judge Ellen S. Huvelle on March 5, 2010. (lcesh1) (Entered: 03/05/2010) |
| 03/05/2010 | 73 | Supplemental Record on Appeal transmitted to US Court of Appeals re 70 CONSENT PRELIMINARY INJUNCTION, that Wade A. Robinson shall dismiss or withdraw the pending Interlocatory appeal relating to the motion to quash now pending in the United States Court of Appeal for the District of Columbia Circuit. Preliminary Injunction Hearing set for 3/22/2010 01:45 PM in Courtroom 14 before Judge Ellen S. Huvelle.. Signed by Judge Ellen S. Huvelle on 3/1/10, 47 Notice of Interlocutory Appeal, 46 Notice of Interlocutory Appeal, 49 Notice of Interlocutory Appeal ; (jf, ) (Entered: 03/05/2010) |
| 03/09/2010 | 74 | STRICKEN PURSUANT TO ORDER FILED ON 3/22/10.....ANSWER to 61 Counterclaim *and,* COUNTERCLAIM against WILLIAM C. CARTINHOUR, Jr by WADE ROBERTSON. Related document: 61 Counterclaim filed by WILLIAM C. CARTINHOUR, Jr..(Griffin, Edward) Modified on 3/23/2010 (zjf, ). (Entered: 03/09/2010) |
| | | |

Case 1:10-cv-00485   Doc 32-3   Filed 05/17/11   Entered 05/17/11 05:24:47   Desc Exhibit
to Withdraw Reference   Page 5 of Page 25 of 44
District of Columbia live database                         Page 24 of 43

| 03/09/2010 |    | DEPOSIT of Funds by Griffin Whitaker, LLC into the Registry of the Court in the amount of $ 20,713.75, Receipt Number 4616028096 re <u>70</u> CONSENT PRELIMINARY INJUNCTION (jf, ) . (Entered: 03/10/2010) |
| 03/09/2010 |    | DEPOSIT of Funds by Sutherland Asbill & Brennan LLP into the Registry of the Court in the amount of $ 5,000.00, Receipt Number 4616028129 re <u>70</u> CONSENT PRELIMINARY INJUNCTION (jf, ) (Entered: 03/10/2010) |
| 03/15/2010 | <u>75</u> | MOTION for Extension of Time to File Response/Reply *to Counterclaim* by WILLIAM C. CARTINHOUR, Jr (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(Bramnick, Michael) (Entered: 03/15/2010) |
| 03/16/2010 | <u>76</u> | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 1-11-10; Page Numbers: 53. Date of Issuance:3-16-10. Court Reporter/Transcriber Lisa Griffith, Telephone number (202)354-3247, Court Reporter Email Address : Lisa_Griffith@dcd.uscourts.gov.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 4/6/2010. Redacted Transcript |

| | | |
|---|---|---|
| | | Deadline set for 4/16/2010. Release of Transcript Restriction set for 6/14/2010.(Griffith, Lisa) (Entered: 03/16/2010) |
| 03/16/2010 | 77 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 12-15-09; Page Numbers: 16. Date of Issuance:3-16-10. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354-3247, Court Reporter Email Address : Lisa_Griffith@dcd.uscourts.gov.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 4/6/2010. Redacted Transcript Deadline set for 4/16/2010. Release of Transcript Restriction set for 6/14/2010.(Griffith, Lisa) (Entered: 03/16/2010) |
| 03/16/2010 | | MINUTE ORDER. The Court will conduct a conference call on March 19, 2010, at 11:30 a.m. Counsel for both parties shall participate in the call. Signed by Judge Ellen S. Huvelle on March 16, 2010. (lcesh1) (Entered: 03/16/2010) |
| 03/16/2010 | | MINUTE ORDER. The Court's Minute Order scheduling a conference call on March 19, 2010, is vacated. The conference call is rescheduled for March 17, 2010, at 11:00 a.m. Counsel for both parties shall |

Case 1:10-00006   Doc 13-3   Filed 05/17/10   Entered 05/17/10 11:23:47   Desc Exhibit
to Withdraw Reference   Page 8 of 24   Page 27 of 44       Page 26 of 43
District of Columbia live database

| | | |
|---|---|---|
| | | participate in the call. Signed by Judge Ellen S. Huvelle on March 16, 2010. (lcesh1) (Entered: 03/16/2010) |
| 03/16/2010 | 78 | ORDER of USCA (certified copy) as to 49 Notice of Interlocutory Appeal filed by WADE ROBERTSON ; ORDERED that the motion for voluntary dismissal be granted, and this case is hereby dismissed; FURTHER ORDERED that the consolidation of this case with No. 10-7015 be terminated. USCA Case Number 10-7017. (mmh, ) (Entered: 03/17/2010) |
| 03/17/2010 | | Set/Reset Hearings: Telephone Conference Call set for 3/17/2010 at 11:00 AM in Chambers before Judge Ellen S. Huvelle. (tr) (Entered: 03/17/2010) |
| 03/17/2010 | | Set/Reset Deadlines: Defendant's Reply due by 7/29/2010. (tr) (Entered: 03/17/2010) |
| 03/17/2010 | | MINUTE ORDER. Based on the conference call held on this date, it appears that the parties have not reached a settlement agreement. As such, the Court will proceed with the previously scheduled evidentiary hearing on defendant/counter-plaintiff's motion for a preliminary injunction on March 22, 2010, at 2:00 p.m. Both parties shall attend the hearing and will be permitted to present evidence. Because defendant/counter-plaintiff included a jury demand for claims related to his request for a preliminary injunction, the Court will not collapse the hearing on the preliminary injunction into a hearing on the merits of defendant/counter-plaintiff's claims. Further, defendant/counter-plaintiff's motion to enlarge time to respond to plaintiff/counter-defendant's counterclaim 75 is granted as consented. Signed by Judge Ellen S. Huvelle on March 17, 2010. (lcesh1) (Entered: 03/17/2010) |
| 03/17/2010 | | Set/Reset Hearings: Evidentiary Hearing set for 3/22/2010 at 2:00 PM in Courtroom 14 before Judge Ellen S. Huvelle. (tr) (Entered: 03/17/2010) |
| | | |

Case 1:10-cv-00586   Doc 323   Filed 05/17/01   Entered 05/17/01 11:23:47   Desc Exhibit
to Withdraw Reference Part 8   Page 28 of 44

District of Columbia live database                              Page 27 of 43

| 03/17/2010 | 79 | ORDER REFERRING CASE to Magistrate Judge Kay. A settlement conference with Judge Kay is scheduled for March 19, 2010, at 2:00 p.m. Signed by Judge Ellen S. Huvelle on March 17, 2010. (lcesh1) (Entered: 03/17/2010) |
| --- | --- | --- |
| 03/17/2010 | 80 | NOTICE of Appearance by Robert Stanley Selzer on behalf of WILLIAM C. CARTINHOUR, Jr (Selzer, Robert) (Entered: 03/17/2010) |
| 03/17/2010 | 81 | CASE REFERRED to Magistrate Judge Alan Kay for Settlement discussions to take place on Friday March 19, 2010, at 2:00pm. (ls, ) (Main Document 81 replaced on 3/19/2010) (znmw, ). (Entered: 03/18/2010) |
| 03/21/2010 | 82 | MOTION to Stay re Order on Motion for Extension of Time to File Response/Reply,,, 64 Memorandum, by WADE ROBERTSON (Attachments: # 1 Affidavit of Accountant Jacob Benzaquen Identifying Independent Income)(Griffin, Edward) (Entered: 03/21/2010) |
| 03/21/2010 | 83 | RESPONSE TO ORDER OF THE COURT re Order on Motion for Extension of Time to File Response/Reply,,, *and objections to consolidate merits hearing* filed by WADE ROBERTSON. (Attachments: # 1 Affidavit) (Griffin, Edward) (Entered: 03/21/2010) |
| 03/22/2010 | 84 | MOTION to Strike 53 Answer to Counterclaim,,, 74 Answer to Counterclaim, by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Kearney, Patrick) (Entered: 03/22/2010) |
| 03/22/2010 | 85 | Memorandum in opposition to re 82 MOTION to Stay re Order on Motion for Extension of Time to File Response/Reply,,, 64 Memorandum, filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Text of Proposed Order)(Kearney, Patrick) (Entered: 03/22/2010) |
| 03/22/2010 | 86 | ORDER granting 84 defendant/counter-plaintiff's |

District of Columbia live database                    Page 28 of 43

|  |  |  |
|---|---|---|
|  |  | Motion to Strike plaintiff/counter-defendant's counterclaim as unopposed, extending the consent preliminary injunction 70 , and continuing the hearing on defendant/counter-plaintiff's motion for a preliminary injunction until March 26, 2010, at 9:30 a.m. Signed by Judge Ellen S. Huvelle on March 22, 2010. (lcesh1) (Entered: 03/22/2010) |
| 03/22/2010 | 87 | ORDER to stop payment on checks to third parties Apley, Inc. and Diba Group, Inc. Signed by Judge Ellen S. Huvelle on March 22, 2010. (lcesh1) (Entered: 03/22/2010) |
| 03/22/2010 |  | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Preliminary Injunction held on 3/22/2010. Preliminary Injunctin Hearing continued to 3/26/2010 at 9:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (Court Reporter Catalina Kerr) (gdf) (Entered: 03/23/2010) |
| 03/24/2010 |  | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 3/19/2010. (DM) (Entered: 03/24/2010) |
| 03/26/2010 |  | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Preliminary Injunction held on 3/26/2010. Motion for Prliminary Injunction 54 granted, reasons stated on the record. (Court Reporter Lisa Hand) (gdf) (Entered: 03/26/2010) |
| 03/26/2010 | 88 | COURT EXHIBIT (1). "Let this be filed 3/26/10" Judge Huvelle(gdf) (Entered: 03/26/2010) |
| 03/26/2010 | 89 | COURT EXHIBIT (2). "Let this be filed 3/26/10" Judge Huvelle (gdf) (Entered: 03/26/2010) |
| 03/26/2010 | 90 | ORDER PRELIMINARY INJUNCTION, granting 54 motion for preliminary Injunction. (See Order for detail) Signed by Judge Ellen S. Huvelle on 3/26/10. (gdf) (Entered: 03/26/2010) |
|  |  |  |

District of Columbia live database                    Page 29 of 43

| 03/26/2010 | | MINUTE ORDER. Based on the hearing held on this date and for the reasons stated on the record, the Court denies plaintiff/counter-defendant's motion to stay the case pending his criminal investigation 82 . For the reasons stated on the record, the Court also denies plaintiff/counter-defendant's oral motion to stay the preliminary injunction entered on this date pending his interlocutory appeal of that injunction. Signed by Judge Ellen S. Huvelle on March 26, 2010. (lcesh1) (Entered: 03/26/2010) |
| --- | --- | --- |
| 03/26/2010 | | MINUTE ORDER re 90 Order granting Preliminary Injunction: It is hereby ORDERED that the Order granting the Preliminary Injunction, filed on March 26, 2010, is AMENDED to provide that the word "forthwith" in the first paragraph on the second page means "by no later than Friday, April 2." Signed by Judge Ellen S. Huvelle on March 26, 2010. (AG) (Entered: 03/26/2010) |
| 03/28/2010 | 91 | NOTICE OF APPEAL as to Order, Preliminary Injunction, Order on Motion to Stay, 90 Order by WADE ROBERTSON. Filing fee $ 455, receipt number 0090-2136058. Fee Status: Fee Paid. Parties have been notified. (Griffin, Edward) (Entered: 03/28/2010) |
| 03/29/2010 | 92 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 91 Notice of Appeal. (jf, ) (Entered: 03/29/2010) |
| 03/29/2010 | | MINUTE ORDER. Based on the Courts research, it believes that it retains jurisdiction to proceed with this case pending appeal of the preliminary injunction entered on March 26, 2010. "The filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" US v. DeFries, 129 F.3d 1293, |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 179 of 192

Case 1:08-cv-01446   Doc 32-3   Filed 02/13/11   Entered 02/13/11 10:23:47   Desc Exhibit F
to Withdraw Reference Part 3   Page 31 of 44

District of Columbia live database                          Page 30 of 43

| | | |
|---|---|---|
| | | 1302-03 (D.C. Cir. 1997) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam)). "When an appeal is taken from an interlocutory order, such as the grant or denial of an injunction, however, the district court retains jurisdiction to act with respect to matters not related to the issues involved in the appeal or when a district court's action would aid in the appeal." Barnstead Broad. Corp. v. Offshore Broad. Corp., 869 F. Supp. 35 (D.D.C. 1994) (deciding motion to dismiss after granting preliminary injunction); see also Decatur Liquors, Inc. v. Dist. of Columbia, No. 04-1971, 2005 WL 607881, at *3 (D.D.C. Mar. 16, 2005) (considering motion to dismiss during appeal of preliminary injunction); 11A Wright and Miller, Federal Practice and Procedure § 2962 (2d ed. 1995) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending."). Accordingly, the Court orders the parties to submit a joint report pursuant to Local Civil Rule 16.3, including a proposed discovery schedule, on or before April 5, 2010. Signed by Judge Ellen S. Huvelle on March 29, 2010. (lcesh1) Modified on 3/30/2010 (jf, ). (Entered: 03/29/2010) |
| 03/29/2010 | 93 | MOTION for Sanctions *against Wade Robertson's Counsel* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support)(Bramnick, Michael) (Entered: 03/29/2010) |
| 03/30/2010 | 94 | Supplemental Record on Appeal transmitted to US Court of Appeals re 91 Notice of Appeal ; (jf, ) (Entered: 03/30/2010) |
| 03/30/2010 | | USCA Case Number 10-7033 for 91 Notice of Appeal filed by WADE ROBERTSON. (jf, ) (Entered: 03/30/2010) |
| 03/31/2010 | 95 | NOTICE *of ordered transcripts* by WADE |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 180 of 192

Case 1:10-cv-00566   Doc 3263   Filed 05/18/01   Entered 05/18/01 05:39:47   Desc Exhibit E
to Withdraw-Reference Page 12 of Page 32 of 44

District of Columbia live database                           Page 31 of 43

| | | ROBERTSON (Griffin, Edward) (Entered: 03/31/2010) |
|---|---|---|
| 03/31/2010 | 96 | NOTICE *of Ordered transcript* by WADE ROBERTSON (Griffin, Edward) (Entered: 03/31/2010) |
| 03/31/2010 | | Set/Reset Deadlines: Joint report pursuant to Rule 16.3, including proposed discovery due by 4/5/2010. (gdf) (Entered: 03/31/2010) |
| 04/01/2010 | 97 | MOTION for Partial Summary Judgment by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Statement of Facts, # 20 Text of Proposed Order) (Bramnick, Michael) (Entered: 04/01/2010) |
| 04/02/2010 | | DEPOSIT of Funds into the Registry of the Court in the amount of $ $600,074.92, Receipt Number 4616028694. (jf, ) (Entered: 04/02/2010) |
| 04/02/2010 | | DEPOSIT of Funds into the Registry of the Court in the amount of $ 4,611.66, Receipt Number 4616028741. (dr) (Entered: 04/07/2010) |
| 04/05/2010 | 98 | ENTERED IN ERROR.....Proposed MOTION for Discovery *Schedule* by WILLIAM C. CARTINHOUR, Jr (Bramnick, Michael) Modified on 4/6/2010 (zjf, ). (Entered: 04/05/2010) |
| 04/05/2010 | 99 | ENTERED IN ERROR.....RESPONSE TO ORDER OF THE COURT re Order,,,,,, *and Plaintiff's Proposed Discovery Plan* filed by WADE ROBERTSON. (Griffin, Edward) Modified on 4/6/2010 (zjf, ). (Entered: 04/05/2010) |
| 04/05/2010 | 100 | MEET AND CONFER STATEMENT by WILLIAM C. CARTINHOUR, Jr (jf, ) (Entered: 04/06/2010) |
| 04/05/2010 | 101 | MEET AND CONFER STATEMENT by WADE |

Case 1:00-00566   Doc 3263   Filed 12/27/10   Entered 12/27/10 10:23:47   Desc Exhibit E
to Withdraw Reference Part 13   Page 33 of 44

| | | |
|---|---|---|
| | | ROBERTSON. (jf, ) (Entered: 04/06/2010) |
| 04/06/2010 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re <u>98</u> Proposed MOTION for Discovery *Schedule* was entered in error and refiled by the Clerk's Office under the correct category. (See Docket Entry <u>100</u> to view document)(jf, ) (Entered: 04/06/2010) |
| 04/06/2010 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re <u>99</u> Response to Order of the Court was entered in error and refiled by the Clerk's Office under the correct category. (See Docket Entry <u>101</u> to view document)(jf, ) (Entered: 04/06/2010) |
| 04/07/2010 | <u>102</u> | ORDER setting status conference for April 15, 2010, at 10:30 a.m. Signed by Judge Ellen S. Huvelle on April 7, 2010. (lcesh1) (Entered: 04/07/2010) |
| 04/07/2010 | | Set/Reset Hearings: Status Conference set for 4/15/2010 at 10:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (gdf) (Entered: 04/07/2010) |
| 04/07/2010 | <u>103</u> | Memorandum in opposition to re <u>93</u> MOTION for Sanctions *against Wade Robertson's Counsel* filed by WADE ROBERTSON. (Griffin, Edward) (Entered: 04/07/2010) |
| 04/07/2010 | <u>104</u> | Emergency MOTION for Extension of Time to *file opposition to Defendant's motion for summary judgment and reschedule the status conference set for April 15, 2010* by WADE ROBERTSON (Attachments: # <u>1</u> Exhibit email between counsel dated April 7, 2010) (Griffin, Edward) (Entered: 04/07/2010) |
| 04/07/2010 | <u>105</u> | Memorandum in opposition to re <u>104</u> Emergency MOTION for Extension of Time to *file opposition to Defendant's motion for summary judgment and reschedule the status conference set for April 15, 2010* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # <u>1</u> Text of Proposed Order)(Kearney, Patrick) (Entered: 04/07/2010) |

District of Columbia live database                              Page 33 of 43

| | | |
|---|---|---|
| 04/08/2010 | | MINUTE ORDER granting in part and denying in part 104 plaintiff/counter-defendant's Motion for Extension of Time to reply to defendant/counter-plaintiff's motion for partial summary judgment and to postpone the upcoming scheduling conference. Plaintiff/counter-defendant shall file his opposition to defendant/counter-plaintiff's motion for partial summary judgment on or before April 21, 2010. If counsel for plaintiff/counter-defendant is unavailable to attend the status conference scheduled for April 15, 2010, at 10:30 a.m., he shall participate by telephone. Signed by Judge Ellen S. Huvelle on April 8, 2010. (lcesh1) (Entered: 04/08/2010) |
| 04/09/2010 | 106 | REPLY to opposition to motion re 93 MOTION for Sanctions *against Wade Robertson's Counsel* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit Email Correspondence)(Kearney, Patrick) (Entered: 04/09/2010) |
| 04/13/2010 | | Set/Reset Deadlines: Response to Motion for Partial Summary Judgment due by 4/21/2010. (gdf) (Entered: 04/13/2010) |
| 04/15/2010 | 107 | SCHEDULING ORDER. Discovery shall be completed by July 6, 2010. All written discovery will be issued by April 30, 2010. Reports pursuant to plaintiff's retained experts are due by May 25, 2010. Reports pursuant to defendant's retained experts are due by June 15, 2010. A further status conference is set for July 8, 2010, at 10:30 a.m. Both parties are required to attend. Signed by Judge Ellen S. Huvelle on April 15, 2010.(lcesh1) (Entered: 04/15/2010) |
| 04/15/2010 | | MINUTE ORDER holding in abeyance 93 defendant/counter-plaintiff's Motion for Sanctions. On or before April 29, 2010, counsel for defendant/counter-plaintiff shall file an affidavit documenting his fees and costs that relate to the following filings by plaintiff: the motions to quash the subpoenas of Charles Schwab 41 |

Case 1:10-00566   Doc 32-3   Filed 2/27/11   Entered 2/27/11 10:33:47   Desc Exhibit
to Withdraw Reference Part 15   Page 35 of 44

District of Columbia live database          Page 34 of 43

|  |  |  |
|---|---|---|
|  |  | <u>43</u> ; the motion for reconsideration of the Courts order granting leave to amend defendant/counter-plaintiffs counter-complaint <u>56</u> ; and the counter-counter-claim <u>53</u> . Plaintiff/counter-defendant shall respond to counsels motion and affidavit on or before May 13, 2010. Signed by Judge Ellen S. Huvelle on April 15, 2010. (lcesh1) (Entered: 04/15/2010) |
| 04/15/2010 |  | Minute Order. Proceedings held before Judge Ellen S. Huvelle: Status Conference held on 4/15/2010;denying without prejudice <u>97</u> Motion for Partial Summary Judgment. New Status Conference set for 7/8/2010 at 10:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (Court Reporter Lisa Griffith) (gdf) (Entered: 04/19/2010) |
| 04/22/2010 |  | Set/Reset Deadlines/Hearings: Discovery due by 7/6/2010. Plaintiff Rule 26a2 due by 5/25/2010. Defendant Rule 26a2 due by 6/15/2010. Status Conference set for 7/8/2010 10:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (gdf) (Entered: 04/22/2010) |
| 04/28/2010 | <u>108</u> | AFFIDAVIT re <u>93</u> MOTION for Sanctions *against Wade Robertson's Counsel* by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 04/28/2010) |
| 05/13/2010 | <u>109</u> | RESPONSE TO ORDER OF THE COURT re Order on Motion for Sanctions,, filed by WADE ROBERTSON. (Attachments: # <u>1</u> Exhibit 1 through 5)(Griffin, Edward) (Entered: 05/13/2010) |
| 05/17/2010 | <u>110</u> | MEMORANDUM AND OPINION. Signed by Judge Ellen S. Huvelle on May 17, 2010. (lcesh1) (Entered: 05/17/2010) |
| 05/17/2010 | <u>111</u> | ORDER granting in part and denying in part <u>93</u> defendant/counter-plaintiff's Motion for Sanctions. Counsel for plaintiff/counter-defendant shall pay |

District of Columbia live database                    Page 35 of 43

|  |  |  |
|---|---|---|
|  |  | attorneys' fees in the amount of $1,887.00 to defendant/counter-plaintiff on or before June 1, 2010. Signed by Judge Ellen S. Huvelle on May 17, 2010. (lcesh1) (Entered: 05/17/2010) |
| 05/20/2010 | 112 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 3/1/10; Page Numbers: 1-41. Date of Issuance:5/6/10. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Court Reporter Email Address : crystal_pilgrim@dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. . **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov. Redaction Request due 6/10/2010. Redacted Transcript Deadline set for 6/21/2010. Release of Transcript Restriction set for 8/18/2010.(Pilgrim, Crystal) (Entered: 05/20/2010) |
| 06/29/2010 | 113 | Consent MOTION for Discovery *Extension* by WILLIAM C. CARTINHOUR, Jr (Bramnick, Michael) (Entered: 06/29/2010) |
| 06/30/2010 |  | MINUTE ORDER granting 113 Consent Motion for |

District of Columbia live database                        Page 36 of 43

| | | |
|---|---|---|
| | | Discovery Extension: it is hereby ORDERED that the status conference scheduled for July 8th is CONTINUED until July 22, 2010, at 10:30 a.m.; it is further ORDERED that all parties and counsel must attend; and it is further ORDERED that discovery is extended to allow the parties to take Dr. William Cartinhour's deposition on July 13, 2010. Signed by Judge Ellen S. Huvelle on June 30, 2010. (AG) (Entered: 06/30/2010) |
| 07/01/2010 | 114 | MOTION to Quash by ROBERT ASH (Attachments: # 1 Text of Proposed Order)(rdj) (Entered: 07/02/2010) |
| 07/01/2010 | 115 | MANDATE of USCA (certified copy) as to 91 Notice of Appeal filed by WADE ROBERTSON ; Ordered that the motion to dismiss be granted. Nos. 10-7015 and 10-7016 are hereby dismissed. Ordered that the motion to expedite Nos. 10-7015 and 10-7016 be dismissed as moot. Ordered that the emergency motion for stay filed March 15, 2010, be dismissed as moot. Further ordered that the motions for sanctions be denied. USCA Case Number 10-7015. (ls, ) (Entered: 07/02/2010) |
| 07/02/2010 | | MINUTE ORDER finding as moot 114 non-party Robert Ash's Motion to Quash. Based on representations by the parties, it is hereby ORDERED that Robert Ash will appear for a deposition at a date, time, and place mutually agreeable to the parties and Mr. Ash during the week of July 12, 2010; and it is further ORDERED that discovery is extended to allow Mr. Ash's deposition to take place. Signed by Judge Ellen S. Huvelle on July 2, 2010. (lcesh1) (Entered: 07/02/2010) |
| 07/22/2010 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 7/22/2010. Pretrial Conference set for 11/19/2010 10:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. Jury Trial set for 11/29/2010 at 9:30 AM in Courtroom 14 before Judge Ellen S. Huvelle. (Court Reporter Lisa Griffith) (gdf) |

District of Columbia live database                    Page 37 of 43

| | | |
|---|---|---|
| | | (Entered: 07/22/2010) |
| 07/22/2010 | 116 | PRETRIAL ORDER, Signed by Judge Ellen S. Huvelle on July 22, 2010. (lcesh1) (Entered: 07/22/2010) |
| 08/06/2010 | 117 | RULE 26a1 STATEMENT. (Bramnick, Michael) (Entered: 08/06/2010) |
| 08/23/2010 | 118 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 3-26-10; Page Numbers: 1-126. Date of Issuance:8-23-10. Court Reporter/Transcriber Lisa Hand, Telephone number 202-354-3269, Court Reporter Email Address : lisa_hand@dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov. Redaction Request due 9/13/2010. Redacted Transcript Deadline set for 9/23/2010. Release of Transcript Restriction set for 11/22/2010.(Hand, Lisa) (Entered: 08/23/2010) |
| 09/15/2010 | 119 | ORDER of USCA as to 91 Notice of Appeal filed by WADE ROBERTSON ; Ordered that the petition be denied. Petitioner has demonstrated neith a clear and |

District of Columbia live database                                    Page 38 of 43

|            |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | indisputable right to the relief requested not that there is no other adequate means to obtain that relief. USCA Case Number 10-5231. (ls, ) (Entered: 09/17/2010)                                                                                                                                                                                                                                                                                                                                                             |
| 10/31/2010 | 120 | MOTION in Limine by WADE ROBERTSON (Attachments: # 1 Affidavit in support of motion in limine, # 2 Exhibit A-D, # 3 Exhibit E-F)(Griffin, Edward) (Entered: 10/31/2010)                                                                                                                                                                                                                                                                                                                                                        |
| 11/05/2010 | 121 | PRETRIAL STATEMENT by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit Robertson's Exhibit List, # 2 Exhibit Cartinhour's Exhibit List, # 3 Exhibit Robertson's Objection to Cartinhour's Exhibits, # 4 Exhibit Cartinhour's Objections to Robertson's Exhibits, # 5 Exhibit Agreed on Std Jury Instructions, # 6 Exhibit Cartinhour's Objection to Robertson Proposed Std Jury Instruction, # 7 Exhibit Proposed Voir Dire, # 8 Exhibit Verdict Sheet, # 9 Exhibit Cartinhour's Proposed Finding of Fact) (Kearney, Patrick) (Entered: 11/05/2010) |
| 11/05/2010 | 122 | NOTICE *(Praecipe with Corrected Exhibit List for Wade A.Robertson)* by WILLIAM C. CARTINHOUR, Jr re 121 Pretrial Statement,, (Attachments: # 1 Exhibit Robertson Current Exhibit List)(Kearney, Patrick) (Entered: 11/05/2010)                                                                                                                                                                                                                                                                                                |
| 11/05/2010 | 123 | Proposed Findings of Fact by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/05/2010)                                                                                                                                                                                                                                                                                                                                                                                                                                          |
| 11/12/2010 | 124 | Memorandum in opposition to re 120 MOTION in Limine filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit A)(Kearney, Patrick) (Entered: 11/12/2010)                                                                                                                                                                                                                                                                                                                                                                   |
| 11/15/2010 | 125 | NOTICE *Praecipe with Correct Exhibit List for William Cartinhour re 12 Pretrial Statement by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Cartinhour Current Exhibit List)(Kearney, Patrick) Modified on 11/16/2010 to add link (jf, ). (Entered: 11/15/2010)*                                                                                                                                                                                                                                                                  |
|            |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |

District of Columbia live database                              Page 39 of 43

| 11/15/2010 | 126 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 7-22-10; Page Numbers: 16. Date of Issuance:11-16-10. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354-3247, Court Reporter Email Address : Lisa_Griffith@dcd.uscourts.gov.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P>Redaction Request due 12/6/2010. Redacted Transcript Deadline set for 12/16/2010. Release of Transcript Restriction set for 2/13/2011.(Griffith, Lisa) (Entered: 11/15/2010) |
| 11/16/2010 | | MINUTE ORDER: A telephone conference, to be originated by the parties, has been scheduled for Wednesday, November 17, 2010, at 11:00 a.m. Signed by Judge Ellen S. Huvelle on November 16, 2010. (lcesh1) (Entered: 11/16/2010) |
| 11/16/2010 | 127 | NOTICE *Praecipe Filing Non Standard Jury Instructions* by WILLIAM C. CARTINHOUR, Jr re 121 Pretrial Statement,, (Attachments: # 1 Exhibit Proposed Non Standard Jury Instructions)(Kearney, Patrick) (Entered: 11/16/2010) |
| 11/17/2010 | 128 | Emergency MOTION for Permanent Injunction *AGAINST ROBERTSONS ABUSE OF FEDERAL* |

| | | |
|---|---|---|
| | | *COURTS* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Memorandum in Support, # 2 Exhibit A -- Complaint from Bankr.W.D.Tenn., # 3 Exhibit B Complaint from SDNY, # 4 Exhibit C, D & E, # 5 Text of Proposed Order)(Kearney, Patrick) (Entered: 11/17/2010) |
| 11/17/2010 | 129 | NOTICE *of Involuntary Bankruptcy Petition for WAR LLP* by WADE ROBERTSON (Attachments: # 1 Affidavit of Edward Griffin, # 2 Exhibit 1 Notice of Involuntary Bankruptcy, # 3 Exhibit 2 Bankruptcy Petition)(Griffin, Edward) (Entered: 11/17/2010) |
| 11/18/2010 | 130 | REPLY re 129 Notice (Other) *Suggestion of Bankruptcy and Election of Remedy* filed by WILLIAM C. CARTINHOUR, Jr. (Attachments: # 1 Exhibit A&B (correspondence))(Kearney, Patrick) (Entered: 11/18/2010) |
| 11/18/2010 | 131 | NOTICE *of Counter-Designation of Depositions* by WILLIAM C. CARTINHOUR, Jr (Kearney, Patrick) (Entered: 11/18/2010) |
| 11/18/2010 | 132 | MEMORANDUM by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/18/2010) |
| 11/18/2010 | 133 | REPLY re 132 Memorandum *re Plaitniff's Claim to a Right for a Jury Trial* filed by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 11/18/2010) |
| 11/18/2010 | 134 | SURREPLY to *Defendant's Reply to Plaitiff's Suggestion of Bankruptcy* filed by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/18/2010) |
| 11/19/2010 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Final Pretrial Conference held on 11/19/2010. Order forthcoming. Jury Trial set for 11/30/2010 at 9:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. Status Conference set for 11/29/2010 at 2:30 PM in Courtroom 23A before Judge Ellen S. Huvelle. (Court |

Case 1:11-mc-00283-RCL   Document 1   Filed 05/17/11   Page 190 of 192

Case 1:10-00456 Doc 353 Filed 05/18/01 Entered 05/18/01 05:49:47 Desc Motion
to Withdraw-Reference Part 2 Page 42 of 44
District of Columbia live database                    Page 41 of 43

| | | |
|---|---|---|
| | | Reporters: Lisa Griffith, am / Bryan Wayne, pm.) (gdf) (Entered: 11/19/2010) |
| 11/19/2010 | 135 | PRETRIAL ORDER granting in part and denying in part 120 Motion in Limine and ruling on parties' objections to witness lists, exhibits, and proposed jury instructions. The parties shall file various pretrial legal memoranda on or before 11/22/2010. All responses to legal memoranda due by 11/26/2010. Status conference set for 11/29/2010 at 02:30 PM in Courtroom 23A before Judge Ellen S. Huvelle. Jury selection, voir dire, and trial set to commence on 11/30/2010 at 09:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. Signed by Judge Ellen S. Huvelle on November 19, 2010.(lcesh1) (Entered: 11/19/2010) |
| 11/22/2010 | 136 | RESPONSE to Defendant's 131 Counter-Designations by WADE ROBERTSON re 131 Notice (Other) (Griffin, Edward) Modified on 11/23/2010 to correct dockt text (jf, ). (Entered: 11/22/2010) |
| 11/22/2010 | 137 | NOTICE re *Use of Prior Bad Acts Evidence* by WILLIAM C. CARTINHOUR, Jr (Kearney, Patrick) (Entered: 11/22/2010) |
| 11/22/2010 | 138 | RESPONSE TO ORDER OF THE COURT re 135 Order on Motion in Limine, Set/Reset Deadlines/Hearings,,,, *Joint Statement of the Case* filed by WILLIAM C. CARTINHOUR, Jr, WADE ROBERTSON. (Griffin, Edward) (Entered: 11/22/2010) |
| 11/22/2010 | 139 | RESPONSE TO ORDER OF THE COURT re 135 Order on Motion in Limine, Set/Reset Deadlines/Hearings,,,, *Regarding Defendant's Affirmative Defenses* filed by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/22/2010) |
| 11/22/2010 | 140 | Memorandum in opposition to re 128 Emergency MOTION for Permanent Injunction *AGAINST ROBERTSONS ABUSE OF FEDERAL COURTS* filed |

| | | |
|---|---|---|
| | | by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/22/2010) |
| 11/23/2010 | 141 | REPLY to opposition to motion re 128 Emergency MOTION for Permanent Injunction *AGAINST ROBERTSONS ABUSE OF FEDERAL COURTS* filed by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 11/23/2010) |
| 11/25/2010 | 142 | REPLY re 135 Order on Motion in Limine, Set/Reset Deadlines/Hearings,,,, 139 Response to Order of the Court filed by WILLIAM C. CARTINHOUR, Jr. (Kearney, Patrick) (Entered: 11/25/2010) |
| 11/29/2010 | 143 | Emergency MOTION to Continue *Trial* by WILLIAM C. CARTINHOUR, Jr (Attachments: # 1 Text of Proposed Order)(Kearney, Patrick) (Entered: 11/29/2010) |
| 11/29/2010 | 144 | Memorandum in opposition to re 143 Emergency MOTION to Continue *Trial* filed by WADE ROBERTSON. (Griffin, Edward) (Entered: 11/29/2010) |
| 11/29/2010 | | Minute Order. Proceedings held before Judge Ellen S. Huvelle: Status Conference held on 11/29/2010. Granting 143 Motion to Continue Trial. Telephone Conference set for 12/1/2010 at 10:00 AM in Chambers before Judge Ellen S. Huvelle. Jury Trial set for 2/21/2011 at 9:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter Lisa Griffith) (gdf) (Entered: 11/29/2010) |
| 11/29/2010 | 145 | ORDER: Dr. Cartinhour's Emergency Motion to Continue Trial 143 is GRANTED. The Court ruled on various objections to trial exhibits and designations of deposition testimony (see Order for details). A telephone conference to be initiated by the parties shall take place on Wednesday, 12/1/2010, at 10:00 a.m. Signed by Judge Ellen S. Huvelle on November 29, 2010. (lcesh1) (Entered: 11/29/2010) |

Case 1:10-00446   Doc 353   Filed 05/17/11   Entered 05/17/11 12:39:47   Desc Exhibit
to Withdraw Reference   Page 24 of Page 44 of 44

Page 43 of 43

latabase

CE of Hearing: Telephone conference, to be
ed by the parties, set for 12/29/2010 at 10:00 AM
 Judge Ellen S. Huvelle. (lcesh1) (Entered:
'2010)